**SMILEY WANG-EKVALL, LLP**
Lei Lei Wang Ekvall, State Bar No. 163047
*lekvall@swelawfirm.com*
Robert S. Marticello, State Bar No. 244256
*rmarticello@swelawfirm.com*
Michael L. Simon, State Bar No. 300822
*msimon@swelawfirm.com*
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Telephone:    714 445-1000
Facsimile:    714 445-1002

Attorneys for Debtor and Debtor-in-Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| In re | Case No. 8:17-bk-11996-SC |
| WJA ASSET MANAGEMENT, LLC, | Chapter 11 |
| Debtor and Debtor-in-Possession. | (Jointly Administered with Case Nos. 8:17-bk-11997-SC; 8:17-bk-11998-SC; 8:17-bk-11999-SC; 8:17-bk-12000-SC; 8:17-bk-12001-SC; 8:17-bk-12002-SC; 8:17-bk-12003-SC; 8:17-bk-12004-SC; 8:17-bk-12005-SC; 8:17-bk-12006-SC; 8:17-bk-12008-SC; 8:17-bk-12009-SC; 8:17-bk-12010-SC; 8:17-bk-12011-SC; 8:17-bk-12012-SC; 8:17-bk-12013-SC; 8:17-bk-12014-SC; 8:17-bk-12015-SC; 8:17-bk-12016-SC; 8:17-bk-12018-SC; 8:17-bk-12019-SC; 8:17-bk-12124-SC; 8:17-bk-12125-SC; 8:17-bk-12126-SC; 8:17-bk-12127-SC and 8:17-bk-12285-SC) |

☐ Affects 5827 WINLAND HILLS DRIVE DEVELOPMENT FUND, LLC

☐ Affects ALABAMA HOUSING FUND, LLC

☐ Affects CA EXPRESS FUND, LLC

☐ Affects CA SEE JANE GO FUND, LLC

☐ Affects CA WHIRL FUND, LLC

☐ Affects CLAIRTON RESIDENTIAL RENEWAL, LLC

☐ Affects EQUITY INDEXED MANAGED FUND, LLC

☐ Affects LUXURY ASSET PURCHASING INTERNATIONAL, LLC

☐ Affects LVNV MULTI FAMILY LLC

☐ Affects PMB MANAGED FUND, LLC

☐ Affects PROSPER MANAGED FUND, LLC

☐ Affects TD OPPORTUNITY FUND, LLC

**DEBTOR'S MOTION FOR ORDER:**

**(1)    AUTHORIZING SALE OF REAL PROPERTY LOCATED AT 1541 E. 51st STREET, LOS ANGELES, CALIFORNIA PURSUANT TO 11 U.S.C. § 363(b) AND (f);**

**(2)    APPROVING OVERBID PROCEDURES;**

**(3)    APPROVING BUYER, SUCCESSFUL BIDDER, AND BACK-UP BIDDER AS GOOD-FAITH PURCHASER PURSUANT TO 11 U.S.C. § 363(m);**

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1  ☐ Affects TD REO FUND, LLC

2  ☐ Affects URBAN PRODUCE FUND, LLC

3  ☐ Affects WHIRL FUND, LLC

4  ☐ Affects WJA EXPRESS FUND, LLC

5  ☐ Affects WJA REAL ESTATE OPPORTUNITY FUND I, LLC

6  ☐ Affects WJA REAL ESTATE OPPORTUNITY FUND II, LLC

7  ☒ Affects WJA SECURE REAL ESTATE FUND, LLC

8  ☐ Affects WJA SECURE INCOME FUND, LLC

9

10 ☐ Affects WILLIAM JORDAN INVESTMENTS, INC.

11 ☐ Affects CA REAL ESTATE OPPORTUNITY FUND I, LLC

12 ☐ Affects CA REAL ESTATE OPPORTUNITY FUND II, LLC

13 ☐ Affects CALIFORNIA INDEXED GROWTH FUND, LLC

14 ☐ Affects SECURE CALIFORNIA INCOME FUND, LLC

15

16 ☐ Affects CA REAL ESTATE OPPORTUNITY FUND III, LLC

17 ☐ Affects All Debtors

18

19

20

21

22

23

24

25

26

27

28

**(4) AUTHORIZING PAYMENT OF REAL ESTATE BROKER'S COMMISSION AND ORDINARY COSTS OF SALE;**

**(5) RELIEVING THE KINGDOM TRUST COMPANY AS THE CUSTODIAN OF THE INTERESTS HELD BY WJA SECURE REAL ESTATE FUND LLC; AND**

**(6) COMPELLING CUSTODIANS TO EXECUTE SUCH DOCUMENTS AS MAY BE REASONABLY REQUIRED BY THE TITLE COMPANY**

**MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF HOWARD GROBSTEIN, PHILIP SEYMOUR, AND LEI LEI WANG EKVALL**

**DATE:** May 31, 2018
**TIME:** 11:00 a.m.
**CTRM:** 5C

**Ronald Reagan Federal Building and Courthouse**
411 W. 4th Street
Santa Ana, CA  92701

2749549.1

MOTION

# TABLE OF CONTENTS

**Page**

I.   FACTS ................................................................................................ 1

    A.   General Background ................................................................. 1

    B.   The Real Property ................................................................... 2

    C.   Value of the Property .............................................................. 2

    D.   Liens ....................................................................................... 3

    E.   Property Taxes ....................................................................... 3

II.  TERMS OF PROPOSED SALE .......................................................... 4

III. PROPOSED OVERBID PROCEDURE ............................................... 5

IV.  MEMORANDUM OF POINTS AND AUTHORITIES ........................... 6

    A.   The Debtor May Sell Property of the Estate Pursuant to 11 U.S.C.
       § 363(b) .................................................................................. 6

    B.   The Debtor May Sell the Property Free and Clear of Liens, Claims
       and Interests .......................................................................... 7

        1.   The Property Tax Lien .................................................. 7

        2.   Property Taxes ............................................................ 8

        3.   Remaining Liens .......................................................... 8

        4.   Confirmation of the Debtor's Ownership Interest in Property ............ 8

    C.   Adequate Notice of the Sale is Proposed ............................... 8

    D.   The Buyer of the Property Should Be Deemed a "Good Faith
       Purchaser" Pursuant to 11 U.S.C. § 363(m) .......................... 9

    E.   The Bankruptcy Court has the Authority to Implement the Proposed
       Overbid Procedures ............................................................... 9

V.   THE BROKER'S COMMISSION SHOULD BE APPROVED ............... 10

VI.  THE DEBTOR REQUESTS THAT THE COURT RELIEVE KINGDOM
    TRUST AS THE CUSTODIAN OF THE DEBTOR'S INTEREST IN THE
    PROPERTY AND AUTHORIZE THE CRO TO EXECUTE THE PURCHASE
    AGREEMENT ON THE DEBTOR'S BEHALF ....................................... 11

VII. CONCLUSION .................................................................................. 11

DECLARATION OF HOWARD GROBSTEIN ................................................ 13

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

DECLARATION OF PHILIP SEYMOUR ........................................................................... 15

DECLARATION OF LEI LEI WANG EKVALL ................................................................. 17

SMILEY WANG-EKVALL, LLP

3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

# **TABLE OF AUTHORITIES**

**Page**

## **CASES**

*Community Thrift & Loan v. Suchy (In re Suchy),*
    786 F.2d 900 (9th Cir. 1985) ................................................................. 9

*Ewell v. Diebert (In re Ewell),*
    958 F.2d 276 (9th Cir. 1992) ................................................................. 9

*In re 240 North Brand Partners, Ltd.,*
    200 B.R. 653 (B.A.P. 9th Cir. 1996) ...................................................... 6

*In re Abbotts Dairies of Pennsylvania, Inc.,*
    788 F.2d 143 (3d Cir. 1986) .................................................................. 9

*In re America West Airlines,*
    166 B.R. 908 (Bankr. D. Ariz. 1994) ...................................................... 6

*In re Crown Corporation,*
    679 F.2d 774 (9th Cir. 1982) ............................................................... 10

*In re Cummins,*
    15 B.R. 893 (B.A.P. 9th Cir. 1981) ...................................................... 10

*In re Ernst Home Center, Inc.,*
    209 B.R. 974 (Bankr. W.D. Wash. 1997) ............................................... 6

*In re Onouli-Kona Land Co.,*
    846 F.2d 1170 (9th Cir. 1988) ............................................................... 8

*In re Walter,*
    83 B.R. 14 (B.A.P. 9th Cir. 1988) .......................................................... 7

*In re Wilde Horse Enterprises, Inc.,*
    136 B.R. 830 (Bankr. C.D. Cal. 1991) ................................................... 6

*Lionel Corp.,*
    722 F.2d 1063 (2d Cir. 1983) ................................................................ 6

## **STATUTES**

11 U.S.C. § 105(a) ..................................................................................... 9, 10

11 U.S.C. § 327 ............................................................................................... 10

11 U.S.C. § 363(b) ................................................................................ 6, 7, 11

11 U.S.C. § 363(b)(1) ............................................................................... 9, 10

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1    11 U.S.C. § 363(f) ..................................................................................................7, 11

2    11 U.S.C. § 363(m) ................................................................................................9, 11

3

4    **<u>RULES</u>**

5    Federal Rule of Bankruptcy Procedure 6004(h) ..............................................................12

6    Local Bankruptcy Rule 9021-1 .......................................................................................12

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

SMILEY WANG-EKVALL, LLP

3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

**TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATE BANKRUPTCY JUDGE:**

WJA Secure Real Estate Fund, LLC, one of the debtors-in-possession in the above-captioned cases ("Debtor"), hereby files this *Motion for Order (1) Authorizing Sale of Real Property Located at 1541 E. 51st Street, Los Angeles, California, Pursuant to 11 U.S.C. § 363(b) and (f); (2) Approving Overbid Procedures; (3) Approving Buyer, Successful Bidder, and Back-up Bidder as Good-Faith Purchaser Pursuant to 11 U.S.C. 363(m); (4) Authorizing Payment of Real Estate Broker's Commission and Ordinary Costs of Sale; (5) Relieving The Kingdom Trust Company as the custodian of the interests held by WJA Secure Real Estate Fund LLC; and (6) Compelling Custodians to Execute Such Documents as May Be Reasonably Required by the Title Company* ("Motion").  In support of the Motion, the Debtor submits the following memorandum of points and authorities and declarations of Howard Grobstein, Philip Seymour, and Lei Lei Wang Ekvall, and respectfully represents as follows:

**I.    FACTS**

    **A.    General Background**

The Debtors are part of a network of entities or "Funds" formed to offer a range of investment opportunities to clients.  Many of the Funds are performing and some had substantial gains.  Certain Funds, i.e., those invested in private trust deeds secured by real estate, suffered losses.  These cases were commenced to liquidate the Debtors' holdings in an orderly fashion to maximize the return for creditors and investors and to distribute the proceeds in a manner consistent with the Code's priority scheme.  Howard Grobstein was appointed as the Debtors' chief restructuring officer ("CRO").

The losses experienced by some Funds are traceable to certain trust deed investments.  These losses are largely concentrated in the assets held by TD Opportunity Fund, LLC, and TD REO, LLC.  The first six Funds created were WJA Secure Real Estate Fund, WJA Secure Income Fund, California Indexed Growth Fund, Equity

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1  Managed Fund, PMB Managed Fund, and Secure California Income Fund (collectively,

2  the "Original Six Funds").  The Original Six Funds each held a small pool of deeds of trust

3  secured by real estate as well as other assets.

4  **B.    The Real Property**

5  The Debtor scheduled the real property located at 1541 E. 51st Street, Los

6  Angeles, California ("Property") as an asset.  The Debtor acquired the Property from

7  Core Real Estate Opportunity Fund I, LLC ("Core"), on or about January 9, 2014,

8  pursuant to a grant deed (the "Grant Deed") recorded as Instrument No. 2014-26915.  A

9  copy of the Deed is attached as Exhibit "1."  The conveyance was to Millennium Trust

10  Company, LLC ("Millennium Trust"), custodian for the benefit of WJA Secure Real Estate

11  Fund, LLC.

12  On or about October 19, 2017, Millennium Trust conveyed its interest to The

13  Kingdom Trust Company ("Kingdom Trust"), as custodian for the benefit of WJA Secure

14  Real Estate Fund, LLC.  With the exception of unpaid property taxes, there are no liens

15  against the Property.  A copy of the preliminary title report dated May 9, 2018, is attached

16  as Exhibit "2."

17  Consistent with the Debtors' goal of an orderly liquidation of assets, the Debtor

18  employed Elite Properties Realty ("Broker") to market and sell the Property.  The order

19  approving the Broker's employment was entered January 10, 2018.  A copy of the

20  employment order is attached as Exhibit "3."  The listing agreement between the Debtor

21  and the Broker provides that the Broker will receive a commission of 5% of the purchase

22  price upon the sale of the Property.  To the extent the Broker receives cooperation from

23  other brokers, the 5% commission will be shared between the Broker and the cooperating

24  broker(s).  A copy of the Listing Agreement is attached as Exhibit "4."

25  **C.    Value of the Property**

26  The Broker is a leading full-service real estate company that is familiar with the

27  Los Angeles real estate market.  Based on the Broker's expertise and familiarity with the

28  area, comparables in the area, and current market conditions, the Broker estimates the

1  Property has a fair market value in the range of $515,000.00 to $535,000.00. The

2  Property was listed for $549,000.00. Some of the Broker's marketing efforts included

3  listing the Property in the multiple listing service and other popular real estate listing

4  services. The listing was viewed 9,846 times by agents and 240 times by the public.

5  *See* Declaration of Philip Seymour.

6        The Broker received a number of expressions of interest in the Property and six

7  offers to purchase the Property. The offer presented by Helen Nam is the subject of this

8  Motion. Nam originally offered to purchase the Property for $549,000.00. However,

9  when Nam learned that the sale would be subject to overbids, court approval, and without

10  representations or warranties, Nam expressed concerns and submitted a revised offer of

11  $510,000.00. After further negotiations, Nam agreed to a purchase price of $535,000.00.

12  Subsequently, Nam assigned her interest in the purchase and sale agreement to Jung

13  Eun Kang (the "Buyer"). The Buyer's offer of $535,000.00 is the highest and best offer

14  received to date. *See* Declaration of Philip Seymour.

15      **D.**    <u>**Liens**</u>

16        The PTR shows a lien in favor of the Los Angeles County Tax Collector recorded

17  on September 10, 2015, for unsecured property taxes in the amount of $403.62

18  ("Property Tax Lien"). The Property Tax Lien is undisputed.

19      **E.**    <u>**Property Taxes**</u>

20        The PTR shows current and unpaid property taxes (collectively, the "Property

21  Taxes") as follows:

22        (a)    The property taxes for the fiscal year 2017-2018 in the amount of

23  $5,718.20 are due. The first installment due December 10, 2017, is unpaid and

24  past due, and the second installment due April 10, 2018, is unpaid and past due.

25        (b)    Property taxes for the 2016 tax year in the amount of $6,877.92 are

26  in default.

27

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

**II.    TERMS OF PROPOSED SALE**

The primary terms of the proposed sale are described below.  For an exhaustive description of the sale terms, refer to the *Residential Purchase Agreement and Joint Escrow Instructions* and all related documents (collectively, "Purchase Agreement") attached hereto as Exhibit "5."

1.    Jung Eun Kang, as assignee of Helen Nam, is the Buyer.

2.    Buyer shall acquire title to the Property in an as-is, where-is condition or basis by quitclaim deed without representations or warranties whatsoever, including, without limitation, representations or warranties as to title, oil, and mineral rights, city or government agency notifications regarding work to be done, marketability of title, ownership, physical condition, compliance with state, city, or federal statutes, codes, ordinances, or regulations, geological stability, zoning, suitability for improvements on the Property, nor any assurances regarding the subdivisibility of the Property.

3.    The purchase price for the Property, with all improvements and personal property located thereon, is $535,000.00 ("Purchase Price").  The Purchase Price is payable as follows:

(a)    Concurrently with the opening of escrow, Buyer shall deposit $16,500.00 into escrow ("Deposit").  The Deposit shall become nonrefundable except in the event of (i) the Debtor's acceptance of an overbid; or (ii) the Bankruptcy Court's failure to approve the sale contemplated in this Motion.

(b)    On the closing date, Buyer shall deposit with Escrow Holder the entire balance of the Purchase Price, plus all other costs and expenses chargeable to Buyer, in good funds, less the Deposit.

4.    The sale is subject to overbid.

5.    The Purchase Agreement is subject to Bankruptcy Court approval.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

SMILEY WANG-EKVALL, LLP

3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

## III.    **PROPOSED OVERBID PROCEDURE**

The Debtor proposes the following procedure to allow for overbids prior to the Court's approval of the sale of the Property to ensure that the estate's interest in the Property is sold for the best possible price:

1.    Qualifying bidders ("Qualifying Bidder") shall:

(a)    Bid at least $10,000.00 over the Purchase Price set forth in the Agreement;

(b)    Set forth in writing the terms and conditions of the offer that are at least as favorable to the Debtor as those set forth in the Purchase Agreement attached as Exhibit "5," including the ability to close the sale by no later than three business days after the entry of a "final" order[1] granting this Motion;

(c)    Be financially qualified, in the CRO's exercise of his sound business judgment, to timely close the sale, with an all-cash purchase price; and

(d)    Submit to the Debtor's counsel by no later than May 29, 2018, at 5:00 p.m., Pacific Time, a cash deposit of $26,500.00 ("the Overbid Deposit") payable to Granite Escrow in the form of a cashier's check, which Overbid Deposit shall be non-refundable if the bid is deemed to be the Successful Bid, as defined below; a written offer; and evidence of financial qualification.

At the hearing on the Motion, only the Buyer and any party who is deemed a Qualifying Bidder shall be entitled to bid.  Any incremental bid in the bidding process shall be at least $5,000.00 higher than the prior bid.  Upon conclusion of the bidding process, the CRO shall decide which of the bids is the best bid, and such bid shall be deemed to be the "Successful Bid."  The bidder who is accepted by the CRO as the successful bidder ("Successful Bidder") must pay all amounts reflected in the Successful Bid in cash at the closing of the sale.  At the hearing on the Motion, and upon conclusion of the

---

[1]    An order shall be "final" on the first day after the expiration of the period to file an appeal pursuant to Federal Rule of Bankruptcy Procedure 8002 if: (1) there is no timely appeal of the order filed; or (2) if there is an appeal, no stay pending appeal of the order is obtained.

1  bidding process, the CRO may also acknowledge a back-up bidder ("Back-Up Bidder")

2  which shall be the bidder with the next best bid.  Should the Successful Bidder fail to

3  close escrow on the sale of the Property, the Debtor may sell the Property to the Back-Up

4  Bidder without further court order.

5      The Debtor intends to post the proposed overbid procedures on the multiple listing

6  service and other property listing services, as well as on the Court's website.  The Debtor

7  also intends to provide the proposed overbid procedures to all parties who have

8  expressed an interest in the Property.

9

10  **IV.    MEMORANDUM OF POINTS AND AUTHORITIES**

11      **A.    The Debtor May Sell Property of the Estate Pursuant to 11 U.S.C.**

12          **§ 363(b)**

13      11 U.S.C. § 363(b) empowers a trustee to "use, sell or lease . . . other than in the

14  ordinary course of business, property of the estate."  In considering a proposed

15  transaction to use, sell, or lease, courts look at whether the transaction is in the best

16  interests of the estate based on the facts and history of the case.  *In re America West*

17  *Airlines,* 166 B.R. 908, 912 (Bankr. D. Ariz. 1994) (*citing In re Lionel Corp.,* 722 F.2d

18  1063, 1071 (2d Cir. 1983)).  This requires examination of the "business justification" for

19  the proposed sale.  *In re 240 North Brand Partners, Ltd.,* 200 B.R. 653 (B.A.P. 9th Cir.

20  1996); *In re Wilde Horse Enterprises, Inc.,* 136 B.R. 830 (Bankr. C.D. Cal. 1991); *In re*

21  *Ernst Home Center, Inc.,* 209 B.R. 974 (Bankr. W.D. Wash. 1997).

22      In approving any sale outside the ordinary course of business, the court must not

23  only articulate a sufficient business reason for the sale, it must further find it is in the best

24  interest of the estate, i.e., it is fair and reasonable, that it has been given adequate

25  marketing, that it has been negotiated and proposed in good faith, that the purchaser is

26  proceeding in good faith, and that it is an "arms-length" transaction.  *In re Wilde Horse*

27  *Enterprises, Inc.,* 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991); *In re 240 North Brand*

28  *Partners, Ltd.,* 200 B.R. 653 (B.A.P. 9th Cir. 1996).  A bankruptcy court's power to

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000  •  Fax 714 445-1002

1  authorize a sale under § 363(b) is reviewed for abuse of discretion. *In re Walter,* 83 B.R.

2  14, 19 (B.A.P. 9th Cir. 1988).

3      Here, the proposed transaction has a legitimate business justification and is in the

4  best interest of the estate.  The Purchase Price represents the best price obtained by

5  listing the Property on the open market, and is therefore consistent with market value.

6  The Debtor has proposed an overbid procedure to ensure the estate receives the highest

7  and best price for the Property at the hearing.  Additionally, there is no relationship

8  between the Debtor and the Buyer; thus, the sale is an arm's-length transaction and is

9  entered into in good faith.  *See* Declaration of Howard Grobstein.

10     **B.**     **The Debtor May Sell the Property Free and Clear of Liens, Claims and**

11             **Interests**

12     The Debtor seeks authority to sell the Property free and clear of all liens and

13  encumbrances pursuant to 11 U.S.C. § 363(f) which provides:

14     The trustee may sell property under subsection (b) or (c) of this section free
       and clear of any interest in such property of an entity other than the estate,
15     only if -

16         (1)     applicable nonbankruptcy law permits sale of such property
       free and clear of such interest;

17
           (2)     such entity consents;
18
           (3)     such interest is a lien and the price at which such property is
19     to be sold is greater than the aggregate value of all liens on such property;

20         (4)     such interest is in bona fide dispute; or

21         (5)     such entity could be compelled, in a legal or equitable
       proceeding, to accept a money satisfaction of such interest.
22

23     Because subsections (1) through (5) of Bankruptcy Code § 363(f) are written in the

24  disjunctive, authority to sell the Property free and clear of any and all interests therein

25  should be granted if any of the conditions are met with respect to each interest holder.

26     **1.**     **The Property Tax Lien**

27     The Property Tax Lien is undisputed and the Debtor proposes to pay them in full

28  through escrow without further order of the Court.

**2.    Property Taxes**

The Debtor seeks authority to pay all real property tax arrearages through escrow without further order of the Court, including the Property Taxes.

**3.    Remaining Liens**

Other than the Property Tax Lien, the Debtor is not aware of any other liens but expressly reserves the right to object to all or any portion of each and every claim or encumbrance that has or will be asserted against the Property.

**4.    Confirmation of the Debtor's Ownership Interest in Property**

In 2014, pursuant to the Grant Deed, William Jordan, as the manager of Core, transferred and conveyed its fee title in the Property to Millennium Trust, as custodian for the benefit of the Debtor.  *See* Exhibit "1."  Millennium Trust then transferred its interest in the Property to Kingdom Trust as custodian for the benefit of the Debtor.

The title company has requested that a Confirmation of Conveyance be signed by both William Jordan, on behalf of Core, and by Millennium Trust.  A copy of the Confirmation of Conveyance is attached as Exhibit "6."  The Debtor is coordinating with the title company to obtain Mr. Jordan's and Millennium Trust's executed Confirmation of Conveyance.  The Debtor requests an order compelling their execution of the Confirmation of Conveyance, if such order should become necessary.  Alternatively, the Debtor requests that the order confirm the Debtor's fee title in the Property.

**C.    Adequate Notice of the Sale is Proposed**

The Debtor proposes to provide notice of the sale to be posted by the Clerk's Office on the Court's website and to serve notice of the sale on all parties entitled to notice in this case.  Moreover, the Broker will notify all those who have expressed an interest in the Property of the date and time of the hearing and will provide them with a description of the overbid procedure.  As a result, potentially interested parties can provide competing offers for the Property to ensure that the proposed sale does not result in a lucrative "windfall" to the Buyer at the expense of creditors of the Estate.  *See In re Onouli-Kona Land Co.,* 846 F.2d 1170 (9th Cir. 1988).

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

D. **The Buyer of the Property Should Be Deemed a "Good Faith Purchaser" Pursuant to 11 U.S.C. § 363(m)**

11 U.S.C. § 363(m) provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

A good faith buyer "is one who buys 'in good faith' and 'for value.'" *Ewell v. Diebert (In re Ewell),* 958 F.2d 276, 281 (9th Cir. 1992) (citing *In re Abbotts Dairies of Pennsylvania, Inc.,* 788 F.2d 143, 147 (3d Cir. 1986)). "[L]ack of good faith is [typically] shown by 'fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.'" *Id.* (quoting *Community Thrift & Loan v. Suchy (In re Suchy),* 786 F.2d 900, 902 (9th Cir. 1985)). In the instant case, the Buyer is buying in good faith and has offered to pay market value for the Property. The anticipated sale of the Property has been negotiated with the Buyer in "arm's-length" discussions. *See* Declaration of Howard Grobstein. Moreover, the sale will be conducted in a commercially reasonable manner following appropriate notice and evidence of the Debtor's marketing efforts. Based on such facts and circumstances, the Debtor believes that this Court can properly determine the Buyer, the Successful Bidder, and the Back-Up Bidder as a "good faith purchaser" pursuant to 11 U.S.C. § 363(m).

E. **The Bankruptcy Court has the Authority to Implement the Proposed Overbid Procedures**

Implementation of the bidding procedures is an action outside of the ordinary course of business. 11 U.S.C. § 363(b)(1) provides that a trustee "after notice and hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." Furthermore, under 11 U.S.C. § 105(a), "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1    title." Thus, pursuant to §§ 363(b)(1) and 105(a), this Court may authorize the

2    implementation of overbidding procedures.

3         The bankruptcy court may issue orders determining the terms and conditions for

4    overbids with respect to a sale of estate assets, including specifying the minimum

5    consideration required for an overbid, the particular contractual terms required to be

6    offered by overbidders, and requiring and setting the amount of potential overbidder's

7    deposits. *In re Crown Corporation,* 679 F.2d 774 (9th Cir. 1982). The overbid

8    procedures proposed in this Motion will ensure that the Property will generate the

9    greatest possible value to the Estate. They also place appropriate checks upon

10   overbidders to ensure that only Qualified Bids are considered.

11

12   **V.      THE BROKER'S COMMISSION SHOULD BE APPROVED**

13        Real estate brokers are "professionals" for purposes of section § 327 of the

14   Bankruptcy Code and, as such, their employment must be approved by the court. *In re*

15   *Cummins,* 15 B.R. 893, 895 (B.A.P. 9th Cir. 1981). The Court entered an order

16   approving the Debtor's employment of the Broker to locate a buyer for the Property on

17   January 10, 2018 (Exhibit "3"). The Broker's commission will not exceed five percent

18   (5%) of the successful overbid. The Broker has performed a very valuable service for the

19   estate by extensively marketing the Property and establishing the property value. *See*

20   Declaration of Howard Grobstein attached hereto.

21        As previously discussed, the sale is fair and reasonable and is in the best interest

22   of the Estate. Therefore, the commission arrangement as outlined in this Motion is

23   reasonable and should be approved by the Court.

24

25

26

27

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

**VI.    THE DEBTOR REQUESTS THAT THE COURT RELIEVE KINGDOM TRUST AS THE CUSTODIAN OF THE DEBTOR'S INTEREST IN THE PROPERTY AND AUTHORIZE THE CRO TO EXECUTE THE PURCHASE AGREEMENT ON THE DEBTOR'S BEHALF**

Title to the Property is currently held by Kingdom Trust, for the benefit of WJA Secure Real Estate Fund LLC.  There is no practical or business reason why Kingdom Trust should continue to act as custodian.  If anything, forcing the CRO to have to obtain signatures of an authorized representative of Kingdom Trust on the Agreement and any other documents that may be required to consummate the transaction contemplated by this Motion would be cumbersome.  Accordingly, the Debtor requests that any order granting the Motion relieve Kingdom Trust of its duties as the custodian of the Debtor's interest in the Property and authorize the CRO to execute the documents required to consummate the transaction contemplated by this Motion.

**VII.    CONCLUSION**

The Debtor respectfully requests that this Court grant the Motion as follows:

1.    Authorizing the Debtor to sell the Property to the Buyer, the Successful Bidder, or the Back-Up Bidder, as is, where is, without representations or warranties, free and clear of any and all liens and interests pursuant to 11 U.S.C. § 363(b) and (f));

2.    Confirming the Debtor's fee interest in the Property free and clear of any and all claims and interests of Core and of Millennium Trust;

3.    Compelling the execution of the Confirmation of Conveyance by Millennium Trust and by Core, if necessary;

4.    Approving the terms of the Purchase Agreement attached as Exhibit "5";

5.    Determining that the Buyer, the Successful Bidder, and the Back-Up Bidder are "good faith purchasers" pursuant to 11 U.S.C. § 363(m);

6.    Authorizing the Debtor to pay all undisputed liens, including the Property Taxes, and the Estate's pro rata share of real property taxes, in full from the proceeds of

1   sale without further order of the Court;

2          7.      Authorizing the Debtor to pay the Broker's commission and ordinary costs

3   of sale of the Property from the proceeds of sale;

4          8.      Approving the overbid procedures outlined in this Motion;

5          9.      Authorizing the Debtor to take any and all necessary action to consummate

6   the sale of the Property;

7          10.     Relieving Kingdom Trust of all of its duties as custodian of the Debtor's

8   interest in the Property and authorizing the CRO to execute all documents required to

9   consummate the transaction contemplated by this Motion on behalf of WJA Secure Real

10  Estate Fund LLC;

11         11.     Waiving any requirements for lodging periods of the order approving this

12  Motion imposed by Local Bankruptcy Rule 9021-1 and any other applicable bankruptcy

13  rules;

14         12.     Waiving the stay of the order approving this Motion imposed by Federal

15  Rule of Bankruptcy Procedure 6004(h) and any other applicable bankruptcy rules; and

16         13.     For such other and further relief as this Court may deem just and proper.

17

18                                  Respectfully submitted,

19  DATED:  May 10, 2018            SMILEY WANG-EKVALL, LLP

20

21                                  By:  _____/s/ Lei Lei Wang Ekvall_____

22                                       LEI LEI WANG EKVALL
                                         Attorneys for Debtor and
23                                       Debtor-in-Possession

24

25

26

27

28

*SMILEY WANG-EKVALL, LLP*
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

## DECLARATION OF HOWARD GROBSTEIN

I, Howard Grobstein, declare as follows:

1.      I am the Chief Restructuring Officer of the Debtors and a founder and partner of Grobstein Teeple, LLP.  I know each of the following facts to be true of my own personal knowledge, except as otherwise state and, if called as a witness, I could and would competently testify with respect thereto.  I make this declaration in support of the *Motion for Order (1) Authorizing Sale of Real Property Located at 1541 E. 51st Street, Los Angeles, California, Pursuant to 11 U.S.C. § 363(b) and (f); (2) Approving Overbid Procedures; (3) Approving Buyer, Successful Bidder, and Back-up Bidder as Good-Faith Purchaser Pursuant to 11 U.S.C. 363(m); (4) Authorizing Payment of Real Estate Broker's Commission and Ordinary Costs of Sale; (5) Relieving The Kingdom Trust Company as the Custodian of the Interests held by WJA Secure Real Estate Fund LLC; and (6) Compelling Custodians to Execute Such Documents as May Be Reasonably Required by the Title Company* ("Motion").  All terms defined in the Motion are incorporated herein by this reference.

2.      The Debtor acquired the Property which is the subject of this Motion from Core Real Estate Opportunity Fund I, LLC ("Core") pursuant to a grant deed.  A true and correct copy of the grant deed is attached as Exhibit "1."  The conveyance was to Millennium Trust Company, LLC ("Millennium Trust"), custodian for the benefit of WJA Secure Real Estate Fund, LLC.

3.      The Debtor obtained a preliminary title report from Orange Coast Title Company.  A copy of the preliminary title report dated May 9, 2018, is attached as Exhibit "2."

4.      A copy of the Listing Agreement between the Broker and the Debtor is attached as Exhibit "4."

5.      The Broker has performed a very valuable service for the estate by extensively marketing the Property and establishing the property value.

6.      I participated in the negotiations of the sale of the Property.  The terms and conditions of the sale were negotiated with the Buyer at arm's length.  There were offers and counteroffers exchanged between the Debtor and the Buyer.  I received copies of written offers and counteroffers and discussed appropriate responses with the Broker.  There were other third parties' offers that were also evaluated, considered and countered.  The Buyer's offer is the highest and best offer to date.  Neither the Debtor nor I have any relations or connections with the Buyer.  I have reviewed the Purchase Agreement between the Buyer and the Debtor, which reflects the terms and conditions of the negotiated transaction.  A copy of Purchase Agreement is attached hereto as Exhibit "5."

7.      The proposed sale has a legitimate business justification and is in the best interest of the estate.  The Purchase Price represents the best price obtained by listing the Property on the open market.  The proposed overbid procedures will further ensure that the estate receives the highest and best price for the Property at the hearing.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this _10_ day of May, 2018, at _WOODLAND HILLS_, California.

HOWARD GROBSTEIN

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1

## **DECLARATION OF PHILIP SEYMOUR**

2

3       I, Philip Seymour, declare as follows:

4       1.      I am a licensed real estate professional employed by Elite Properties

5   Realty, the Debtor's real estate broker ("Broker").  I am authorized by Broker to make this

6   declaration on its behalf.  I know each of the following facts to be true of my own personal

7   knowledge except as otherwise stated and, if called as a witness, I could and would

8   competently testify with respect thereto.  I make this declaration in support of the *Motion*

9   *for Order (1) Authorizing Sale of Real Property Located at 1541 E. 51st Street, Los*

10  *Angeles, California, Pursuant to 11 U.S.C. § 363(b) and (f); (2) Approving Overbid*

11  *Procedures; (3) Approving Buyer, Successful Bidder, and Back-up Bidder as Good-Faith*

12  *Purchaser Pursuant to 11 U.S.C. 363(m); (4) Authorizing Payment of Real Estate*

13  *Broker's Commission and Ordinary Costs of Sale; (5) Relieving The Kingdom Trust*

14  *Company as the Custodian of the Interests held by WJA Secure Real Estate Fund LLC;*

15  *and (6) Compelling Custodians to Execute Such Documents as May Be Reasonably*

16  *Required by the Title Company* ("Motion").  All terms defined in the Motion are

17  incorporated herein by this reference.

18      2.      I am familiar with the Los Angeles real estate market.  Based on my

19  expertise and familiarity with the area, comparables in the area, and current market

20  conditions, I estimate that the Property has a fair market value in the range of

21  $515,000.00 to $535,000.00.  The Property was listed for $549,000.00.

22      3.      In presenting the Property for sale, I listed the Property in the multiple listing

23  service and other popular real estate listing services.  The listing was viewed

24  approximately 9,846 times by agents and approximately 240 times by the public.

25      4.      As a result of my marketing efforts, I received a number of expressions of

26  interest in the Property and six offers to purchase the Property.  The offer presented by

27  Helen Nam is the subject of the Motion.  Ms. Nam originally offered to purchase the

28  Property for $549,000.00.  However, when Ms. Nam learned that the sale would be

1  subject to overbids, court approval, and without representations or warranties, Nam

2  expressed concerns and submitted a revised offer of $510,000.00.  After further

3  negotiations, Ms. Nam agreed to a purchase price of $535,000.00.  Subsequently, Ms.

4  Nam assigned her interest in the purchase and sale agreement to Jung Eun Kang.  Ms.

5  Nam's offer of $535,000.00 is the highest and best offer received to date.

6       I declare under penalty of perjury that the foregoing is true and correct.

7       Executed on this _____10_____ day of May, 2018, at _____Beverly Hills_____,

8  California.

9

10                                        _____
                                          PHILIP SEYMOUR

11

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1

## DECLARATION OF LEI LEI WANG EKVALL

2

3    I, Lei Lei Wang Ekvall, declare:

4    1.    I am a partner with Smiley Wang-Ekvall, LLP, attorneys of record for

5    Debtor and Debtor-in-Possession.  I am licensed to practice before this Court and the

6    courts of the State of California.  I know each of the following facts to be true of my own

7    personal knowledge, except as otherwise stated and, if called as a witness, I could and

8    would competently testify with respect thereto.  I make this declaration in support of the

9    *Motion for Order (1) Authorizing Sale of Real Property Located at 1541 E. 51st Street, Los*

10   *Angeles, California, Pursuant to 11 U.S.C. § 363(b) and (f); (2) Approving Overbid*

11   *Procedures; (3) Approving Buyer, Successful Bidder, and Back-up Bidder as Good-Faith*

12   *Purchaser Pursuant to 11 U.S.C. 363(m); (4) Authorizing Payment of Real Estate*

13   *Broker's Commission and Ordinary Costs of Sale; (5) Relieving The Kingdom Trust*

14   *Company as the Custodian of the Interests held by WJA Secure Real Estate Fund LLC;*

15   *and (6) Compelling Custodians to Execute Such Documents as May Be Reasonably*

16   *Required by the Title Company* ("Motion").  Unless otherwise defined in this declaration,

17   all terms defined in the Motion are incorporated herein by this reference.

18   2.    On December 20, 2017, my Firm, on behalf of the Debtor, filed the

19   *Application of WJA Secure Real Estate Fund, LLC, for Approval to Employ Elite*

20   *Properties Realty as Real Estate Brokers* ("Application").  The Application was approved

21   by order entered January 10, 2018, a copy of which is attached as Exhibit "3."

22   5.    The Debtor and I have been in communications with Orange Coast Title

23   Company ("OC Title"), the title company that will be underwriting the sale transaction.

24   OC Title has requested that a Confirmation of Conveyance be signed by William Jordan,

25   on behalf of Core, and by Millennium Trust to remove all exceptions to the Debtor's title to

26   the Property.  A copy of the Confirmation of Conveyance that OC Title requests to be

27   signed is attached as Exhibit "6."

28

6.    I have contacted Mr. William Jordan to execute the Confirmation of Conveyance on behalf of Core.  The Debtor is contacting Millennium Trust to obtain the executed Confirmation of Conveyance from Millennium Trust.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 10th day of May, 2018, at Costa Mesa, California.

/s/ Lei Lei Wang Ekvall
LEI LEI WANG EKVALL

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

# EXHIBIT "1"

**RECORDING REQUESTED BY:**
**AND WHEN RECORDED RETURN TO:**

Thomas R. Kroesche, Esq.
Cooksey, Toolen, Gage, Duffy & Woog
535 Anton Blvd., 10th Floor
Costa Mesa, CA 92626

Title Order No. _____ Escrow No. _____

**MAIL TAX STATEMENTS TO:**

WJA Secure Real Estate Fund, LLC
Attention: William Jordan
25909 Pala, Suite 300
Mission Viejo, CA 92691

File No. 86.0614



01/09/2014

*20140026915*

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# Grant Deed

THE UNDERSIGNED GRANTOR(s) DECLARE(s)
DOCUMENTARY TRANSFER TAX IS **Zero***
☐ _____ unincorporated area   City of Los Angeles
Parcel No. 5106-023-029
☐ computed on full value of interest or property conveyed, or
☐ computed on full value less value of liens or encumbrances remaining at time of sale, and

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
CORE REAL ESTATE OPPORTUNITY FUND I, LLC, a  California  limited liability company

Hereby GRANT(S) to **MILLENNIUM TRUST COMPANY, LLC CUSTODIAN FBO WJA SECURE REAL ESTATE FUND, LLC, a California limited liability company**

the following described real property in the City of Los Angeles
county of LOS ANGELES, state of California:

LOT 70 OF SMITH BROTHERS COMPTON AVENUE TRACT, IN THE CITY OF LOS ANGELES,
COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 5,
PAGE 103 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

*This conveyance changes the manner in which title is held, Grantor and Grantee remain the same
and continue to hold the same proportionate interest (R&T 11911).

Dated  November 25, 2013

STATE OF CALIFORNIA
COUNTY OF  Orange  } S.S.
On  November 25, 2013  before me,
 J. Sweet  Notary Public, personally
appeared William Michael Jordan  who proved to me on
the basis of satisfactory evidence to be the person whose name is
subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity, and that by
his/her/their signature on the instrument the person, or the entity upon behalf
of which the person acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of California that
the foregoing paragraph is true and correct.

WITNESS my hand and official seal

Signature  J. Sweet

CORE REAL ESTATE OPPORTUNITY FUND I,
LLC, a California  limited liability company

By: _____
   William Jordan, Its Manager

**J. SWEET**
COMM. # 1975109
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
COMM. EXPIRES APRIL 14, 2016

(This area for official notarial seal)

86.0614  2640696.1

EXHIBIT "1," PAGE 19



**This page is part of your document - DO NOT DISCARD**



# 20140026915



**Pages:**
**0002**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**01/09/14 AT 11:06AM**

| | |
|---|---|
| FEES: | 22.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 22.00 |



**L E A D S H E E T**



201401093300027

00008739285

005975253

**SEQ:**
**01**

DAR - Courier (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

E.211663

# EXHIBIT "2"

Order No. 150-1916773-07



# Orange Coast Title Company

2411 W. La Palma Ave #300
Anaheim, CA 92801
714-822-3211

| | **PRELIMINARY REPORT** | |
|---|---|---|

Granite Escrow
439 North Canon Drive Suite 220
Beverly Hills, CA 90210

| **Attention:** | Cheryl Noah | **Your no.:** | 52601- CAN |
|---|---|---|---|
| **Property address:** | 1541 East 51st Street, Los Angeles, CA  90011 | **Order no.:** | 150-1916773-07 |

**Dated:**        May 9, 2018

In response to the above referenced application for a policy of title insurance, **Orange Coast Title Company** hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a Policy or Policies of Title Insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an Exception below or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations of said Policy forms.

The printed Exceptions and Exclusions from the coverage and Limitations on Covered Risks of said policy or policies are set forth in Exhibit B attached. The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. Limitations on Covered Risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance which establish a Deductible Amount and a Maximum Dollar Limit of Liability for certain coverages are also set forth in Exhibit B. Copies of the policy forms should be read. They are available from the office which issued this report.

**Please read the exceptions shown or referred to below and the exceptions and exclusions set forth in Exhibit B of this report carefully. The exceptions and exclusions are meant to provide you with notice of matters, which are not covered under the terms of the title insurance policy and should be carefully considered.**

**It is important to note that this preliminary report is not a written representation as the condition of title and may not list all liens, defects, and encumbrances affecting title to the land.**

This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a Binder or Commitment should be requested.

Dated as of April 25, 2018 at 7:30 AM

_____
Steve Fernando, Title Officer
Ph: 714-822-3211
Email: stevef@octitle.com

EXHIBIT "2," PAGE 21

Order No. 150-1916773-07

**The form of policy of title insurance contemplated by this report is:**

A.L.T.A Homeowner's Policy (2/03/10) A.L.T.A. Loan Policy (06-17-06) with A.L.T.A. Endorsement - Form 1 Coverage

**The Policy of Title Insurance, if issued, will be underwritten by:**  Real Advantage Title Insurance Company, a subsidiary of Orange Coast Title Company.  See attached disclosure.
**NOTE: The premium for a policy of Title Insurance, if issued, will be based on:**

**A liability of    TBD    Subject to any filed rate increases and/or changes in the liability.**

## Schedule "A"

**The estate or interest in the land hereinafter described or referred to covered by this report is:**

A Fee

**Title to said estate or interest at the date hereof is vested in:**

Core Real Estate Opportunity Fund I, LLC, subject to paragraph no(s). 7 and 8 of Schedule B.

**The land referred to in this report is situated in the County of Los Angeles, State of California, and is described as follows:**

Lot 70 of Smith Brothers Compton Avenue, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 5, Page 103 of Maps, in the office of the County Recorder of said County.

Assessor's Parcel Numbers(s):  5106-023-029

Page 2

Order No. 150-1916773-07

## Schedule "B"

**At the date hereof exceptions to coverage in addition to the printed exceptions and exclusions contained in said policy form would be as follows:**

1   General and Special taxes for the fiscal year 2017-2018, including any assessments collected with current taxes.

| | |
|---|---|
| Total amount | **$5,718.20** |
| 1st installment | **$2,859.11**, Late |
| Penalty | **$285.91** (after 12/11/2017) |
| 2nd installment | **$2,859.09**, Late |
| Penalty | **$295.90** (after 04/10/2018) |
| Code area | 00007 - City of Los Angeles - 44 |
| Parcel No. | **5106-023-029** |
| Exemption | $none |

2   NOTE:  DEFAULTED TAX shown below:

| | |
|---|---|
| Delinquent Tax Year: | 2016 |
| Installment: | both |
| Amount: | $3,543.26/3,584.98 |
| Amount to redeem by: | May/June |

3   The Lien of future supplemental taxes, if any, assessed pursuant to the provisions of section 75, et seq of the revenue and taxation code of the state of California

4   Covenants, conditions and restrictions in an instrument recorded in Book 2240, Page 46, of Deeds, which provide that a violation thereof shall not defeat or render invalid the lien of any mortgage or Deed of Trust made in good faith and for value, but omitting any covenants or restrictions, if any, based upon race, color, religion, sex, handicap, familial status, or national origin unless and only to the extent that said covenant (a) is exempt under chapter 42, section 3604 of the United States code or (b) relates to handicap but does not discriminate against handicapped persons.

"NOTE: section 12955 of the government code provide the following: if this document contains any restriction based on race, color, religion, sex, familial status, marital status, disability, national origin, or ancestry, that restriction violates state and federal fair housing laws and is void, and may be removed pursuant to Section 12955 of the government code. Lawful restriction under state and federal law on the age of occupants in senior housing for older persons shall not be construed as restriction based on familial status."

5   An easement for the widening of 51st Street over the Southerly 10 feet of said land and all that portion of said land lying Northerly measured at right angles from the Southerly line of 51st Street as said street is shown on map of Rufus J. Stukey Tract recorded in Book 7 Page 13 of Maps, in the Office of the County Recorder of said County as condemned by final decree of condemnation a certified copy of which was recorded in Book D690 Page 260 Official Records. The right to construct, maintain and improve 51st Street as condemned by City of Los Angeles by final decree of condemnation entered in Case No. 661918 S.C.; a certified copy thereof being recorded in Book D690 Page 260 Official Records.

6   Omitted intentionally

7   The effect of a conveyance of said land

| | |
|---|---|
| From: | Core Real Estate Opportunity Fund I, LLC, a California Limited Liability Company |
| To: | Millennium Trust Company, LLC Custodian FBO WJA Secure Real Estate Fund, LLC, a California Limited Liability Company |
| Recorded: | 1/9/2014, as Instrument No. 2014-26915, Official Records. |

Prior to close of this transaction we will require evidence of the validity of the above conveyance.  The documentation appropriate to establish the validity of said conveyance will vary according to circumstances.  Therefore this office must be contacted to determine what documentation will be acceptable to this company.

Order No. 150-1916773-07

8    The effect of a conveyance of said land

From:                    Millennium Trust Company, LLC FBO WJA Secure Real Estate Fund, LLC
To:                       The Kingdom Trust Company, Custodian FBO WJA Secure Real Estate Fund, LLC
Recorded:          10/19/2017, as Instrument No. 2017-1200494, Official Records.

Prior to close of this transaction we will require evidence of the validity of the above conveyance. The documentation appropriate to establish the validity of said conveyance will vary according to circumstances. Therefore this office must be contacted to determine what documentation will be acceptable to this company.

9    A lien for unsecured property taxes in favor of the tax collector,

County of              Los Angeles
Amount:              **$403.62**
Taxpayer:            **Millennium Trust Company CSTDN**
Year/account no.:     14/40157860
Recorded:          **9/10/2015,** as Instrument No. **2015-1117736** , Official Records

10    The requirement that we be provided:

(1) A copy of the filed articles of organization of Core Real Estate Opportunity Fund I, LLC, a limited liability company.

(2) A current list of the names of said limited liability company members.

(3) A copy of said limited liability company's operating agreement, with a verified certificate that the operating agreement is a true and correct copy of the agreement now in effect.

11    The requirement that we be provided:

(1) A copy of the filed articles of organization of Millennium Trust Company, LLC Custodian FBO WJA Secure Real Estate Fund, LLC, a limited liability company.

(2) A current list of the names of said limited liability company members.

(3) A copy of said limited liability company's operating agreement, with a verified certificate that the operating agreement is a true and correct copy of the agreement now in effect.

12    Rights of parties in possession of said land by reason of unrecorded leases, if any. Please forward said leases for our examination.

**End of Schedule B**

Order No. 150-1916773-07

**"NOTES AND REQUIREMENTS SECTION"**

LENDER SERVICES GROUP

**NOTE NO. 1**

**AFFILIATED BUSINESS ARRANGEMENT DISCLOSURE STATEMENT NOTICE**

**This is to give you notice that Orange Coast Title Company owns an interest in Real Advantage Title Insurance Company.  This underwriter may be chosen by Orange Coast Title Company and this referral may provide Orange Coast Title Company a financial or other benefit.**

**You are NOT required to use the listed provider as a condition for settlement of your loan or purchase, sale or refinance of the subject property and you have the opportunity to select any of the Orange Coast Title Company title insurance underwriters for your transaction.  THERE ARE FREQUENTLY OTHER SETTLEMENT SERVICE PROVIDERS AVAILABLE WITH SIMILAR SERVICES.  YOU ARE FREE TO SHOP AROUND TO DETERMINE THAT YOU ARE RECEIVING THE BEST SERVICES AND THE BEST RATE FOR THESE SERVICES**

Notes section continued on next page…

EXHIBIT "2," PAGE 25

Order No. 150-1916773-07

**NOTE NO. 2**

California Revenue and Taxation Code Section 18662, effective January 1, 1994 and by amendment effective January 1, 2003, provides that the buyer in all sales of California Real Estate may be required to withhold 3 and 1/3% of the total sales price as California State Income Tax, subject to the various provisions of the law as therein contained.

**NOTE NO. 3 PAYOFF INFORMATION:**

Note: this company does require current beneficiary demands prior to closing.
If the demand is expired and a correct demand cannot be obtained, our requirements will be as follows:

A.    If this company accepts a verbal update on the demand, we may hold an amount equal to one monthly mortgage payment. The amount of this hold will be over and above the verbal hold the lender may have stipulated.

B.    If this company cannot obtain a verbal update on the demand, will either pay off the expired demand or wait for the amended demand, at the discretion of the escrow.

C.    In the event that a payoff is being made to a servicing agent for the beneficiary, this company will require a complete copy of the servicing agreement prior to close.

**NOTE NO. 4**

If this company is requested to disburse funds in connection with this transaction, chapter 598, statutes of 1989 mandates hold periods for checks deposited to escrow or sub-escrow accounts. The mandatory hold is one business day after the day deposited. Other checks require a hold period from three to seven business days after the day deposited.

### Notice Regarding Your Deposit of Funds

California Insurance Code Sections 12413 *et. Seq.* Regulates the disbursement of escrow and sub-escrow funds by title companies. The law requires that funds be deposited in the title company escrow and sub-escrow accounts and be available for withdrawal prior to disbursement. Funds deposited with the Company by wire transfer may be disbursed upon receipt. Funds deposited with the Company via cashier's checks drawn on a California based bank may be disbursed the next business day after the day of deposit. If funds are deposited with by other methods, recording or disbursement may be delayed. All escrow and sub-escrow funds received by the Company will be deposited with other funds in one or more non-interest bearing escrow accounts of the Company in a financial institution selected by the Company. The Company and/or its parent company may receive certain direct or indirect benefits from the financial institution by reason of the deposit of such funds or the maintenance of such accounts with the financial institution, and the Company shall have no obligation to account to the depositing party in any manner for the value of, or to pay such party, any benefit received by the Company and/or its parent Company. Those benefits may include, without limitation, credits allowed by such financial institution on loans to the Company and/or its parent company and earnings on investments made on the proceeds of such loans, accounting, reporting and other services and products of such financial institution. Such benefits shall be deemed additional compensation of the Company for its services in connection with the escrow or sub-escrow. If funds are to be deposited with **Orange Coast Title Company** by wire transfer, they should be wired to the following bank/account:

Wiring Instructions for This Office:

**Citizens Business Bank**
**301 Vanderbilt Way**
**San Bernardino, CA 92408**
**Account No. 245123027**
**ABA 122234149**
**Account name:  Orange Coast Title Company**
**Reference Order No.150-1916773-07**
**Steve Fernando, Title Officer**

**Note No. 5:**  The premium for the requested title work shall be split between the agent and underwriter 88%-12%.

Order No. 150-1916773-07



# Orange Coast Title Company

2411 W. La Palma Ave #300
Anaheim, CA 92801
714-822-3211

Lender Follow
TBD
Anaheim, CA 92801

**Attention:**      **Loan Processor**
**Borrower:**

**Lenders supplemental report**

The above numbered report (including any supplements or amendments thereto) is hereby modified and/or supplemented in order to reflect the following additional items relating to the issuance of an American Land Title Association loan policy form as follows:

A.      This report is preparatory to this issuance of an American Land Title Association loan policy of title insurance. This report discloses nothing, which would preclude the issuance of said American land title association loan policy of title insurance with endorsement no. 100 attached thereto.

B.      The improvements on said land are designated as:

A multiple family residence

1541 East 51st Street, in the City of Los Angeles, County of Los Angeles, State of California.

C.      The only conveyance(s) affecting said land recorded within 24 months of the date of this report are as follows:

| | |
|---|---|
| Grantor: | Millennium Trust Company, LLC FBO WJA Secure Real Estate Fund, LLC |
| Grantee: | The Kingdom Trust Company, Custodian FBO WJA Secure Real Estate Fund, LLC |
| Recorded: | 10/19/2017 as Instrument No. 2017-1200494, Official Records. |

Page 7

Order No. 150-1916773-07

## Attention

Please note that this preliminary report now has an extra copy of the legal description on a separate sheet of paper. There are no markings on the page. The idea is to provide you with a legal description that can be attached to other documents as needed.  That legal description page immediately follows this page.

Thank you for your support of **Orange Coast Title Company**. We hope that this makes your job a little easier.

Page 8

EXHIBIT "2," PAGE 28

Order No. 150-1916773-07

## Exhibit "A"

Lot 70 of Smith Brothers Compton Avenue, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 5, Page 103 of Maps, in the office of the County Recorder of said County.

Order No. 150-1916773-07

# CLTA Preliminary Report Form – Exhibit B (06-03-11)

### CLTA STANDARD COVERAGE POLICY – 1990
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to building or zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is owas a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien, or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy. (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.
3. Defects, liens, encumbrances, adverse claims or other matters: (a) whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant; (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy; (c) resulting in no loss or damage to the insured claimant; (d) attaching or created subsequent to Date of Policy; or (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage or for the estate or interest insured by this policy.
4. Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with the applicable doing business laws of the state in which the land is situated.
5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.
6. Any claim, which arises out of the transaction vesting in the insured the estate of interest insured by this policy or the transaction creating the interest of the insured lender, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws.

### EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART I

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:
1. Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records. Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.
2. Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.
3. Easements, liens or encumbrances, or claims thereof, which are not shown by the public records.
4. Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.
5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.
6. Any lien or right to a lien for services, labor or material not shown by the public records.

### CLTA/ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE (02/03/10)
### EXCLUSIONS

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:
1. Governmental police power, and the existence or violation of those portions of any law or government regulation concerning: a.building, b. zoning, c.land use d. improvements on the Land, e.land division; and ,f. environmental protection. This Exclusion does not limit the coverage described in Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23 or 27.
2. The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes. This Exclusion does not limit the coverage described in Covered Risk 14 or 15.
3. The right to take the Land by condemning it. This Exclusion does not limit the coverage described in Covered Risk 17.
4. Risks: a. that are created, allowed, or agreed to by You, whether or not they recorded in the Public Records; b. that are Known to You at the Policy Date, but not to Us, unless they are recorded in the Public Records at the Policy Date; c. that result in no loss to You; or d. that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8.e, 25, 26, 27, or 28.
5. Failure to pay value for Your Title.
6. Lack of a right: a. to any land outside the area specifically described and referred to in paragraph 3 of Schedule A; and b. in streets, alleys, or waterways that touch the Land. This Exclusion does not limit the coverage described in Covered Risk 11 or 21.
7.  The transfer of the Title to You is invalid as a preferential transfer or as a fraudulent transfer or conveyance under federal bankruptcy, state insolvency, or similar creditors' rights laws.

### LIMITATIONS ON COVERED RISKS

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:
• For Covered Risk 16, 18, 19, and 21 Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.
The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

|  | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 16: | 1 % of Policy Amount shown in Schedule A or $ 2,500 (whichever is less) | $ 10,000 |
| Covered Risk 18: | 1 % of Policy Amount shown in Schedule A or $ 5,000 (whichever is less) | $ 25,000 |
| Covered Risk 19: | 1 % of Policy Amount shown in Schedule A or $ 5,000 (whichever is less) | $ 25,000 |
| Covered Risk 21: | 1 % of Policy Amount shown in Schedule A or $ 2,500 (whichever is less) | $ 5,000 |

### ALTA RESIDENTIAL TITLE INSURANCE POLICY (6-1-87)
### EXCLUSIONS

In addition to the Exceptions in Schedule B, you are not insured against loss, costs, attorneys' fees, and expenses resulting from:
1. Governmental police power, and the existence or violation of any law or government regulation. This includes building and zoning ordinances and also laws and regulations concerning: * land use * improvements on the land * land division * environmental protection. This exclusion does not apply to violations or the enforcement of these matters which appear in the public records at Policy Date.  This exclusion does not limit the zoning coverage described in Items 12 and 13 of Covered Title Risks.
2. The right to take the land by condemning it, unless: *a notice of exercising the right appears in the public records on the Policy Date  *the taking happened prior to the Policy Date and is binding on you if you bought the land without knowing of the taking
3. Title Risks: *that are created, allowed, or agreed to by you  *that are known to you, but not to us, on the Policy Date - unless they appeared in the public records *that result in no loss to you  *that first affect your title after the Policy Date - this does not limit the labor and material lien coverage in Item 8 of Covered Title Risks
4. Failure to pay value for your land.
5. Lack of a right: *to any land outside the area specifically described and referred to in Item 3 of Schedule A OR *in streets, alleys, or waterways that touch your land. This exclusion does not limit the access coverage in Item 5 of Covered Title Risks.

### 2006 ALTA LOAN POLICY (06-17-06)
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:
1. (a) Any law, ordinance or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement erected on the land; (iii) the subdivision of land; or (iv) environmental protection; or the effect of any violation of these laws, ordinances or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3. Defects, liens, encumbrances, adverse claims or other matters:(a)created, suffered, assumed or agreed to by the Insured Claimant; (b)not known to the Company, not recorded in the public records at Date of Policy, but known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy; (c) resulting in no loss or damage to the Insured Claimant; (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13 or 14);or(e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4. Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state in which the Land is situated.
5. Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth in lending law.
6. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is (a) a fraudulent conveyance or fraudulent transfer, or (b) a preferential transfer for any reason not stated in Covered Risk 13(b) of this policy.
7. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records.  This Exclusion does not modify or limit the coverage provided under Covered Risk 11(b).

### EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) that arise by reason of:
1.(a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2.Any facts, rights, interests, or claims which are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.
3.Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.
4.Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the  Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.
5.(a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the Public Records.
6. Any lien or right to a lien for services, labor or material not shown by the Public Records.

### 2006 ALTA OWNER'S POLICY (06-17-06)
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:
1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, or relating to: (i) the occupancy, use, or enjoyment of the Land; (ii) the character, dimensions, or location of any improvement erected on the Land; (iii) the subdivision of land; or (IV) environmental protection; or the effect of any violation of these laws, ordinances, or governmental

Page 10

Order No. 150-1916773-07

regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5. (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3. Defects, liens, encumbrances, adverse claims, or other matters: (a) created, suffered, assumed, or agreed to by the Insured Claimant; (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;(c) resulting in no loss or damage to the Insured Claimant; (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.

4. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is (a) a fraudulent conveyance or fraudulent transfer; or (b) a preferential transfer for any reason not stated in Covered Risk 9 of this policy.

5. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

The above policy form may be issued to afford either Standard Coverage or Extended Coverage.  In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

## EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) that arise by reason of:

1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2. Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.

3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.

4. Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and that are not shown by the Public Records.

5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.

6. Any lien or right to a lien for services, labor or material not shown by the public records.

## ALTA EXPANDED COVERAGE RESIDENTIAL LOAN POLICY (07-26-10)

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys fees or expenses which arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including but not limited to building and zoning) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the Land; (ii) the character, dimensions or location of any improvement erected on the Land; (iii) the subdivision of the land; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risks 5, 6, 13(c), 13(d), 14, and 16.(b) Any governmental police power. This Exclusion 1(b)does not modify or limit the coverage provided under Covered Risks 5, 6, 13(c), 13(b), 14, and 16.

2. Rights of eminent domain.  This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3. Defects, liens, encumbrances, adverse claims or other matters (a) created, suffered, assumed or agreed to by the Insured Claimant; (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;(c) resulting in no loss or damage to the Insured Claimant;(d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risks  11, 16, 17, 18, 19, 20, 21, 22, 23, 24, 27 or 26); or (e)resulting in loss or damage which would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.

4. Unenforceability of the lien of the Insured Mortgage because of the inability or failure of the Insured to comply with applicable doing-business laws of the state in which the Land is situated.

5. Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury, or any consumer credit protection or truth in lending law.  This Exclusion does not modify or limit the coverage provided in Covered Risk 26.

6. Any claim of invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as to Advances or modifications made after the Insured has Knowledge that the vestee shown in Schedule A is no

longer the owner of the estate or interest covered by this policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11.

7. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching subsequent to Date of Policy in accordance with applicable building codes.  This Exclusion does not modify or limit the coverage provided in Covered Risk 5 or 6.

8. The failure of the residential structure, or any portion of it, to have been constructed before, on or after Date of Policy in accordance with applicable building codes.  This Exclusion does not modify or limit the coverage provided in Covered Risk 5 or 6.

9.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is (a) a fraudulent conveyance or fraudulent transfer, or (b) a preferential transfer for any reason not stated in Covered Risk 27(b) of this policy.

EXHIBIT "2," PAGE 31

Order No. 150-1916773-07

# Orange Coast Title Company
## PRIVACY POLICY

### We Are Committed to Safeguarding Customer Information

In order to better serve your needs now and in the future, we may ask you to provide us with certain information. We understand that you may be concerned about what we will do with such information – particularly any personal or financial information. We agree that you have a right to know how we will utilize the personal information that you provide to us. Therefore, we have adopted this Privacy Policy to govern the use and handling of your personal information.

### Applicability

This Privacy Policy governs our use of the information which you provide to us. It does not govern the manner in which we may use information we have obtained from any other source, such as information obtained from a public record or from another person or entity.

### Types of Information

Depending upon which of our services you are utilizing, the types of nonpublic personal information that we may collect include:

- Information we receive from you on applications, forms and in other communications to us, whether in writing, in person, by telephone or any other means.

- Information we receive from providers of services to us, such as appraisers, appraisal management companies, real estate agents and brokers and insurance agencies (this may include the appraised value, purchase price and other details about the property that is the subject of your transaction with us).

- Information about your transactions with us, our Affiliated Companies, or others; and

- Information we receive from a consumer reporting agency.

### Use of Information

We request information from you for our own legitimate business purposes and not for benefit of any nonaffiliated party. Therefore, we will not release your information to nonaffiliated parties except: (1) as necessary for us to provide the product or service you have requested of us; or (2) as permitted by law. We may, however, store such information indefinitely, including the period after which any customer relationship has ceased. Such information may be used for any internal purpose, such as quality control efforts or customer analysis.

### Former Customers

**Even if you are no longer our customer, our Privacy Policy will continue to apply to you.**

### Confidentiality and Security

We will use our best efforts to ensure that no unauthorized parties have access to any of your information. We restrict access to nonpublic personal information about you to those individuals and entities who need to know that information to provide products or services to you. We will use our best efforts to train and oversee our employees and agents to ensure that your information will be handled responsibly and in accordance with this Privacy Policy. We currently maintain physical, electronic, and procedural safeguards that comply with federal regulations to guard your nonpublic personal information.

### Other Important Information

We reserve the right to modify or supplement this Privacy Policy at any time. If our Privacy Policy changes, we will provide the new Privacy Policy before the new policy becomes effective.

Order No. 150-1916773-07



# Orange Coast Title Company

2411 W. La Palma Ave #300
Anaheim, CA 92801
714-822-3211

## CONFIRMATION OF CONVEYANCE

(Low or No Consideration Transfer)

I/We _____
Declare as Follows:

1. That I/We am/are the grantor(s) named in a certain grant deed or quit claim deed recorded as Instrument No. _____, in the County of _____, State of California.
2. That I/We did execute said conveyance on or about the date indicated.
3. That said Deed is valid and in full force and effect and that I/We claim no ownership interest in the property described therein.

4. That I/We hereby acknowledge, confirm, and ratify the above described conveyance.
5. That I/We did convey and transfer said property to the grantees and I/We am/are due no other consideration for my/our interest in the transferred property.
6. That I/We am/are making this declaration for the purposes of inducing Orange Coast Title Company to issue certain policies of title insurance, insuring title to said land, and that Orange Coast Title Company is not willing to insure title to said land if my/our interest was not transferred free from any remaining agreements or consideration.

I/We declare under penalty of perjury that the foregoing is true and correct and that this declaration is made this _____Day of _____, _____, at _____, California.

BY: _____    Social Security # _____

BY: _____    Social Security # _____

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy or validity of that document.

---

State of California
County of <u>Los Angeles</u>  } S.S.

On _____, before me, _____,

personally appeared _____

_____
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity (ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed this instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS MY HAND and OFFICIAL SEAL

Signature: _____

(Notary Seal)

**DO NOT USE THE SAME NOTARY AS USED TO EXECUTE THE DEED OR QUITCLAIM**

Page 13

Order No. 150-1916773-07

EXHIBIT "2," PAGE 34

# EXHIBIT "3"

1  **SMILEY WANG-EKVALL, LLP**
   Lei Lei Wang Ekvall, State Bar No. 163047
2  *lekvall@swelawfirm.com*
   Robert S. Marticello, State Bar No. 244256
3  *rmarticello@swelawfirm.com*
   Michael L. Simon, State Bar No. 300822
4  *msimon@swelawfirm.com*
   3200 Park Center Drive, Suite 250
5  Costa Mesa, California 92626
   Telephone:   714 445-1000
6  Facsimile:    714 445-1002

**FILED & ENTERED**

**JAN 10 2018**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY nbolte       DEPUTY CLERK

7  Attorneys for Debtor and Debtor-in-Possession

8                **UNITED STATES BANKRUPTCY COURT**

9                **CENTRAL DISTRICT OF CALIFORNIA**

10                     **SANTA ANA DIVISION**

11  In re

12  WJA ASSET MANAGEMENT, LLC,

13                        Debtor and
                  Debtor-in-Possession.
14

15  ☐  Affects 5827 WINLAND HILLS DRIVE
        DEVELOPMENT FUND, LLC
16  ☐  Affects ALABAMA HOUSING FUND,
        LLC
17  ☐  Affects CA EXPRESS FUND, LLC
18  ☐  Affects CA SEE JANE GO FUND,
        LLC
19  ☐  Affects CA WHIRL FUND, LLC
20  ☐  Affects CLAIRTON RESIDENTIAL
        RENEWAL, LLC
21  ☐  Affects EQUITY INDEXED
22      MANAGED FUND, LLC
    ☐  Affects LUXURY ASSET
23      PURCHASING INTERNATIONAL,
        LLC
24  ☐  Affects LVNV MULTI FAMILY LLC
25  ☐  Affects PMB MANAGED FUND, LLC
26  ☐  Affects PROSPER MANAGED FUND,
        LLC
27  ☐  Affects TD OPPORTUNITY FUND,
        LLC
28

Case No. 8:17-bk-11996-SC

Chapter 11

(Jointly Administered with Case Nos.
8:17-bk-11997-SC; 8:17-bk-11998-SC;
8:17-bk-11999-SC; 8:17-bk-12000-SC;
8:17-bk-12001-SC; 8:17-bk-12002-SC;
8:17-bk-12003-SC; 8:17-bk-12004-SC;
8:17-bk-12005-SC; 8:17-bk-12006-SC;
8:17-bk-12008-SC; 8:17-bk-12009-SC;
8:17-bk-12010-SC; 8:17-bk-12011-SC;
8:17-bk-12012-SC; 8:17-bk-12013-SC;
8:17-bk-12014-SC; 8:17-bk-12015-SC;
8:17-bk-12016-SC; 8:17-bk-12018-SC;
8:17-bk-12019-SC; 8:17-bk-12124-SC;
8:17-bk-12125-SC; 8:17-bk-12126-SC;
8:17-bk-12127-SC and 8:17-bk-12285-SC)

**ORDER GRANTING APPLICATION OF
WJA SECURE REAL ESTATE FUND,
LLC, FOR APPROVAL TO EMPLOY
ELITE PROPERTIES REALTY AS REAL
ESTATE BROKER**

**[No Hearing Required Pursuant to
Local Bankruptcy Rules 2014-1(b)(1)
and 9013-1(o)]**

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

2732764.1

ORDER

1   ☐ Affects TD REO FUND, LLC

2   ☐ Affects URBAN PRODUCE FUND, LLC

3   ☐ Affects WHIRL FUND, LLC

4   ☐ Affects WJA EXPRESS FUND, LLC

5   ☐ Affects WJA REAL ESTATE OPPORTUNITY FUND I, LLC

6   ☐ Affects WJA REAL ESTATE OPPORTUNITY FUND II, LLC

7   ☒ Affects WJA SECURE REAL ESTATE FUND, LLC

8   ☐ Affects WJA SECURE INCOME FUND, LLC

9   ☐ Affects WILLIAM JORDAN INVESTMENTS, INC.

10

11  ☐ Affects CA REAL ESTATE OPPORTUNITY FUND I, LLC

12  ☐ Affects CA REAL ESTATE OPPORTUNITY FUND II, LLC

13  ☐ Affects CALIFORNIA INDEXED GROWTH FUND, LLC

14  ☐ Affects SECURE CALIFORNIA INCOME FUND, LLC

15

16  ☐ Affects CA REAL ESTATE OPPORTUNITY FUND III, LLC

17  ☐ Affects All Debtors

18

19       On December 20, 2017, WJA Secure Real Estate Fund, LLC, one of the debtors-

20  in-possession in the above-captioned cases ("Debtor"), filed and served the *Application*

21  *of WJA Secure Real Estate Fund, LLC, for Approval to Employ Elite Properties Realty as*

22  *Real Estate Broker* [Docket No. 330] ("Application") and notice of the Application [Docket

23  No. 331] ("Notice").  No opposition to or request for hearing on the Notice or Application

24  was filed or served.  Having reviewed the Notice and Application and papers filed in

25  support thereof, service being proper, and good cause appearing therefrom,

26       **IT IS ORDERED** that the Application is granted and the Debtor is authorized to

27  employ Elite Properties Realty as real estate broker on the terms and conditions set forth

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 ● Fax 714 445-1002

2732764.1

2

ORDER



in the Application.

###

Date: January 10, 2018

Scott C. Clarkson
United States Bankruptcy Judge

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

2732764.1

3

ORDER

# EXHIBIT "4"



CALIFORNIA
ASSOCIATION
OF REALTORS®

**DISCLOSURE REGARDING**
**REAL ESTATE AGENCY RELATIONSHIP**
(Listing Firm to Seller)
(As required by the Civil Code)
(C.A.R. Form AD, Revised 12/14)

☐ (If checked) This form is being provided in connection with a transaction for a leasehold interest exceeding one year as per Civil Code section 2079.13(k) and (l).

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

**SELLER'S AGENT**
A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:
To the Seller: A Fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.
To the Buyer and the Seller:
   (a)Diligent exercise of reasonable skill and care in performance of the agent's duties.
   (b)A duty of honest and fair dealing and good faith.
   (c)A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**BUYER'S AGENT**
A selling agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:
To the Buyer: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Buyer.
To the Buyer and the Seller:
   (a)Diligent exercise of reasonable skill and care in performance of the agent's duties.
   (b)A duty of honest and fair dealing and good faith.
   (c)A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties.
An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**AGENT REPRESENTING BOTH SELLER AND BUYER**
A real estate agent, either acting directly or through one or more associate licensees, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.
In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:
   (a)A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.
   (b)Other duties to the Seller and the Buyer as stated above in their respective sections.
In representing both Seller and Buyer, the agent may not, without the express permission of the respective party, disclose to the other party that the Seller will accept a price less than the listing price or that the Buyer will pay a price greater than the price offered.
The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect his or her own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.
Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction. **This disclosure form includes the provisions of Sections 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully. I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE BACK (OR A SEPARATE PAGE).**

☐ Buyer ☒ Seller ☐ Landlord ☐ Tenant _____ Date_____
                                                 *Howard Grobstein, Chief Restructuring Officer*

☐ Buyer ☐ Seller ☐ Landlord ☐ Tenant _____ Date_____

Agent _____ *Elite Properties Realty* _____ BRE Lic. # *00878444*
                             Real Estate Broker (Firm)
By _____ BRE Lic. # *00630158* _____ Date _____
    (Salesperson or Broker-Associate)   *Phil Seymour*

Agency Disclosure Compliance (Civil Code §2079.14):
• When the listing brokerage company also represents Buyer/Tenant: The Listing Agent shall have one AD form signed by Seller/Landlord and a different AD form signed by Buyer/Tenant.
• When Seller/Landlord and Buyer/Tenant are represented by different brokerage companies: (i) the Listing Agent shall have one AD form signed by Seller/Landlord and (ii) the Buyer's/Tenant's Agent shall have one AD form signed by Buyer/Tenant and either that same or a different AD form presented to Seller/Landlord for signature prior to presentation of the offer. If the same form is used, Seller may sign here:

**(SELLER/LANDLORD: DO NOT SIGN HERE)** _____ **(SELLER/LANDLORD: DO NOT SIGN HERE)** _____
Seller/Landlord            Date                      Seller/Landlord            Date

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
Copyright © 1991-2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

Reviewed by _____ Date _____

EQUAL HOUSING OPPORTUNITY

**AD REVISED 12/14 (PAGE 1 OF 2)**
**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 1 OF 2)**

Elite Properties Realty, 148 S. Beverly Dr. Ste.#200 Beverly Hills, CA 90212      Phone: 310.271.4040    Fax: 310.271.4185    1541 E. 51st. St.
Philip Seymour            Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

CIVIL CODE SECTIONS 2079.24 (2079.16 APPEARS ON THE FRONT)

**2079.13** As used in Sections 2079.14 to 2079.24, inclusive, the following terms have the following meanings: **(a)** "Agent" means a person acting under provisions of Title 9 (commencing with Section 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. **(b)** "Associate licensee" means a person who is licensed as a real estate broker or salesperson under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code and who is either licensed under a broker or has entered into a written contract with a broker to act as the broker's agent in connection with acts requiring a real estate license and to function under the broker's supervision in the capacity of an associate licensee. The agent in the real property transaction bears responsibility for his or her associate licensees who perform as agents of the agent. When an associate licensee owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the associate licensee functions. **(c)** "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes vendee or lessee. **(d)** "Commercial real property" means all real property in the state, except single-family residential real property, dwelling units made subject to Chapter 2 (commencing with Section 1940) of Title 5, mobilehomes, as defined in Section 798.3, or recreational vehicles, as defined in Section 799.29. **(e)** "Dual agent" means an agent acting, either directly or through an associate licensee, as agent for both the seller and the buyer in a real property transaction. **(f)** "Listing agreement" means a contract between an owner of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer. **(g)** "Listing agent" means a person who has obtained a listing of real property to act as an agent for compensation. **(h)** "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the listing agent. **(i)** "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property. **(j)** "Offer to purchase" means a written contract executed by a buyer acting through a selling agent that becomes the contract for the sale of the real property upon acceptance by the seller. **(k)** "Real property" means any estate specified by subdivision (1) or (2) of Section 761 in property that constitutes or is improved with one to four dwelling units, any commercial real property, any leasehold in these types of property exceeding one year's duration, and mobilehomes, when offered for sale or sold through an agent pursuant to the authority contained in Section 10131.6 of the Business and Professions Code. **(l)** "Real property transaction" means a transaction for the sale of real property in which an agent is employed by one or more of the principals to act in that transaction, and includes a listing or an offer to purchase. **(m)** "Sell," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer, and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of Section 2985, and transactions for the creation of a leasehold exceeding one year's duration. **(n)** "Seller" means the transferor in a real property transaction, and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor. **(o)** "Selling agent" means a listing agent who acts alone, or an agent who acts in cooperation with a listing agent, and who sells or finds and obtains a buyer for the real property, or an agent who locates property for a buyer or who finds a buyer for a property for which no listing exists and presents an offer to purchase to the seller. **(p)** "Subagent" means a person to whom an agent delegates agency powers as provided in Article 5 (commencing with Section 2349) of Chapter 1 of Title 9. However, "subagent" does not include an associate licensee who is acting under the supervision of an agent in a real property transaction.

**2079.14** Listing agents and selling agents shall provide the seller and buyer in a real property transaction with a copy of the disclosure form specified in Section 2079.16, and, except as provided in subdivision (c), shall obtain a signed acknowledgement of receipt from that seller or buyer, except as provided in this section or Section 2079.15, as follows: **(a)** The listing agent, if any, shall provide the disclosure form to the seller prior to entering into the listing agreement. **(b)** The selling agent shall provide the disclosure form to the seller as soon as practicable prior to presenting the seller with an offer to purchase, unless the selling agent previously provided the seller with a copy of the disclosure form pursuant to subdivision (a). **(c)** Where the selling agent does not deal on a face-to-face basis with the seller, the disclosure form prepared by the selling agent may be furnished to the seller (and acknowledgement of receipt obtained for the selling agent from the seller) by the listing agent, or the selling agent may deliver the disclosure form by certified mail addressed to the seller at his or her last known address, in which case no signed acknowledgement of receipt is required. **(d)** The selling agent shall provide the disclosure form to the buyer as soon as practicable prior to execution of the buyer's offer to purchase, except that if the offer to purchase is not prepared by the selling agent, the selling agent shall present the disclosure form to the buyer not later than the next business day after the selling agent receives the offer to purchase from the buyer.

**2079.15** In any circumstance in which the seller or buyer refuses to sign an acknowledgement of receipt pursuant to Section 2079.14, the agent, or an associate licensee acting for an agent, shall set forth, sign, and date a written declaration of the facts of the refusal.

**2079.16** Reproduced on Page 1 of this AD form.

**2079.17 (a)** As soon as practicable, the selling agent shall disclose to the buyer and seller whether the selling agent is acting in the real property transaction exclusively as the buyer's agent, exclusively as the seller's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the selling agent prior to or coincident with execution of that contract by the buyer and the seller, respectively. **(b)** As soon as practicable, the listing agent shall disclose to the seller whether the listing agent is acting in the real property transaction exclusively as the seller's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the listing agent prior to or coincident with the execution of that contract by the seller. **(c)** The confirmation required by subdivisions (a) and (b) shall be in the following form.

_____ (DO NOT COMPLETE. SAMPLE ONLY)    is the agent of (check one): ☐ the seller exclusively; or ☐ both the buyer and seller.
(Name of Listing Agent)

_____ (DO NOT COMPLETE. SAMPLE ONLY)    is the agent of (check one): ☐ the buyer exclusively; or ☐ the seller exclusively; or
(Name of Selling Agent if not the same as the Listing Agent)    ☐ both the buyer and seller.

**(d)** The disclosures and confirmation required by this section shall be in addition to the disclosure required by Section 2079.14.

**2079.18** No selling agent in a real property transaction may act as an agent for the buyer only, when the selling agent is also acting as the listing agent in the transaction.

**2079.19** The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.

**2079.20** Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article if the requirements of Section 2079.14 and Section 2079.17 are complied with.

**2079.21** A dual agent shall not disclose to the buyer that the seller is willing to sell the property at a price less than the listing price, without the express written consent of the seller. A dual agent shall not disclose to the seller that the buyer is willing to pay a price greater than the offering price, without the express written consent of the buyer. This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.

**2079.22** Nothing in this article precludes a listing agent from also being a selling agent, and the combination of these functions in one agent does not, of itself, make that agent a dual agent.

**2079.23** A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship.

**2079.24** Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____



**AD REVISED 12/14 (PAGE 2 OF 2)**

**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 2 OF 2)**



Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com    1541 E. 51st. St.

EXHIBIT "2," PAGE 19
EXHIBIT "4," PAGE 39



**CALIFORNIA
ASSOCIATION
OF REALTORS®**

### POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER
### OR SELLER - DISCLOSURE AND CONSENT
(C.A.R. Form PRBS, 11/14)

A real estate broker (Broker), whether a corporation, partnership or sole proprietorship, may represent more than one buyer or seller. This multiple representation can occur through an individual licensed as a broker or salesperson or through different individual broker's or salespersons (associate licensees) acting under the Broker's license. The associate licensees may be working out of the same or different office locations.

**Multiple Buyers:** Broker (individually or through its associate licensees) may be working with many prospective buyers at the same time. These prospective buyers may have an interest in, and make offers on, the same properties. Some of these properties may be listed with Broker and some may not. Broker will not limit or restrict any particular buyer from making an offer on any particular property whether or not Broker represents other buyers interested in the same property.

**Multiple Sellers:** Broker (individually or through its associate licensees) may have listings on many properties at the same time. As a result, Broker will attempt to find buyers for each of those listed properties. Some listed properties may appeal to the same prospective buyers. Some properties may attract more prospective buyers than others. Some of these prospective buyers may be represented by Broker and some may not. Broker will market all listed properties to all prospective buyers whether or not Broker has another or other listed properties that may appeal to the same prospective buyers.

**Dual Agency:** If Seller is represented by Broker, Seller acknowledges that broker may represent prospective buyers of Seller's property and consents to Broker acting as a dual agent for both seller and buyer in that transaction. If Buyer is represented by Broker, buyer acknowledges that Broker may represent sellers of property that Buyer is interested in acquiring and consents to Broker acting as a dual agent for both buyer and seller with regard to that property.

In the event of dual agency, seller and buyer agree that: **(a)** Broker, without the prior written consent of the Buyer, will not disclose to seller that the Buyer is willing to pay a price greater than the offered price; **(b)** Broker, without the prior written consent of the seller, will not disclose to the buyer that seller is willing to sell property at a price less than the listing price; and **(c)** other than as set forth in (a) and (b) above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the property to both parties.

**Offers not necessarily confidential:** Buyer is advised that seller or listing agent may disclose the existence, terms, or conditions of buyer's offer unless all parties and their agent have signed a written confidentiality agreement. Whether any such information is actually disclosed depends on many factors, such as current market conditions, the prevailing practice in the real estate community, the listing agent's marketing strategy and the instructions of the seller.

Buyer and seller understand that Broker may represent more than one buyer or more than one seller and even both buyer and seller on the same transaction and consents to such relationships.

**Seller and/or Buyer acknowledges reading and understanding this Possible Representation of More Than One Buyer or Seller - Disclosure and Consent and agrees to the agency possibilities disclosed.**

Seller _____ *Howard Grobstein, Chief Restructuring Officer* Date _____
Seller _____ Date _____
Buyer _____ Date _____
Buyer _____ Date _____

Real Estate Broker (Firm) *Elite Properties Realty* _____ CalBRE Lic # *00878444* Date _____
By _____ CalBRE Lic # *00630158* Date _____
    *Phil Seymour*

Real Estate Broker (Firm) _____ CalBRE Lic # _____ Date _____
By _____ CalBRE Lic # _____ Date _____

© 2014, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
*a subsidiary of the California Association of REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____


EQUAL HOUSING
OPPORTUNITY

**PRBS 11/14 (PAGE 1 OF 1)**

**POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER OR SELLER (PRBS PAGE 1 OF 1)**

EXHIBIT "2," PAGE 20
EXHIBIT "4," PAGE 40

**CALIFORNIA
ASSOCIATION
OF REALTORS®**

### RESIDENTIAL LISTING AGREEMENT
**(Exclusive Authorization and Right to Sell)**
(C.A.R. Form RLA, Revised 6/17)

**Date Prepared:** _11/09/2017_                                            ,

1. **EXCLUSIVE RIGHT TO SELL:** _____ _Howard Grobstein, Chief Restructuring Officer_ _____ ("Seller")
hereby employs and grants _____ _Elite Properties Realty_ _____ ("Broker")
beginning (date) _____ and ending at 11:59 P.M. on (date) _____ ("Listing Period")
the exclusive and irrevocable right to sell or exchange the real property described as _1541 E. 51st St._
_____, situated in _Los Angeles_ (City),
_Los Angeles_ (County), California, _90011_ (Zip Code), Assessor's Parcel No. _5106-023-029_ ("Property").
☐ This Property is a manufactured (mobile) home. See addendum for additional terms.
☐ This Property is being sold as part of a probate, conservatorship or guardianship. See addendum for additional terms.

2. **LISTING PRICE AND TERMS:**
   **A.** The listing price shall be: _Five Hundred Forty-Nine Thousand_
   _____ Dollars ($ _549,000.00_ ).
   **B.** Listing Terms: _ALL CASH_
   _____.

3. **COMPENSATION TO BROKER:**
   **Notice: The amount or rate of real estate commissions is not fixed by law. They are set by each Broker individually and may be negotiable between Seller and Broker (real estate commissions include all compensation and fees to Broker).**
   **A.** Seller agrees to pay to Broker as compensation for services irrespective of agency relationship(s), either ☒ _5.000_ percent of the listing price (or if a purchase agreement is entered into, of the purchase price), or ☐ $ _____, AND _____, as follows:
      **(1)** If during the Listing Period, or any extension, Broker, cooperating broker, Seller or any other person procures a ready, willing, and able buyer(s) whose offer to purchase the Property on any price and terms is accepted by Seller, provided the Buyer completes the transaction or is prevented from doing so by Seller. (Broker is entitled to compensation whether any escrow resulting from such offer closes during or after the expiration of the Listing Period, or any extension.)
   **OR (2)** If within _____ calendar days (a) after the end of the Listing Period or any extension; or (b) after any cancellation of this Agreement, unless otherwise agreed, Seller enters into a contract to sell, convey, lease or otherwise transfer the Property to anyone ("Prospective Buyer") or that person's related entity: (i) who physically entered and was shown the Property during the Listing Period or any extension by Broker or a cooperating broker; or (ii) for whom Broker or any cooperating broker submitted to Seller a signed, written offer to acquire, lease, exchange or obtain an option on the Property. Seller, however, shall have no obligation to Broker under paragraph 3A(2) unless, not later than the end of the Listing Period or any extension or cancellation, Broker has given Seller a written notice of the names of such Prospective Buyers.
   **OR (3)** If, without Broker's prior written consent, the Property is withdrawn from sale, conveyed, leased, rented, otherwise transferred, or made unmarketable by a voluntary act of Seller during the Listing Period, or any extension.
   **B.** If completion of the sale is prevented by a party to the transaction other than Seller, then compensation which otherwise would have been earned under paragraph 3A shall be payable only if and when Seller collects damages by suit, arbitration, settlement or otherwise, and then in an amount equal to the lesser of one-half of the damages recovered or the above compensation, after first deducting title and escrow expenses and the expenses of collection, if any.
   **C.** In addition, Seller agrees to pay Broker: _N/A_ _____.
   **D.** Seller has been advised of Broker's policy regarding cooperation with, and the amount of compensation offered to, other brokers.
      **(1)** Broker is authorized to cooperate with and compensate brokers participating through the multiple listing service(s) ("MLS") by offering to MLS brokers out of Broker's compensation specified in 3A, either ☒ _2.500_ percent of the purchase price, or ☐ $ _____.
      **(2)** Broker is authorized to cooperate with and compensate brokers operating outside the MLS as per Broker's policy.
   **E.** Seller hereby irrevocably assigns to Broker the above compensation from Seller's funds and proceeds in escrow. Broker may submit this Agreement, as instructions to compensate Broker pursuant to paragraph 3A, to any escrow regarding the Property involving Seller and a buyer, Prospective Buyer or other transferee.
   **F. (1)** Seller represents that Seller has not previously entered into a listing agreement with another broker regarding the Property, unless specified as follows: _N/A_ _____.
      **(2)** Seller warrants that Seller has no obligation to pay compensation to any other broker regarding the Property unless the Property is transferred to any of the following individuals or entities: _N/A_ _____
      _____.
      **(3)** If the Property is sold to anyone listed above during the time Seller is obligated to compensate another broker: (i) Broker is not entitled to compensation under this Agreement; and (ii) Broker is not obligated to represent Seller in such transaction.

© 2017, California Association of REALTORS®, Inc.

Seller's Initials ( _____ ) ( _____ )

**RLA REVISED 6/17 (PAGE 1 OF 5)**

### RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 1 OF 5)

EXHIBIT "2," PAGE 21
EXHIBIT "4," PAGE 41

Property Address: *1541 E. 51st St. , Los Angeles, CA 9001*   Date: *11/09/2017*

**4.  A.  ITEMS EXCLUDED AND INCLUDED:** Unless otherwise specified in a real estate purchase agreement, all fixtures and fittings that are attached to the Property are included, and personal property items are excluded, from the purchase price.
  **ADDITIONAL ITEMS EXCLUDED:** _____.
  **ADDITIONAL ITEMS INCLUDED:** _____.
  Seller intends that the above items be excluded or included in offering the Property for sale, but understands that**:** (i) the purchase agreement supersedes any intention expressed above and will ultimately determine which items are excluded and included in the  sale; and (ii) Broker is not responsible for and does not guarantee that the above exclusions and/or inclusions will be in the purchase agreement.

  **B.  (1) Leased Or Not Owned Items:** The following items are leased or not owned by Seller:
  ☐ Solar power system   ☐ Alarm system   ☐ Propane tank   ☐ Water Softener
  ☐ Other _____

  **(2) Liened Items:** The following items have been financed and a lien has been placed on the Property to secure payment:
  ☐ Solar power system   ☐ Windows or doors   ☐ Heating/Ventilation/Air conditioning system
  ☐ Other _____
  Seller will provide to Buyer, as part of the sales agreement, copies of lease documents, or other documents obligating Seller to pay for any such leased or liened item.

**5.  MULTIPLE LISTING SERVICE:**
  **A.** Broker is a participant/subscriber to *including but not limited to MLS/CLAW*  Multiple Listing Service (MLS) and possibly others. Unless otherwise instructed in writing the Property will be listed with the MLS(s) specified above. That MLS is (or if checked ☐ is not) the primary MLS for the geographic area of the Property. All terms of the transaction, including sales price and financing, if applicable, (i) will be provided to the MLS in which the property is listed for publication, dissemination and use by persons and entities on terms approved by the MLS and (ii) may be provided to the MLS even if the Property was not listed with the MLS.

---

**BENEFITS OF USING THE MLS; IMPACT OF OPTING OUT OF THE MLS; PRESENTING ALL OFFERS**

**WHAT IS AN MLS?** The MLS is a database of properties for sale that is available and disseminated to and accessible by all other real estate agents who are participants or subscribers to the MLS. Property information submitted to the MLS describes the price, terms and conditions under which the Seller's property is offered for sale (including but not limited to the listing broker's offer of compensation to other brokers). It is likely that a significant number of real estate practitioners in any given area are participants or subscribers to the MLS. The MLS may also be part of a reciprocal agreement to which other multiple listing services belong. Real estate agents belonging to other multiple listing services that have reciprocal agreements with the MLS also have access to the information submitted to the MLS. The MLS may further transmit listing information to Internet sites that post property listings online.

**EXPOSURE TO BUYERS THROUGH MLS:** Listing property with an MLS exposes a seller's property to all real estate agents and brokers (and their potential buyer clients) who are participants or subscribers to the MLS or a reciprocating MLS.

**CLOSED/PRIVATE LISTING CLUBS OR GROUPS:** Closed or private listing clubs or groups are not the same as the MLS. The MLS referred to above is accessible to all eligible real estate licensees and provides broad exposure for a listed property. Private or closed listing clubs or groups of licensees may have been formed outside the MLS. Private or closed listing clubs or groups are accessible to a more limited number of licensees and generally offer less exposure for listed property. Whether listing property through a closed, private network - and excluding it from the MLS - is advantageous or disadvantageous to a seller, and why, should be discussed with the agent taking the Seller's listing.

**NOT LISTING PROPERTY IN A LOCAL MLS:** If the Property is listed in an MLS which does not cover the geographic area where the Property is located then real estate agents and brokers working that territory, and Buyers they represent looking for property in the neighborhood, may not be aware the Property is for sale.

**OPTING OUT OF MLS:** If Seller elects to exclude the Property from the MLS, Seller understands and acknowledges that: (a) real estate agents and brokers from other real estate offices, and their buyer clients, who have access to that MLS may not be aware that Seller's Property is offered for sale; (b) Information about Seller's Property will not be transmitted from the MLS to various real estate Internet sites that are used by the public to search for property listings; (c) real estate agents, brokers and members of the public may be unaware of the terms and conditions under which Seller is marketing the Property.

**REDUCTION IN EXPOSURE:** Any reduction in exposure of the Property may lower the number of offers and negatively impact the sales price.

**PRESENTING ALL OFFERS:** Seller understands that Broker must present all offers received for Seller's Property unless Seller gives Broker written instructions to the contrary.

Seller's Initials ( _____ )( _____ )        Broker's/Agent's Initials ( _____ )( _____ )

---

Seller's Initials   ( _____ )   ( _____ )

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 2 OF 5)**

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

1541 E. 51st. St.

EXHIBIT "2," PAGE 22
EXHIBIT "4," PAGE 42

Property Address: *1541 E. 51st St. , Los Angeles, CA 9001*    Date: *11/09/2017*

**B.** MLS rules generally provide that residential real property and vacant lot listings be submitted to the MLS within 2 days or some other period of time after all necessary signatures have been obtained on the listing agreement. Broker will not have to submit this listing to the MLS if, within that time, Broker submits to the MLS an appropriate form signed by Seller.
☐ Seller elects to exclude the Property from the MLS as provided by C.A.R. Form SELM or the local equivalent form.

**C.** MLS rules allow MLS data to be made available by the MLS to additional Internet sites unless Broker gives the MLS instructions to the contrary. Seller acknowledges that for any of the below opt-out instructions to be effective, Seller must make them on a separate instruction to Broker signed by Seller. Specific information that can be excluded from the Internet as permitted by (or in accordance with) the MLS is as follows:

**(1) Property Availability On The MLS; Address On the MLS:** Seller can instruct Broker to have the MLS not display the Property or the Property address on the Internet. Seller understands that either of these opt-outs would mean consumers searching for listings on the Internet may not see the Property or Property's address in response to their search.

**(2) Feature Opt-Outs:** Seller can instruct Broker to advise the MLS that Seller does not want visitors to MLS Participant or Subscriber Websites or Electronic Displays that display the Property listing to have the features below. Seller understands (i) that these opt-outs apply only to Websites or Electronic Displays of MLS Participants and Subscribers who are real estate broker and agent members of the MLS; (ii) that other Internet sites may or may not have the features set forth herein; and (iii) that neither Broker nor the MLS may have the ability to control or block such features on other Internet sites.

**(a) Comments And Reviews:** The ability to write comments or reviews about the Property on those sites; or the ability to link to another site containing such comments or reviews if the link is in immediate conjunction with the Property display.

**(b) Automated Estimate Of Value:** The ability to create an automated estimate of value or to link to another site containing such an estimate of value if the link is in immediate conjunction with the Property display. ☐ Seller elects to opt out of certain Internet features as provided by C.A.R. Form SELI or the local equivalent form.

**6. SELLER REPRESENTATIONS:** Seller represents that, unless otherwise specified in writing, Seller is unaware of: (i) any Notice of Default recorded against the Property; (ii) any delinquent amounts due under any loan secured by, or other obligation affecting, the Property; (iii) any bankruptcy, insolvency or similar proceeding affecting the Property; (iv) any litigation, arbitration, administrative action, government investigation or other pending or threatened action that affects or may affect the Property or Seller's ability to transfer it; and (v) any current, pending or proposed special assessments affecting the Property. Seller shall promptly notify Broker in writing if Seller becomes aware of any of these items during the Listing Period or any extension thereof.

**7. BROKER'S AND SELLER'S DUTIES:**
**A.** Broker agrees to exercise reasonable effort and due diligence to achieve the purposes of this Agreement. Unless Seller gives Broker written instructions to the contrary, Broker is authorized, but not required, to (i) order reports and disclosures including those specified in 7C as necessary, (ii) advertise and market the Property by any method and in any medium selected by Broker, including MLS and the Internet, and, to the extent permitted by these media, control the dissemination of the information submitted to any medium; and (iii) disclose to any real estate licensee making an inquiry the receipt of any offers on the Property and the offering price of such offers.

**B.** Seller agrees to consider offers presented by Broker, and to act in good faith to accomplish the sale of the Property by, among other things, making the Property available for showing at reasonable times and, subject to paragraph 3F, referring to Broker all inquiries of any party interested in the Property. Seller is responsible for determining at what price to list and sell the Property.

**C.** Investigations and Reports: Seller agrees, within 5 (or ____) Days of the beginning date of this Agreement, to pay for the following pre-sale reports: ☐ Structural Pest Control ☐ General Property Inspection ☐ Homeowners Association Documents ☐ Other _____.

**D.** Seller further agrees to indemnify, defend and hold Broker harmless from all claims, disputes, litigation, judgments attorney fees and costs arising from any incorrect or incomplete information supplied by Seller, or from any material facts that Seller knows but fails to disclose including dangerous or hidden conditions on the Property..

**8. DEPOSIT:** Broker is authorized to accept and hold on Seller's behalf any deposits to be applied toward the purchase price.

**9. AGENCY RELATIONSHIPS:**
**A. Disclosure:** The Seller acknowledges receipt of a ☒ "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD).

**B. Seller Representation:** Broker shall represent Seller in any resulting transaction, except as specified in paragraph 3F.

**C. Possible Dual Agency With Buyer:** Depending upon the circumstances, it may be necessary or appropriate for Broker to act as an agent for both Seller and buyer, exchange party, or one or more additional parties ("Buyer"). Broker shall, as soon as practicable, disclose to Seller any election to act as a dual agent representing both Seller and Buyer. If a Buyer is procured directly by Broker or an associate-licensee in Broker's firm, Seller hereby consents to Broker acting as a dual agent for Seller and Buyer. In the event of an exchange, Seller hereby consents to Broker collecting compensation from additional parties for services rendered, provided there is disclosure to all parties of such agency and compensation. Seller understands and agrees that: (i) Broker, without the prior written consent of Seller, will not disclose to Buyer that Seller is willing to sell the Property at a price less than the listing price; (ii) Broker, without the prior written consent of Buyer, will not disclose to Seller that Buyer is willing to pay a price greater than the offered price; and (iii) except for (i) and (ii) above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.

**D. Confirmation:** Broker shall confirm the agency relationship described above, or as modified, in writing, prior to or concurrent with Seller's execution of a purchase agreement.

Seller's Initials    (_____)    (_____)



**RLA REVISED 6/17 (PAGE 3 OF 5)**

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 3 OF 5)**

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com    **1541 E. 51st St.**

EXHIBIT "2," PAGE 23
EXHIBIT "4," PAGE 43

Property Address: _1541 E. 51st St. , Los Angeles, CA 90011_                                              Date: _11/09/2017_

**E. Potentially Competing Sellers and Buyers:** Seller understands that Broker may have or obtain listings on other properties, and that potential buyers may consider, make offers on, or purchase through Broker, property the same as or similar to Seller's Property. Seller consents to Broker's representation of sellers and buyers of other properties before, during and after the end of this Agreement. Seller acknowledges receipt of a ☒ "Possible Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).

10. **SECURITY, INSURANCE, SHOWINGS, AUDIO AND VIDEO:** Broker is not responsible for loss of or damage to personal or real property, or person, whether attributable to use of a keysafe/lockbox, a showing of the Property, or otherwise. Third parties, including, but not limited to, appraisers, inspectors, brokers and prospective buyers, may have access to, and take videos and photographs of, the interior of the Property. Seller agrees: (i) to take reasonable precautions to safeguard and protect valuables that might be accessible during showings of the Property; and (ii) to obtain insurance to protect against these risks. Broker does not maintain insurance to protect Seller. Persons visiting the Property may not be aware that they could be recorded by audio or visual devices installed by Seller (such as "nanny cams" and hidden security cameras). Seller is advised to post notice disclosing the existence of security devices.

11. **PHOTOGRAPHS AND INTERNET ADVERTISING:**

**A.** In order to effectively market the Property for sale it is often necessary to provide photographs, virtual tours and other media to buyers. Seller agrees (or ☐ checked, does not agree) that Broker may photograph or otherwise electronically capture images of the exterior and interior of the Property ("Images") for static and/or virtual tours of the Property by buyers and others for use on Broker's website, the MLS, and other marketing materials and sites. Seller acknowledges that once Images are placed on the Internet neither Broker nor Seller has control over who can view such Images and what use viewers may make of the Images, or how long such Images may remain available on the Internet. Seller further assigns any rights in all Images to the Broker and agrees that such Images are the property of Broker and that Broker may use such Images for advertising, including post sale and for Broker's business in the future.

**B.** Seller acknowledges that prospective buyers and/or other persons coming onto the property may take photographs, videos or other images of the property. Seller understands that Broker does not have the ability to control or block the taking and use of Images by any such persons. (If checked ) ☐ Seller instructs Broker to publish in the MLS that taking of Images is limited to those persons preparing Appraisal or Inspection reports. Seller acknowledges that unauthorized persons may take images who do not have access to or have not read any limiting instruction in the MLS or who take images regardless of any limiting instruction in the MLS. Once Images are taken and/or put into electronic display on the Internet or otherwise, neither Broker nor Seller has control over who views such Images nor what use viewers may make of the Images.

12. **KEYSAFE/LOCKBOX:** A keysafe/lockbox is designed to hold a key to the Property to permit access to the Property by Broker, cooperating brokers, MLS participants, their authorized licensees and representatives, authorized inspectors, and accompanied prospective buyers. Broker, cooperating brokers, MLS and Associations/Boards of REALTORS® are not insurers against injury, theft, loss, vandalism or damage attributed to the use of a keysafe/lockbox. Seller does (or if checked ☐ does not) authorize Broker to install a keysafe/lockbox. If Seller does not occupy the Property, Seller shall be responsible for obtaining occupant(s)' written permission for use of a keysafe/lockbox (C.A.R. Form KLA).

13. **SIGN:** Seller does (or if checked ☐ does not) authorize Broker to install a FOR SALE/SOLD sign on the Property.

14. **EQUAL HOUSING OPPORTUNITY:** The Property is offered in compliance with federal, state and local anti-discrimination laws.

15. **ATTORNEY FEES:** In any action, proceeding or arbitration between Seller and Broker to enforce the compensation provisions of this Agreement, the prevailing Seller or Broker shall be entitled to reasonable attorney fees and costs from the non-prevailing Seller or Broker, except as provided in paragraph 19A.

16. **ADDITIONAL TERMS:** ☐ REO Advisory Listing (C.A.R. Form REOL) ☐ Short Sale Information and Advisory (C.A.R. Form SSIA) ☐ Trust Advisory (C.A.R. Form TA)

_____

_____

_____

_____

_____

17. **MANAGEMENT APPROVAL:** If an associate-licensee in Broker's office (salesperson or broker-associate) enters into this Agreement on Broker's behalf, and Broker or Manager does not approve of its terms, Broker or Manager has the right to cancel this Agreement, in writing, within **5 Days** After its execution.

18. **SUCCESSORS AND ASSIGNS:** This Agreement shall be binding upon Seller and Seller's successors and assigns.

19. **DISPUTE RESOLUTION:**

**A. MEDIATION:** Seller and Broker agree to mediate any dispute or claim arising between them regarding the obligation to pay compensation under this Agreement, before resorting to arbitration or court action. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action. **Exclusions from this mediation agreement are specified in paragraph 19B.**

Seller's Initials    (_____)    (_____)

**RLA REVISED 6/17 (PAGE 4 OF 5)**

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 4 OF 5)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com                    1541 E. 51st St.

EXHIBIT "2," PAGE 24
EXHIBIT "4," PAGE 44

Property Address: *1541 E. 51st St. , Los Angeles, CA 9001*_____ Date: *11/09/2017*

**B. ADDITIONAL MEDIATION TERMS: The following matters shall be excluded from mediation: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver or violation of the mediation provisions.**

**C. ADVISORY:** If Seller and Broker desire to resolve disputes arising between them through arbitration rather than court, they can document their agreement by attaching and signing an Arbitration Agreement (C.A.R. Form ARB).

**20. ENTIRE AGREEMENT:** All prior discussions, negotiations and agreements between the parties concerning the subject matter of this Agreement are superseded by this Agreement, which constitutes the entire contract and a complete and exclusive expression of their agreement, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. This Agreement and any supplement, addendum or modification, including any photocopy or facsimile, may be executed in counterparts.

**21. OWNERSHIP, TITLE AND AUTHORITY:** Seller warrants that: (i) Seller is the owner of the Property; (ii) no other persons or entities have title to the Property; and (iii) Seller has the authority to both execute this Agreement and sell the Property. Exceptions to ownership, title and authority are as follows:_____
_____.

☐ REPRESENTATIVE CAPACITY: This Listing Agreement is being signed for Seller by an individual acting in a Representative Capacity as specified in the attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-S). Wherever the signature or initials of the representative identified in the RCSD appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. Seller (i) represents that the entity for which the individual is signing already exists and (ii) shall Deliver to Broker, within 3 Days After Execution of this Agreement, evidence of authority to act (such as but not limited to: applicable trust document, or portion thereof, letters testamentary, court order, power of attorney, resolution, or formation documents of the business entity).

**By signing below, Seller acknowledges that Seller has read, understands, received a copy of and agrees to the terms of this Agreement.**

Seller _____ Date _____
        *Howard Grobstein, Chief Restructuring Officer*
Address _____ City _____ State _____ Zip _____
Telephone _____ Fax _____ E-mail _____

Seller _____ Date _____

Address _____ City _____ State _____ Zip _____
Telephone _____ Fax _____ E-mail _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA)

Real Estate Broker (Firm) *Elite Properties Realty*_____ CalBRE Lic. # *00878444*
Address *148 S. Beverly Drive*_____ City *Beverly Hills*_____ State *CA*___ Zip *90212*

By _____ Tel.*(310)271-4040*___ E-mail *phil@eliteproperty.com* CalBRE Lic.#*00630158*___ Date _____
      *Phil Seymour*
By _____ Tel._____ E-mail _____ CalBRE Lic.#_____ Date _____

☐ Two Brokers with different companies are co-listing the Property. Co-listing Broker information is on the attached Additional Broker Acknowledgement (C.A.R. Form ABA).

© 1991-2017, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

**RLA REVISED 6/17 (PAGE 5 OF 5)**



**RESIDENTIAL LISTING AGREEMENT -EXCLUSIVE (RLA PAGE 5 OF 5)**

EXHIBIT "2," PAGE 25
EXHIBIT "4," PAGE 45

CALIFORNIA
ASSOCIATION
OF REALTORS®

**SELLER'S ADVISORY**
(C.A.R. Form SA, Revised 12/15)

Property Address: **1541 E. 51st St. , Los Angeles, CA  90011**_____ ("Property")

1. **INTRODUCTION:** Selling property in California is a process that involves many steps. From start to finish, it could take anywhere from a few weeks to many months, depending upon the condition of your Property, local market conditions and other factors. You have already taken an important first step by listing your Property for sale with a licensed real estate broker. Your broker will help guide you through the process and may refer you to other professionals, as needed. This advisory addresses many things you may need to think about and do as you market your Property. Some of these things are requirements imposed upon you, either by law or by the listing or sale contract. Others are simply practical matters that may arise during the process. Please read this document carefully and, if you have any questions, ask your broker or appropriate legal or tax advisor for help.

2. **DISCLOSURES:**
   **A. General Disclosure Duties:** You must affirmatively disclose to the buyer, in writing, any and all known facts that materially affect the value or desirability of your Property. You must disclose these facts whether or not asked about such matters by the buyer, any broker, or anyone else. This duty to disclose applies even if the buyer agrees to purchase your Property in its present condition without requiring you to make any repairs. If you do not know what or how to disclose, you should consult a real estate attorney in California of your choosing. Broker cannot advise you on the legal sufficiency of any disclosures you make. If the Property you are selling is a residence with one to four units except for certain subdivisions, your broker also has a duty to conduct a reasonably competent and diligent visual inspection of the accessible areas and to disclose to a buyer all adverse material facts that the inspection reveals. If your broker discovers something that could indicate a problem, your broker must advise the buyer.
   **B. Statutory Duties:** (For one-to-four Residential Units):
   **(1)** You must timely prepare and deliver to the buyer, among other things, a Real Estate Transfer Disclosure Statement ("TDS"), and a Natural Hazard Disclosure Statement ("NHD"). You have a legal obligation to honestly and completely fill out the TDS form in its entirety. (Many local entities or organizations have their own supplement to the TDS that you may also be asked to complete.) The NHD is a statement indicating whether your Property is in certain designated flood, fire or earthquake/seismic hazard zones. Third-party professional companies can help you with this task.
   **(2)** Depending upon the age and type of construction of your Property, you may also be required to provide and, in certain cases you can receive limited legal protection by providing, the buyer with booklets entitled "The Homeowner's Guide to Earthquake Safety," "The Commercial Property Owner's Guide to Earthquake Safety," "Protect Your Family From Lead in Your Home" and "Environmental Hazards: A Guide For Homeowners and Buyers." Some of these booklets may be packaged together for your convenience. The earthquake guides ask you to answer specific questions about your Property's structure and preparedness for an earthquake. If you are required to supply the booklet about lead, you will also be required to disclose to the buyer any known lead-based paint and lead-based paint hazards on a separate form. The environmental hazards guide informs the buyer of common environmental hazards that may be found in properties.
   **(3)** If you know that your property is: (i) located within one mile of a former military ordnance location; or (ii) in or affected by a zone or district allowing manufacturing, commercial or airport use, you must disclose this to the buyer. You are also required to make a good faith effort to obtain and deliver to the buyer a disclosure notice from the appropriate local agency(ies) about any special tax levied on your Property pursuant to the Mello-Roos Community Facilities Act, the Improvement Bond Act of 1915, and a notice concerning the contractual assessment provided by section 5898.24 of the Streets And Highways Code (collectively, "Special Tax Disclosures").
   **(4)** If the TDS, NHD, or lead, military ordnance, commercial zone or Special Tax Disclosures are provided to a buyer after you accept that buyer's offer, the buyer will have 3 days after delivery (or 5 days if mailed) to terminate the offer, which is why it is extremely important to complete these disclosures as soon as possible. There are certain exemptions from these statutory requirements; however, if you have actual knowledge of any of these items, you may still be required to make a disclosure as the items can be considered material facts.
   **C. Death and Other Disclosures:** Many buyers consider death on real property to be a material fact in the purchase of property. In some situations, it is advisable to disclose that a death occurred or the manner of death; however, California Civil Code Section 1710.2 provides that <u>you have no disclosure duty</u> "where the death has occurred more than three years prior to the date the transferee offers to purchase, lease, or rent the real property, or [regardless of the date of occurrence] that an occupant of that property was afflicted with, or died from, Human T-Lymphotropic Virus Type III/Lymphadenopathy-Associated Virus." This law does not "immunize an owner or his or her agent from making an intentional misrepresentation in response to a direct inquiry from a transferee or a prospective transferee of real property, concerning deaths on the real property."
   **D. Condominiums and Other Common Interest Subdivisions:** If the Property is a condominium, townhouse, or other property in a common interest subdivision, you must provide to the buyer copies of the governing documents, the most recent financial statements distributed, and other documents required by law or contract. If you do not have a current version of these documents, you can request them from the management of your homeowner's association. To avoid delays, you are encouraged to obtain these documents as soon as possible, even if you have not yet entered into a purchase agreement to sell your Property.

3. **CONTRACT TERMS AND LEGAL REQUIREMENTS:**
   **A. Contract Terms and Conditions:** A buyer may request, as part of the contract for the sale of your Property, that you pay for repairs to the Property and other items. Your decision on whether or not to comply with a buyer's requests may affect your ability to sell your Property at a specified price.

© 1991-2015, California Association of REALTORS®, Inc.

Seller's Initials ( _____ ) ( _____ )

**SA REVISED 12/15 (PAGE 1 OF 2)**

EQUAL HOUSING
OPPORTUNITY

**SELLER'S ADVISORY (SA PAGE 1 OF 2)**

EXHIBIT "2," PAGE 26
EXHIBIT "4," PAGE 46

Property Address: *1541 E. 51st St. , Los Angeles, CA 90011*                                                                  Date: _____

**B. Withholding Taxes:** Under federal and California tax laws, a buyer is required to withhold a portion of the purchase price from your sale proceeds for tax purposes unless you sign an affidavit of non-foreign status and California residency, or some other exemption applies and is documented.

**C. Prohibition Against Discrimination:** Discriminatory conduct in the sale of real property against individuals belonging to legally protected classes is a violation of the law.

**D. Government Required Repairs, Replacements and Alterations:** Under State law, Property owners with limited exceptions, are required to: (1) Install operable smoke alarms and brace water heaters and provide a Buyer with a statement of compliance. Existing operable smoke alarms, that meet compliance standards when installed, do no have to be removed even if not up to current legal requirements. Smoke alarms that are added or that replace older versions must comply with current law; and (2) install carbon monoxide detection devices. Some city and county governments may impose additional requirements, including, but not limited to, installing low-flow toilets and showerheads, gas shut-off valves, tempered glass, and barriers around swimming pools and spas. You should consult with the appropriate governmental agencies, inspectors, and other professionals to determine which requirements apply to your Property, the extent to which your Property complies with such requirements, and the costs, if any, of compliance.

**E. EPA's LEAD-BASED PAINT RENOVATION, REPAIR AND PAINTING RULE:** The new rule requires that contractors and maintenance professionals working in pre-1978 housing, child care facilities, and schools with lead-based paint be certified; that their employees be trained; and that they follow protective work practice standards. The rule applies to renovation, repair, or painting activities affecting more than six square feet of lead-based paint in a room or more than 20 square feet of lead-based paint on the exterior. Enforcement of the rule begins October 1, 2010. See the EPA website at www.epa.gov/lead for more information.

**F. Legal, Tax and Other Implications:** Selling your Property may have legal, tax, insurance, title or other implications. You should consult an appropriate professional for advice on these matters.

**4. MARKETING CONSIDERATIONS:**

**A. Pre-Sale Inspections and Considerations:** You should consider doing what you can to prepare your Property for sale, such as correcting any defects or other problems, making cosmetic improvements, and staging. Many people are not aware of defects in or problems with their own Property. One way to make yourself aware is to obtain professional inspections prior to sale. Pre-sale inspections may include a general property inspection; an inspection for wood destroying pest and organisms (Structural Pest Control Report) and an inspection of the septic or well systems, if any, among others. By doing this, you then have an opportunity to make repairs before your Property is sold, which may enhance its marketability. Keep in mind, however, that any problems revealed by such inspection reports or repairs that have been made, whether or not disclosed in a report, should be disclosed to the buyer (see "Disclosures" in paragraph 2 above). This is true even if the buyer gets his/her own inspections covering the same area. Obtaining inspection reports may also assist you during contract negotiations with the buyer. For example, if a Structural Pest Control Report has both a primary and secondary recommendation for clearance, you may want to specify in the purchase agreement those recommendations, if any, for which you are going to pay.

**B. Post-Sale Protections:** It is often helpful to provide the buyer with, among other things, a home protection/warranty plan for the Property. These plans will generally cover problems, not deemed to be pre-existing, that occur after your sale is completed. In the event something does go wrong after the sale, and it is covered by the plan, the buyer may be able to resolve the concern by contacting the home protection company.

**C. Safety Precautions:** Advertising and marketing your Property for sale, including, but not limited to, holding open houses, placing a keysafe/lockbox, erecting FOR SALE signs, and disseminating photographs, video tapes, and virtual tours of the premises, may jeopardize your personal safety and that of your Property. You are strongly encouraged to maintain insurance, and to take any and all possible precautions and safeguards to protect yourself, other occupants, visitors, your Property, and your belongings, including cash, jewelry, drugs, firearms and other valuables located on the Property, against injury, theft, loss, vandalism, damage, and other harm.

**D. Expenses:** You are advised that you, not the Broker, are responsible for the fees and costs, if any, to comply with your duties and obligations to the buyer of your Property.

**5. OTHER ITEMS:** _____
_____

Seller has read and understands this Advisory. By signing below, Seller acknowledges receipt of a copy of this document.

Seller _____    Date _____

Print Name *Howard Grobstein, Chief Restructuring Officer*

Seller _____    Date _____

Print Name

Real Estate Broker *Elite Properties Realty*                                    CalBRELic.#: *00878444*

By _____ *Phil Seymour* CalBRE Lic.# *00630158* _____ Date _____

By _____                  CalBRE Lic.# _____ Date _____

Address *148 S. Beverly Drive* _____ City *Beverly Hills* _____ State *CA* ____ Zip *90212*

Telephone *(310)271-4040* ____ Fax _____ E-mail *phil@eliteproperty.com*

© 1991-2015, California Association of REALTORS®, Inc. Copyright claimed in Form SA, exclusive of language required by California Civil Code §1710.2. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
*a subsidiary of the California Association of REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____



**SA REVISED 12/15 (PAGE 2 OF 2)**

**SELLER'S ADVISORY (SA PAGE 2 OF 2)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com                    1541 E. 51st St.

EXHIBIT "2," PAGE 27
EXHIBIT "4," PAGE 47

## ADDENDUM TO EXCLUSIVE AUTHORIZATION AND RIGHT TO SELL

WJA Secure Real Estate, LLC (the "Debtor" or "Debtor-in-Possession"), agrees to extend to ELITE PROPERTIES REALTY ("Broker") the exclusive right to negotiate a sale of the real property commonly described as 1541 E. 51ST Street, Los Angeles, California (the "Property/Properties"), upon the terms and conditions of the exclusive Authorization and Right to Sell ("Listing Agreement"), as amended by the following terms and conditions:

1.      Addendum.  This Agreement is an Addendum to the Exclusive Authorization and Right to Sell Property proposed by the Brokers.  Notwithstanding any contrary terms and conditions in the Listing Agreements proposed by the Brokers, this Addendum shall apply.

2.      No Liability.  The signatory for the Debtor is listing the Property/Properties for sale with the Brokers in his capacity as the CRO for the Debtor and not in his personal capacity, and no liability or obligations shall accrue to him personally as a result of such listing.

3.      Termination.  The Debtor may terminate the Exclusive Authorization at its option and upon written notice to the Brokers at any time, and no liability or obligations shall accrue to the estate or the Debtor as a result of any such termination.

4.      Abandonment.  The Debtor reserves the right, in its sole discretion, to determine not to sell the Property/Properties and to abandon the Property/Properties by serving a notice of its intention to abandon the Property/Properties upon the Debtor, all creditors, the United States Trustee, and all parties in interest.  In the event of any such abandonment, the Exclusive Authorization and this Addendum shall terminate and no liability or obligations shall accrue to the estate or to the Debtor as a result of any such abandonment and termination.

5.      Conditions of Sale.  The Brokers agree and understand that any sale of the Property/Properties shall be subject to the following terms and conditions:

   a.      The signatory of the Debtor is signing any documents and taking any actions in his capacity as the CRO and not in his personal capacity, and no liability or obligation shall accrue to him personally as a result of any sale;

   b.      If for any reason, or no reason whatsoever, the Debtor is unable to deliver possession or title to the Property/Properties to any potential purchaser, the purchaser's sole remedy shall be the return of any money that the purchaser has deposited towards the purchase of the Property/Properties;

   c.      The Debtor is selling the Property in an "AS IS" condition or basis by quitclaim deed without any representations or warranties whatsoever, including without limitation representations or warranties as to title, oil and mineral rights, city or government agency notifications regarding work to be done, marketability of title, ownership, physical condition, compliance with state, city or federal statutes, codes, ordinances, or regulations, geological stability, zoning, suitability for improvements on the Property, nor any assurances regarding the sub-divisibility of the Property/Properties;

   d.      The sale of the Property/Properties is subject to Bankruptcy Court approval after notice to the Debtor, all creditors, the United States Trustee, and other parties in interest as required by the Bankruptcy Code, Federal Rules of Bankruptcy

EXHIBIT "2," PAGE 28
EXHIBIT "4," PAGE 48

Procedure, and Local Bankruptcy Rules; the sale is also subject to overbid at public sale;

e.    The purchaser shall, at the purchaser's sole expense, acquire any and all insurance policies that the purchaser desires to cover the Property/Properties. The Debtor does not agree to acquire or transfer any insurance policies to the purchaser;

f.    The purchaser is to arrange for all financing of the acquisition of the Property/Properties before the close of escrow;

g.    All escrow fees shall be shared and paid on a 50/50 basis by the Debtor's estate and the purchaser;

h.    The purchaser shall, at the purchaser's sole expense, install all smoke detectors, if any, as may be required by state or local law.  The Debtor is not required to deliver to the purchaser a written statement of compliance with any applicable state and local law;

i.    The purchaser shall, at purchaser's sole expense, obtain any and all pest control inspection repairs that purchaser deems appropriate;

j.    If any local ordinance requires that the Property/Properties be brought into compliance with minimum energy conservation standards as a condition of sale or transfer, the purchaser shall comply with and pay for these requirements at purchaser's sole expense;

k.    Any sale is subject to the following conditions being satisfied before the close of escrow:

(1)    The Debtor must prevail with respect to any objections to the proposed sale; and

(2)    The Debtor reserves the right to reject any and all offers which in his judgment are insufficient; and

l.    The Property/Properties are being sold subject to:

(1)    All general and special taxes that are presently due, or may become due, regarding the Property/Properties, other than property taxes, which shall be prorated as of the close of escrow;

(2)    Any and all easements, restrictions, rights and conditions of record and rights of way, against, on or regarding the Property/Properties.  Title, however, is to be transferred free of secured claims of record;

6.    <u>Payment of Commission</u>.  The commission to be paid to Brokers shall only be paid from the proceeds of the sale of the Property/Properties.  The payment of commission is subject to prior approval of the Bankruptcy Court.

7.    <u>Entire Agreement</u>.  This Addendum and the Exclusive Authorization, to the extent that such Exclusive Authorization is not contrary to the terms and conditions herein, constitutes the entire contract between the parties.  All prior agreements between the parties are

EXHIBIT "2," PAGE 29
EXHIBIT "4," PAGE 49

incorporated into this contract.  Its terms are intended by the parties as a final expression of their agreement with respect to such terms as are included herein, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement.  The parties further intend that this agreement constitutes the complete, final and exclusive statement of its terms and that no extrinsic evidence whatsoever may be introduced in any judicial or arbitration proceeding, if any, involving this agreement.

8.    <u>Bankruptcy Court Jurisdiction</u>.  The Court shall have exclusive jurisdiction to resolve any and all disputes relating to this Agreement sitting without jury, which is specifically waived. This agreement and any disputes related thereto shall be governed by California law.


Dated: _____, 2017                     Seller:


                                                 _____
                                                 By: Howard B. Grobstein, Chief
                                                 Restructuring Officer ("CRO") for WJA
                                                 Secure Real Estate, LLC ("Debtor")


Dated: _____, 2017                     Buyer:


                                                 _____

EXHIBIT "2," PAGE 30

EXHIBIT "4," PAGE 50

# EXHIBIT "5"

**CALIFORNIA
ASSOCIATION
OF REALTORS®**

**CONTINGENCY REMOVAL No.** _1_
(C.A.R. Form CR, Revised, 6/16)

In accordance with the terms and conditions of the: ☒ Residential Purchase Agreement (C.A.R. Form RPA-CA), ☐ Request For Repair (C.A.R. Form RR), ☐ Response And Reply To Request For Repair (C.A.R. Form RRRR) or ☐ Other _____ ("Agreement"),

dated _01/29/2018_ , on property known as _1541 E 51ST ST, LOS ANGELES, CA 90011_ ("Property"),
between _JUNG EUN KANG_ ("Buyer"),
and _____ ("Seller").

**I. BUYER REMOVAL OF BUYER CONTINGENCIES:**

1. With respect to any contingency and cancellation right that Buyer removes, unless otherwise specified in a separate written agreement between Buyer and Seller, Buyer shall conclusively be deemed to have: (i) completed all Buyer Investigations and review of reports and other applicable information and disclosures; (ii) elected to proceed with the transaction; and (iii) assumed all liability, responsibility and expense, **if any**, for Repairs, corrections, or for the inability to obtain financing. Waiver of statutory disclosures is prohibited by law.

2. Buyer removes those contingencies specified below.
   **A. ONLY the following individually checked Buyer contingencies are removed:**
   1. ☐ Loan (Paragraph 3J)
   2. ☐ Appraisal (Paragraph 3I)
   3. ☐ Buyer's Physical Inspection (Paragraph 12)
   4. ☐ All Buyer Investigations other than a physical inspection (Paragraph 12)
   5. ☐ Condominium/Planned Development (HOA or OA) Disclosures (Paragraph 10F)
   6. ☐ Reports/Disclosures (Paragraphs 7 and 10)
   7. ☐ Title: Preliminary Report (Paragraph 13)
   8. ☐ Sale of Buyer's Property (Paragraph 4B)
   9. ☐ Review of documentation for leased or liened items (Paragraph 8B(5))
   10. ☐ Other: _____
   11. ☐ Other: _____

   **OR B.** ☐ **ALL Buyer contingencies are removed, EXCEPT:** ☐ Loan Contingency (Paragraph 3J); ☐ Appraisal Contingency (Paragraph 3I); ☐ Contingency for the Sale of Buyer's Property (Paragraph 4B); ☐ Condominium/Planned Development (HOA) Disclosures (Paragraph 10F); ☐ Other _____

   **OR C.** ☒ **BUYER HEREBY REMOVES ANY AND ALL BUYER CONTINGENCIES.**

3. Once all contingencies are removed, whether or not Buyer has satisfied him/herself regarding all contingencies or received any information relating to those contingencies, Buyer may not be entitled to a return of Buyer's deposit if Buyer does not close escrow. This could happen even if, for example, Buyer does not approve of some aspect of the Property or lender does not approve Buyer's loan.

**NOTE:** Paragraph numbers refer to the California Residential Purchase Agreement (C.A.R. Form RPA-CA). Applicable paragraph numbers for each contingency or contractual action in other C.A.R. contracts are found in Contract Paragraph Matrix (C.A.R. Form CPM).

Buyer _____ Date _03/13/2018_
_JUNG EUN KANG_

Buyer _____ Date _____

**II. SELLER REMOVAL OF SELLER CONTINGENCIES:** Seller hereby removes the following Seller contingencies:
☐ Finding of replacement property (C.A.R. Form SPRP); ☐ Closing on replacement property (C.A.R. Form SPRP)
☐ Other _____

Seller _____ Date _____

Seller _____ Date _____

( _____ / _PS_ ) (Initials) **CONFIRMATION OF RECEIPT:** A copy of this signed Contingency Removal was personally received by ☐ Buyer ☐ Seller or authorized agent on _3/13/2018_ (date), at _11:20_ ☒ AM / ☐ PM.

© 2003-2016, California Association of REALTORS®, Inc.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
*a subsidiary of the California Association of REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

**CR REVISED 6/16 (PAGE 1 OF 1)**

**CONTINGENCY REMOVAL (CR PAGE 1 OF 1)**

Bestway Realty, 6131 Orangethorpe Ave Buena Park CA 90620                    Phone: (213)923-6689        Fax: (213)923-6689        1541 E 51ST
Weon Kang                          Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com

DocuSign Envelope ID: D704F1C3-4804-4BCF-BEB8-044D9AE606F7



CALIFORNIA
ASSOCIATION
OF REALTORS®

**ASSIGNMENT OF AGREEMENT ADDENDUM**
(For Use As An Addendum To A Purchase Agreement)
(C.A.R. Form AOAA, 11/14)

The following terms and conditions are hereby incorporated in and made a part of the: ☒ California Residential Purchase
Agreement, ☐ other _____
_____ ("Agreement"),
dated **March 1, 2018**____, on property known as _____ **1541 E 51ST ST**_____
_____ **LOS ANGELES, CA 90011**_____ ("Property"),
between _____ **HELEN NAM**_____ ("Buyer")
and _____ ("Seller"):

In consideration, of the covenants contained herein, Buyer hereby assigns to assignee and assignee accepts the assignment,
subject to Seller's consent, of all or a partial interest of Buyer's right, title, and interest under the Agreement, including without
limitation, the right, title, and interest in any down payment or earnest money upon the following terms and conditions:

1. ☐ (a) **Partial Assignment (Adding a buyer):** Buyer is adding the Assignee(s) named below to the Agreement and
   granting to such Assignee(s) Buyer's proportionate interest in the Agreement.
   ☒ (b) **Total Assignment (New Buyer or Deleting a Buyer):** Buyer is granting all of Buyer's interest in the Agreement
   to the new or remaining Buyers (Assignee(s)) named below.
   ☒ (c) **Assignee(s) Names: *JUNG EUN KANG*** _____.
2. (a) Assignee acknowledges that Buyer has already provided Assignee all of the transaction documents previously
   approved by Buyer including, but not limited to, all contract documents, inspection reports, pamphlets, advisories,
   disclosures ("Prior Documents").
   (b) Assignee, within 3 (or ____ ) Days After Seller Delivers to Assignee a Signed copy of this Assignment of Agreement
   Addendum ("Assignment") shall initial, Sign and Deliver to Seller all Prior Documents (or, ☐ initialed Signed copies of
   all Prior Documents are attached to this Assignment).
   (c) If Assignee does not Deliver to Seller all Prior Documents within the time specified in 2(b), Seller may withdraw
   consent to the Assignment and the Assignment shall have no further force and effect.
3. Assignee represents for the benefit of Seller that Assignee ratifies and approves as Assignee's own acts all prior
   approvals and acts of Buyer pursuant to the Agreement up to and including the date of this Assignment.
4. Assignee assumes and agrees to perform and observe all of the obligations and covenants of Buyer in the Agreement to
   be performed after the date of this Assignment.
5. Buyer acknowledges and agrees that, notwithstanding Seller's agreement to this Assignment, Buyer is not released
   from any obligations or covenants under the Agreement.
6. Other terms: _____
7. Seller has been advised that Buyer ☐ has ☐ has not received monetary consideration from Assignee for this Assignment.
8. Without releasing Buyer from any obligations or covenants under the Agreement and preserving all rights and remedies
   under the Agreement, in consideration of the covenants contained herein, Seller consents to the foregoing Assignment.
9. The parties acknowledge and agree that they have been advised to review this Assignment with their own attorney
   and/or accountant prior to signing this Assignment. The Brokers and agents make no representation as to the propriety,
   adequacy, legality or tax consequences of this Assignment.

**By signing below, Buyer, Assignee, and Seller acknowledge that each has read, understands, received a copy of
and agrees to the terms of this Assignment of Agreement Addendum.**

_____       **March 1, 2018**
**Buyer HELEN NAM**                                             Date

_____       _____
**Buyer**                                                       Date

☐ One or more assignees will sign by a representative. Attached is a Representative Capacity Signature Disclosure.

_____       **March 1, 2018**
**Assignee JUNG EUN KANG**                                      Date

_____       _____
**Assignee**                                                    Date

**Seller** ⎡DocuSigned by:                                     **Date**
           Howard Grobstein                                     3/6/2018
_____       _____
**Seller**  └19E539E55C624DB...                                Date

© 2014, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form,
or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

**AOAA 11/14 (PAGE 1 OF 1)**

**ASSIGNMENT OF AGREEMENT ADDENDUM (AOAA PAGE 1 OF 1)**

Bestway Realty, 6131 Orangethorpe Ave Buena Park CA 90620        Phone: (213)923-6689      Fax: (213)923-6689       1541 E 51ST
Weon Kang                     Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

D DocuSign Envelope ID: 853425D2-B0FE-4128-82F6-6892EB7C32F0



CALIFORNIA
ASSOCIATION
OF REALTORS®

**SELLER COUNTER OFFER No. 1**
**May not be used as a multiple counter offer.**
(C.A.R. Form SCO, 11/14)

Date _February 22, 2018_

This is a counter offer to the: ☒ Purchase Agreement, ☐ Buyer Counter Offer No.___ , or ☐ Other _____ ("Offer"),
dated _January 29, 2018_ , on property known as _____1541 E 51st St, Los Angeles, CA  90011-5052_____ ("Property"),
between _____Helen Nam_____ ("Buyer")
and _____Howard Grobstein, Chief Restructuring Officer_____ ("Seller").

1. **TERMS:** The terms and conditions of the above referenced document are accepted subject to the following:
   A. Paragraphs in the Offer that require initials by all parties, but are not initialed by all parties, are excluded from the final agreement unless specifically referenced for inclusion in paragraph 1C of this or another Counter Offer or an addendum.
   B. Unless otherwise agreed in writing, down payment and loan amount(s) will be adjusted in the same proportion as in the original Offer.
   C. **OTHER TERMS:** _1. Price shall be $535,000._
   _2. Re: Para 7 D (1): Seller to pay up to $500.00 for warranty. Units don't have air conditioner._
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   D. The following attached addenda are incorporated into this Seller Counter offer: ☐ Addendum No. _____
   ☒ _Addendum to Sale_                               ☐ _____

2. **EXPIRATION:** This Seller Counter Offer shall be deemed revoked and the deposits, if any, shall be returned:
   A. Unless by 5:00pm on the third Day After the date it is signed in paragraph 4 (if more than one signature then, the last signature date)(or by _4:00_ ☐ AM ☒ PM on _02/26/2018_ (date) (i) it is signed in paragraph 5 by Buyer and (ii) a copy of the signed Seller Counter Offer is personally received by Seller or _Phil Seymour_ , who is authorized to receive it.
   OR B. If Seller withdraws it anytime prior to Acceptance (CAR Form WOO may be used).
   OR C. If Seller accepts another offer prior to Buyer's Acceptance of this counter offer.

3. **MARKETING TO OTHER BUYERS:** Seller has the right to continue to offer the Property for sale. Seller has the right to accept any other offer received, prior to Acceptance of this Counter Offer by Buyer as specified in 2A and 5. In such event, Seller is advised to withdraw this Seller Counter Offer before accepting another offer.

4. **OFFER: SELLER MAKES THIS COUNTER OFFER ON THE TERMS ABOVE AND ACKNOWLEDGES RECEIPT OF A COPY.**
   Seller _Howard Grobstein_                _Howard Grobstein, Chief Restructuring_ Date _2/22/2018_
   Seller _____     19F532EE5C6240B_____ Date _____

5. **ACCEPTANCE: I/WE** accept the above Seller Counter Offer (If checked ☐ **SUBJECT TO THE ATTACHED COUNTER OFFER**) and acknowledge receipt of a Copy.
   Buyer _____ _Helen Nam_ Date _5/22/18_ Time _2:30_ ☐ AM/ ☒ PM
   Buyer _____ Date _____ Time _____ ☐ AM/ ☐ PM

**CONFIRMATION OF ACCEPTANCE:**
( _HG_ ) **(Initials) Confirmation of Acceptance:** A Copy of Signed Acceptance was personally received by Seller, or Seller's authorized agent as specified in paragraph 2A on (date) _2/23/2018_ at _____ ☐ AM/ ☐ PM. **A binding Agreement is created when a Copy of Signed Acceptance is personally received by Seller or Seller's authorized agent whether or not confirmed in this document.**

© 2014, California Association of REALTORS®, Inc.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

**SCO 11/14 (PAGE 1 OF 1)**

**SELLER COUNTER OFFER (SCO PAGE 1 OF 1)**

Elite Properties Realty, 148 S. Beverly Dr. Ste.#200 Beverly Hills CA 90212          Phone: 310.271.4848   Fax: 310.271.4185   1541 E. 51st St.
Philip Seymour                    Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

DocuSign Envelope ID: 853425D2-B0FE-4128-82F6-6892EB7C32F0

## ADDENDUM TO SALE

1.  <u>Conditions of Sale</u>.  The purchaser agrees and understands that the sale of the Property shall be subject to the following terms and conditions:

    a.    WJA Secure Real Estate, LLC (the "Debtor" or "Debtor-in-Possession") is selling the Property/Properties as the Debtor-in-Possession in that certain Chapter 11 bankruptcy case, case number 8:17-bk-12016-SC (the "Case");

    b.    If for any reason, or no reason whatsoever, the Debtor is unable to deliver possession or title to the Property/Properties to any potential purchaser, the purchaser's sole remedy shall be the return of any money that the purchaser has deposited towards the purchase of the Property.

    c.    The Debtor is selling the Property in an "AS IS" condition or basis by quitclaim deed without any representations or warranties whatsoever, including without limitation representations or warranties as to title, oil and mineral rights, city or government agency notifications regarding work to be done, marketability of title, ownership, physical condition, compliance with state, city or federal statutes, codes, ordinances, or regulations, geological stability, zoning, suitability for improvements on the Property, nor any assurances regarding the sub-divisibility of the Property/Properties;

    d.    The sale of the Property is subject to the Bankruptcy Court's approval after notice to the Debtor, all creditors, the United States Trustee, and other parties in interest as required by the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and Local Bankruptcy Rules

    e.    The sale of the Property is subject to overbids that the Debtor may solicit both before and at the hearing on approval of the sale of the Property.  If overbids are received, an auction may be held at or before the hearing on approval of the sale of the Property and the purchaser is qualified to participate as a bidder in the auction;

    f.    The purchaser shall, at the purchaser's sole expense, acquire any and all insurance policies that the purchaser desires to cover the Property/Properties. The Debtor does not agree to acquire or transfer any insurance policies to the purchaser;

    g.    The purchaser is to arrange for all financing of the acquisition of the Property before the close of escrow;

    h.    All escrow fees shall be shared and paid on a 50/50 basis by the Debtor's estate and the purchaser;

    i.    The purchaser shall, at the purchaser's sole expense, install all smoke detectors, if any, as may be required by state or local law.  The CRO is not required to deliver to the purchaser a written statement of compliance with any applicable state and local law;

    j.    The purchaser shall, at purchaser's sole expense, obtain any and all pest control inspection repairs that purchaser deems appropriate;

EXHIBIT "5," PAGE 54

DocuSign Envelope ID: 853425D2-B0FE-4128-82F6-6892EB7C32F0

k.    If any local ordinance requires that the Property/Properties be brought into compliance with minimum energy conservation standards as a condition of sale or transfer, the purchaser shall comply with and pay for these requirements at purchaser's sole expense;

l.    Before the close of escrow, any sale is subject to the Bankruptcy Court's entry of a "final" order approving the sale to the purchaser of the Property/Properties in an "AS IS" condition or basis by quitclaim deed without any representations or warranties whatsoever and a finding by the Bankruptcy Court that the purchaser is a good faith purchaser under the meaning of 11 U.S.C. § 363(m). An order is "final" on the first business day after 14 days entry of the order if no timely appeal is filed or if a timely appeal is filed, no stay pending the appeal is imposed.

m.    The purchaser's deposit is non-refundable and shall be forfeited and shall vest in the Debtor's bankruptcy estate if the Bankruptcy Court enters a final order approving the sale of the Property to purchaser but purchaser fails to timely close the sale.

n.    The Property/Properties are being sold subject to:

    (1)    All general and special taxes that are presently due, or may become due, regarding the Property/Properties, other than property taxes, which shall be prorated as of the close of escrow;

    (2)    Any and all easements, restrictions, rights and conditions of record and rights of way, against, on or regarding the Property/Properties. Title, however, is to be transferred free of secured claims of record;

2.    <u>Payment of Commission</u>. The commission to be paid to Brokers shall only be paid from the proceeds of the sale of the Property. The payment of commission is subject to prior approval of the Bankruptcy Court.

3.    <u>No Personal Liability</u>. The signatory for the Debtor is executing all documents relating to the sale of the Property/Properties in his capacity as the Chief Restructuring Officer for the Debtor and not in his personal capacity, and no liability or obligations shall accrue to him personally.

4.    <u>Entire Agreement</u>. Terms are intended by the parties as a final expression of their agreement with respect to such terms as are included herein, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. The parties further intend that this agreement constitutes the complete, final statement of its terms and that no extrinsic evidence whatsoever may be introduced in any judicial or arbitration proceeding, if any, involving this agreement.

DocuSign Envelope ID: 853425D2-B0FE-4128-82F6-6892EB7C32F0

5.    <u>Court Jurisdiction</u>.  The Court shall have exclusive jurisdiction to resolve any and all disputes relating to this Agreement sitting without jury, which is specifically waived.  This agreement and any disputes related thereto shall be governed by California law.

Dated:    2/22/2018    , 2018    Seller:

DocuSigned by:

*Howard Grobstein*

Howard B. Grobstein, Chief Restructuring Officer ("CRO") of WJA Asset Management, LLC, manager of WJA Secure Real Estate Fund, LLC ("Debtor")

Dated: 2/22/___, 2018    Purchaser:

*Helen Nam*

*Helen Nam*
[print name]

DocuSign Envelope ID: 853425D2-B0FE-4128-82F6-6892EB7C32F0



**CALIFORNIA
RESIDENTIAL PURCHASE AGREEMENT
AND JOINT ESCROW INSTRUCTIONS**
(C.A.R. Form RPA-CA, Revised 12/15)

Date Prepared: _01/29/2018_

1. **OFFER:**
   A. **THIS IS AN OFFER FROM** _____ *HELEN NAM* _____ ("Buyer").
   B. **THE REAL PROPERTY** to be acquired is _*1541 E 51ST ST, LOS ANGELES, CA 90011*_ , situated in
      _LOS ANGELES_ (City), _LOS ANGELES_ (County), California, _90011_ (Zip Code), Assessor's Parcel No. _5106023029_ ("Property").
   C. **THE PURCHASE PRICE** offered is _Five Hundred Forty-Nine Thousand_
      _____ Dollars $ _549,000.00_
   D. **CLOSE OF ESCROW** shall occur on _____ (date)(or ☒ _25_ Days After Acceptance).
   E. Buyer and Seller are referred to herein as the "Parties." Brokers are not Parties to this Agreement.

2. **AGENCY:**
   A. **DISCLOSURE:** The Parties each acknowledge receipt of a ☒ "Disclosure Regarding Real Estate Agency Relationships"
      (C.A.R. Form AD).
   B. **CONFIRMATION:** The following agency relationships are hereby confirmed for this transaction:
      Listing Agent _*ELITE PROPERTIES REALTY*_ (Print Firm Name) is the agent of (check one):
      ☒ the Seller exclusively; or ☐ both the Buyer and Seller.
      Selling Agent _*BESTWAY REALTY*_ (Print Firm Name) (if not the same as the
      Listing Agent) is the agent of (check one): ☐ the Buyer exclusively; or ☐ the Seller exclusively; or ☐ both the Buyer and Seller.
   C. **POTENTIALLY COMPETING BUYERS AND SELLERS:** The Parties each acknowledge receipt of a ☒ "Possible
      Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).

3. **FINANCE TERMS:** Buyer represents that funds will be good when deposited with Escrow Holder.
   A. **INITIAL DEPOSIT:** Deposit shall be in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _16,500.00_
      **(1)** Buyer Direct Deposit: Buyer shall deliver deposit directly to Escrow Holder by electronic funds
      transfer, ☐ cashier's check, ☐ personal check, ☐ other _____ within 3 business days
      after Acceptance (or _____ );
      OR **(2)** ☐ Buyer Deposit with Agent: Buyer has given the deposit by personal check (or _____ )
      to the agent submitting the offer (or to _____ ), made payable to
      _____ . The deposit shall be held uncashed until Acceptance and then deposited
      with Escrow Holder within 3 business days after Acceptance (or _____ ).
      Deposit checks given to agent shall be an original signed check and not a copy.
      (Note: Initial and increased deposits checks received by agent shall be recorded in Broker's trust fund log.)
   B. **INCREASED DEPOSIT:** Buyer shall deposit with Escrow Holder an increased deposit in the amount of . . . . . . . . $ _____
      within _____ Days After Acceptance (or _____ ).
      If the Parties agree to liquidated damages in this Agreement, they also agree to incorporate the increased
      deposit into the liquidated damages amount in a separate liquidated damages clause (C.A.R. Form
      RID) at the time the increased deposit is delivered to Escrow Holder.
   C. ☒ **ALL CASH OFFER:** No loan is needed to purchase the Property. This offer is NOT contingent on Buyer
      obtaining a loan. Written verification of sufficient funds to close this transaction IS ATTACHED to this offer or
      ☐ Buyer shall, within 3 (or _____ ) Days After Acceptance, Deliver to Seller such verification.
   D. **LOAN(S):**
      **(1) FIRST LOAN:** in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____
      This loan will be conventional financing or ☐ FHA, ☐ VA, ☐ Seller financing (C.A.R. Form SFA),
      ☐ assumed financing (C.A.R. Form AFA), ☐ Other _____ . This loan shall be at a fixed
      rate not to exceed _____ % or, ☐ an adjustable rate loan with initial rate not to exceed _____ %.
      Regardless of the type of loan, Buyer shall pay points not to exceed _____ % of the loan amount.
      **(2)** ☐ **SECOND LOAN** in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____
      This loan will be conventional financing or ☐ Seller financing (C.A.R. Form SFA), ☐ assumed
      financing (C.A.R. Form AFA), ☐ Other _____ . This loan shall be at a fixed rate not to
      exceed _____ % or, ☐ an adjustable rate loan with initial rate not to exceed _____ %. Regardless of
      the type of loan, Buyer shall pay points not to exceed _____ % of the loan amount.
      **(3) FHA/VA:** For any FHA or VA loan specified in 3D(1), Buyer has **17 (or _____ )** Days After Acceptance
      to Deliver to Seller written notice (C.A.R. Form FVA) of any lender-required repairs or costs that
      Buyer requests Seller to pay for or otherwise correct. Seller has no obligation to pay for or satisfy lender
      requirements unless agreed in writing. A FHA/VA amendatory clause (C.A.R. Form FVAC) shall be a
      part of this Agreement.
   E. **ADDITIONAL FINANCING TERMS:** _____
   F. **BALANCE OF DOWN PAYMENT OR PURCHASE PRICE** in the amount of . . . . . . . . . . . . . . . . . . . . . . $ _532,500.00_
      to be deposited with Escrow Holder pursuant to Escrow Holder instructions.
   G. **PURCHASE PRICE (TOTAL):** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _549,000.00_

Buyer's Initials ( _HN_ )( _____ )     Seller's Initials ( _HG_ )( _____ )

© 1991-2015, California Association of REALTORS®, Inc.

**RPA-CA REVISED 12/15 (PAGE 1 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 1 OF 10)**

EXHIBIT "5," PAGE 57

DocuSign Envelope ID: 853425D2-B0FE-4128-82F6-6892EB7C32F0

Property Address: **_1541 E 51ST ST, LOS ANGELES, CA  90011_**                                    Date: **_January 29, 2018_**

> **H. VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Buyer (or Buyer's lender or loan broker pursuant to paragraph 3J(1)) shall, within **3 (or _____ ) Days** After Acceptance, Deliver to Seller written verification of Buyer's down payment and closing costs. (☐ Verification attached.)
>
> **I. APPRAISAL CONTINGENCY AND REMOVAL:** This Agreement is (or ☒ is NOT) contingent upon a written appraisal of the Property by a licensed or certified appraiser at no less than the purchase price. Buyer shall, as specified in paragraph 14B(3), in writing, remove the appraisal contingency or cancel this Agreement within 17 (or _____ ) **Days** After Acceptance.
>
> **J. LOAN TERMS:**
>> **(1) LOAN APPLICATIONS:** Within **3 (or _____ ) Days** After Acceptance, Buyer shall Deliver to Seller a letter from Buyer's lender or loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified in paragraph 3D. If any loan specified in paragraph 3D is an adjustable rate loan, the prequalification or preapproval letter shall be based on the qualifying rate, not the initial loan rate. (☐ Letter attached.)
>>
>> **(2) LOAN CONTINGENCY:** Buyer shall act diligently and in good faith to obtain the designated loan(s). Buyer's qualification for the loan(s) specified above **is a contingency** of this Agreement unless otherwise agreed in writing. If there is no appraisal contingency or the appraisal contingency has been waived or removed, then failure of the Property to appraise at the purchase price does not entitle Buyer to exercise the cancellation right pursuant to the loan contingency if Buyer is otherwise qualified for the specified loan. Buyer's contractual obligations regarding deposit, balance of down payment and closing costs **are not contingencies** of this Agreement.
>>
>> **(3) LOAN CONTINGENCY REMOVAL:**
>> Within **21 (or _____ ) Days** After Acceptance, Buyer shall, as specified in paragraph 14, in writing, remove the loan contingency or cancel this Agreement. If there is an appraisal contingency, removal of the loan contingency shall not be deemed removal of the appraisal contingency.
>>
>> **(4)** ☐ **NO LOAN CONTINGENCY:** Obtaining any loan specified above is NOT a contingency of this Agreement. If Buyer does not obtain the loan and as a result does not purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.
>>
>> **(5) LENDER LIMITS ON BUYER CREDITS:** Any credit to Buyer, from any source, for closing or other costs that is agreed to by the Parties ("Contractual Credit") shall be disclosed to Buyer's lender. If the total credit allowed by Buyer's lender ("Lender Allowable Credit") is less than the Contractual Credit, then (i) the Contractual Credit shall be reduced to the Lender Allowable Credit, and (ii) in the absence of a separate written agreement between the Parties, there shall be no automatic adjustment to the purchase price to make up for the difference between the Contractual Credit and the Lender Allowable Credit.
>
> **K. BUYER STATED FINANCING:** Seller is relying on Buyer's representation of the type of financing specified (including but not limited to, as applicable, all cash, amount of down payment, or contingent or non-contingent loan). Seller has agreed to a specific closing date, purchase price and to sell to Buyer in reliance on Buyer's covenant concerning financing. Buyer shall pursue the financing specified in this Agreement. Seller has no obligation to cooperate with Buyer's efforts to obtain any financing other than that specified in the Agreement and the availability of any such alternate financing does not excuse Buyer from the obligation to purchase the Property and close escrow as specified in this Agreement.

**4. SALE OF BUYER'S PROPERTY:**
> **A.** This Agreement and Buyer's ability to obtain financing are NOT contingent upon the sale of any property owned by Buyer.
>
> OR **B.** ☐ This Agreement and Buyer's ability to obtain financing are contingent upon the sale of property owned by Buyer as specified in the attached addendum (C.A.R. Form COP).

**5. ADDENDA AND ADVISORIES:**
> **A. ADDENDA:**

| | |
|---|---|
| ☐ Back Up Offer Addendum (C.A.R. Form BUO) | ☐ Addendum #_____ (C.A.R. Form ADM) |
| ☐ Septic, Well and Property Monument Addendum (C.A.R. Form SWPI) | ☐ Court Confirmation Addendum (C.A.R. Form CCA) |
| ☐ Short Sale Addendum (C.A.R. Form SSA) | ☐ Other_____ |

> **B. BUYER AND SELLER ADVISORIES:**

| | |
|---|---|
| ☐ Probate Advisory (C.A.R. Form PA) | ☒ Buyer's Inspection Advisory (C.A.R. Form BIA) |
| ☐ Trust Advisory (C.A.R. Form TA) | ☐ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA) |
| ☐ Short Sale Information and Advisory (C.A.R. Form SSIA) | ☐ REO Advisory (C.A.R. Form REO) |
| | ☐ Other_____ |

**6. OTHER TERMS:** _____

_____

**7. ALLOCATION OF COSTS**
> **A. INSPECTIONS, REPORTS AND CERTIFICATES:** Unless otherwise agreed in writing, this paragraph only determines who is to pay for the inspection, test, certificate or service ("Report") mentioned; it **does not determine who is to pay for any work recommended or identified in the Report.**
>> **(1)** ☐ Buyer ☒ Seller shall pay for a natural hazard zone disclosure report, including tax ☐ environmental ☐ Other: _____ prepared by **_Seller Choice_**
>>
>> **(2)** ☐ Buyer ☐ Seller shall pay for the following Report _____ prepared by _____
>>
>> **(3)** ☐ Buyer ☐ Seller shall pay for the following Report _____ prepared by _____

Buyer's Initials ( _HK_ ) ( _____ )                          Seller's Initials ( _HG_ ) ( _____ )

**RPA-CA REVISED 12/15 (PAGE 2 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 2 OF 10)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com          1541 E 51ST

DocuSign Envelope ID: 853425D2-B0FE-4128-82F6-6892EB7C32F0

Property Address: **_1541 E 51ST ST, LOS ANGELES, CA  90011_**                                    Date: **_January 29, 2018_**

   **B.  GOVERNMENT REQUIREMENTS AND RETROFIT:**
     (1) ☐ Buyer ☒ Seller shall pay for smoke alarm and carbon monoxide device installation and water heater bracing, if required by
        Law. Prior to Close Of Escrow ("COE"), Seller shall provide Buyer written statement(s) of compliance in accordance with state
        and local Law, unless Seller is exempt.
     (2) (I) ☐ Buyer ☐ Seller shall pay the cost of compliance with any other minimum mandatory government inspections and reports
        if required as a condition of closing escrow under any Law.
       (ii) ☐ Buyer ☐ Seller shall pay the cost of compliance with any other minimum mandatory government retrofit standards
        required as a condition of closing escrow under any Law, whether the work is required to be completed before or after COE.
       (iii) Buyer shall be provided, within the time specified in paragraph 14A, a copy of any required government conducted or
        point-of-sale inspection report prepared pursuant to this Agreement or in anticipation of this sale of the Property.
   **C.  ESCROW AND TITLE:**
     (1) (a) ☒ Buyer ☒ Seller shall pay escrow fee **_EACH TO PAY THEIR OWN FEES._** _____.
       (b) Escrow Holder shall be **_SELLER CHOICE_** _____.
       (c) The Parties shall, within 5 (or ____ ) Days after receipt, sign and return Escrow Holder's general provisions.
     (2) (a) ☐ Buyer ☒ Seller shall pay for owner's title insurance policy specified in paragraph 13E _____.
       (b) Owner's title policy to be issued by **_SELLER CHOICE_** _____.
       (Buyer shall pay for any title insurance policy insuring Buyer's **lender**, unless otherwise agreed in writing.)
   **D.  OTHER COSTS:**
     (1) ☐ Buyer ☒ Seller shall pay County transfer tax or fee _____.
     (2) ☐ Buyer ☒ Seller shall pay City transfer tax or fee _____.
     (3) ☐ Buyer ☐ Seller shall pay Homeowners' Association ("HOA") transfer fee _____.
     (4) Seller shall pay HOA fees for preparing documents required to be delivered by Civil Code §4525.
     (5) ☐ Buyer ☐ Seller shall pay HOA fees for preparing all documents other than those required by Civil Code §4525.
     (6) Buyer to pay for any HOA certification fee.
     (7) ☐ Buyer ☒ Seller shall pay for any private transfer fee _____.
     (8) ☐ Buyer ☐ Seller shall pay for _____.
     (9) ☐ Buyer ☐ Seller shall pay for _____.
     (10) ☐ Buyer ☒ Seller shall pay for the cost, not to exceed $ **_700.00_** _____ , of a standard (or ☐ upgraded)
       one-year home warranty plan, issued by **_SELLER CHOICE_** _____ , with the
       following optional coverages: ☒ Air Conditioner ☐ Pool/Spa ☐ Other: _____ .
       Buyer is informed that home warranty plans have many optional coverages in addition to those listed above. Buyer is advised
       to investigate these coverages to determine those that may be suitable for Buyer.
     OR ☐ **Buyer waives the purchase of a home warranty plan. Nothing in this paragraph precludes Buyer's purchasing**
       **a home warranty plan during the term of this Agreement.**
**8.  ITEMS INCLUDED IN AND EXCLUDED FROM SALE:**
   **A.  NOTE TO BUYER AND SELLER:** Items listed as included or excluded in the MLS, flyers or marketing materials are **not**
     included in the purchase price or excluded from the sale unless specified in paragraph 8 B or C.
   **B.  ITEMS INCLUDED IN SALE:** Except as otherwise specified or disclosed,
     (1) All EXISTING fixtures and fittings that are attached to the Property;
     (2) EXISTING electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates,
       solar power systems, built-in appliances, window and door screens, awnings, shutters, window coverings, attached floor
       coverings, television antennas, satellite dishes, air coolers/conditioners, pool/spa equipment, garage door openers/remote
       controls, mailbox, in-ground landscaping, trees/shrubs, water features and fountains, water softeners, water purifiers, security
       systems/alarms and the following if checked: ☐ all stove(s), except _____ ; ☐ all  refrigerator(s)
       except _____ ; ☐ all washer(s) and dryer(s), except _____ ;
     (3) The following additional items: _____
     (4) Existing integrated phone and home automation systems, including necessary components such as intranet and Internet-
       connected hardware or devices, control units (other than non-dedicated mobile devices, electronics and computers) and
       applicable software, permissions, passwords, codes and access information, are ( ☐ are NOT) included in the sale.
     (5) **LEASED OR LIENED ITEMS AND SYSTEMS:** Seller shall, within the time specified in paragraph 14A, (I) disclose to Buyer
       if any item or system specified in paragraph 8B or otherwise included in the sale is leased, or not owned by Seller, or
       specifically subject to a lien or other encumbrance, and (ii) Deliver to Buyer all written materials (such as lease, warranty,
       etc.) concerning any such item. Buyer's ability to assume any such lease, or willingness to accept the Property subject to
       any such lien or encumbrance, is a contingency in favor of Buyer and Seller as specified in paragraph 14B and C.
     (6) Seller represents that all items included in the purchase price, unless otherwise specified, (i) are owned by Seller and shall
       be transferred free and clear of liens and encumbrances, except the items and systems identified pursuant to 8B(5) and _____
       _____ , and (ii) are transferred without Seller warranty regardless of value.
   **C.  ITEMS EXCLUDED FROM SALE:** Unless otherwise specified, the following items are excluded from sale: (i) audio and video
     components (such as flat screen TVs, speakers and other items)  if any such item is not itself attached to the Property, even if a
     bracket or other mechanism attached to the component or item is attached to the Property; (ii) furniture and other items secured
     to the Property for earthquake purposes; and (iii) _____
     _____

_____ . **Brackets attached to walls, floors or ceilings for any such component, furniture**
**or item shall remain with the Property (or ☐ will be removed and holes or other damage shall be repaired, but not painted).**

Buyer's initials ( _H/N_ ) ( _____ )                                          Seller's Initials ( _RG_ ) ( _____ )

**RPA-CA REVISED 12/15 (PAGE 3 OF 10)**
**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 3 OF 10)**
Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com
1541 E 51ST

DocuSign Envelope ID: 853425D2-B0FE-4128-82F6-6892EB7C32F0

Property Address: *1541 E 51ST ST, LOS ANGELES, CA 90011*          Date: *January 29, 2018*

**9. CLOSING AND POSSESSION:**

**A.** Buyer intends (or ☐ does not intend) to occupy the Property as Buyer's primary residence.

**B.** **Seller-occupied or vacant property:** Possession shall be delivered to Buyer: (i) at 6 PM or ( _____ ☐AM/☐PM) on the date of Close Of Escrow; (ii) ☒ no later than *1* calendar days after Close Of Escrow; or (iii) ☐ at _____ ☐AM/☐PM on _____ .

**C.** **Seller remaining in possession After Close Of Escrow:** If Seller has the right to remain in possession after Close Of Escrow, (i) the Parties are advised to sign a separate occupancy agreement such as ☐ C.A.R. Form SIP, for Seller continued occupancy of less than 30 days, ☐ C.A.R. Form RLAS for Seller continued occupancy of 30 days or more; and (ii) the Parties are advised to consult with their insurance and legal advisors for information about liability and damage or injury to persons and personal and real property; and (iii) Buyer is advised to consult with Buyer's lender about the impact of Seller's occupancy on Buyer's loan.

**D.** **Tenant-occupied property: Property shall be vacant at least 5 (or ___ ) Days** Prior to Close Of Escrow, unless otherwise agreed in writing. **Note to Seller: If you are unable to deliver Property vacant in accordance with rent control and other applicable Law, you may be in breach of this Agreement.**

OR ☐ Tenant to remain in possession (C.A.R. Form TIP).

**E.** At Close Of Escrow, Seller assigns to Buyer any assignable warranty rights for items included in the sale; and Seller shall Deliver to Buyer available Copies of any such warranties. Brokers cannot and will not determine the assignability of any warranties.

**F.** At Close Of Escrow, unless otherwise agreed in writing, Seller shall provide keys, passwords, codes and/or means to operate all locks, mailboxes, security systems, alarms, home automation systems and intranet and internet-connected devices included in the purchase price, and garage door openers. If the Property is a condominium or located in a common interest subdivision, Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.

**10. STATUTORY AND OTHER DISCLOSURES (INCLUDING LEAD-BASED PAINT DISCLOSURES) AND CANCELLATION RIGHTS:**

**A.** (1) Seller shall, within the time specified in paragraph 14A, Deliver to Buyer: (i) if required by Law, a fully completed: Federal Lead-Based Paint Disclosures (C.A.R. Form FLD) and pamphlet ("Lead Disclosures"); and **(ii)** unless exempt, fully completed disclosures or notices required by sections 1102 et. seq. and 1103 et. seq. of the Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement ("TDS"), Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act of 1982 and Improvement Bond Act of 1915) and, if Seller has actual knowledge, of industrial use and military ordnance location (C.A.R. Form SPQ or ESD).

(2) Any Statutory Disclosure required by this paragraph is considered fully completed if Seller has answered all questions and completed and signed the Seller section(s) and the Listing Agent, if any, has completed and signed the Listing Broker section(s) or, if applicable, an Agent Visual Inspection Disclosure (C.A.R. Form AVID). Nothing stated herein relieves a Buyer's Broker, if any, from the obligation to (i) conduct a reasonably competent and diligent visual inspection of the accessible areas of the Property and disclose, on Section IV of the TDS, or an AVID, material facts affecting the value or desirability of the Property that were or should have been revealed by such an inspection or (ii) complete any sections on all disclosures required to be completed by Buyer's Broker.

(3) **Note to Buyer and Seller:** Waiver of Statutory and Lead Disclosures is prohibited by Law.

(4) Within the time specified in paragraph 14A, **(i)** Seller, unless exempt from the obligation to provide a TDS, shall, complete and provide Buyer with a Seller Property Questionnaire (C.A.R. Form SPQ); (ii) if Seller is not required to provide a TDS, Seller shall complete and provide Buyer with an Exempt Seller Disclosure (C.A.R. Form ESD).

(5) Buyer shall, within the time specified in paragraph 14B(1), return Signed Copies of the Statutory, Lead and other disclosures to Seller.

(6) In the event Seller or Listing Broker, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer, Seller shall promptly provide a subsequent or amended disclosure or notice, in writing, covering those items. **However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies of which Buyer is otherwise aware, or which are disclosed in reports provided to or obtained by Buyer or ordered and paid for by Buyer.**

(7) If any disclosure or notice specified in paragraph 10A(1), or subsequent or amended disclosure or notice is Delivered to Buyer after the offer is Signed, Buyer shall have the right to cancel this Agreement within **3 Days** After Delivery in person, or **5 Days** After Delivery by deposit in the mail, by giving written notice of cancellation to Seller or Seller's agent.

**B.** **NATURAL AND ENVIRONMENTAL HAZARD DISCLOSURES AND OTHER BOOKLETS:** Within the time specified in paragraph 14A, Seller shall, if required by Law: **(i)** Deliver to Buyer earthquake guide(s) (and questionnaire), environmental hazards booklet, and home energy rating pamphlet; **(ii)** disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; and Seismic Hazard Zone; and **(iii)** disclose any other zone as required by Law and provide any other information required for those zones.

**C.** **WITHHOLDING TAXES:** Within the time specified in paragraph 14A, to avoid required withholding, Seller shall Deliver to Buyer or qualified substitute, an affidavit sufficient to comply with federal (FIRPTA) and California withholding Law (C.A.R. Form AS or QS).

**D.** **MEGAN'S LAW DATABASE DISCLOSURE:** Notice: Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at **www.meganslaw.ca.gov.** Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Brokers are required to check this website. If Buyer wants further information, Broker recommends that Buyer obtain information from this website during Buyer's inspection contingency period. Brokers do not have expertise in this area.)

**E.** **NOTICE REGARDING GAS AND HAZARDOUS LIQUID TRANSMISSION PIPELINES:** This notice is being provided simply to inform you that information about the general location of gas and hazardous liquid transmission pipelines is available to the public via the National Pipeline Mapping System (NPMS) Internet Web site maintained by the United States Department of Transportation at **http://www.npms.phmsa.dot.gov/.** To seek further information about possible transmission pipelines near the Property, you may contact your local gas utility or other pipeline operators in the area. Contact information for pipeline operators is searchable by ZIP Code and county on the NPMS Internet Web site.

**F.** **CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES:**

**(1) SELLER HAS: 7 (or ___ ) Days** After Acceptance to disclose to Buyer if the Property is a condominium, or is located in a planned development or other common interest subdivision (C.A.R. Form SPQ or ESD).

Buyer's initials ( *H N* ) ( _____ )          Seller's Initials ( *HG* ) ( _____ )
**RPA-CA REVISED 12/15 (PAGE 4 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 4 OF 10)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com          1541 E 51ST

DocuSign Envelope ID: 853425D2-B0FE-4128-82F6-6892EB7C32F0

Property Address: **_1541 E 51ST ST, LOS ANGELES, CA  90011_**                                                    Date: **_January 29, 2018_**

(2) If the Property is a condominium or is located in a planned development or other common interest subdivision, Seller has
3 (or ____) Days After Acceptance to request from the HOA (C.A.R. Form HOA1): (i) Copies of any documents required by Law;
(ii) disclosure of any pending or anticipated claim or litigation by or against the HOA; (iii) a statement containing the location and
number of designated parking and storage spaces; (iv) Copies of the most recent 12 months of HOA minutes for regular and special
meetings; and (v) the names and contact information of all HOAs governing the Property (collectively, "CI Disclosures"). (vi) private
transfer fees; (vii) Pet fee restrictions; and (viii) smoking restrictions. Seller shall itemize and Deliver to Buyer all CI Disclosures
received from the HOA and any CI Disclosures in Seller's possession. Buyer's approval of CI Disclosures is a contingency of this
Agreement as specified in paragraph 14B(3). The Party specified in paragraph 7, as directed by escrow, shall deposit funds into escrow
or direct to HOA or management company to pay for any of the above.

**11. CONDITION OF PROPERTY:** Unless otherwise agreed in writing: (i) the Property is sold (a) "AS-IS" in its PRESENT
physical condition as of the date of Acceptance and (b) subject to Buyer's Investigation rights; (ii) the Property, including pool, spa,
landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and (iii) all debris
and personal property not included in the sale shall be removed by Close Of Escrow.
  A. Seller shall, within the time specified in paragraph 14A, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the
     Property, including known insurance claims within the past five years, and make any and all other disclosures required by law.
  B. Buyer has the right to conduct Buyer Investigations of the Property and, as specified in paragraph 14B, based upon information
     discovered in those investigations: (i) cancel this Agreement; or (ii) request that Seller make Repairs or take other action.
  C. **Buyer is strongly advised to conduct investigations of the entire Property in order to determine its present condition.
     Seller may not be aware of all defects affecting the Property or other factors that Buyer considers important. Property
     Improvements may not be built according to code, in compliance with current Law, or have had permits issued.**

**12. BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**
  A. Buyer's acceptance of the condition of, and any other matter affecting the Property, is a contingency of this Agreement as specified in
     this paragraph and paragraph 14B. Within the time specified in paragraph 14B(1), Buyer shall have the right, at Buyer's expense unless
     otherwise agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations"), including, but not
     limited to: (i) a general physical inspection; (ii) an inspection specifically for wood destroying pests and organisms. Any inspection for
     wood destroying pests and organisms shall be prepared by a registered Structural Pest Control company; shall cover the main building
     and attached structures; may cover detached structures; shall NOT include water tests of shower pans on upper level units unless the
     owners of property below the shower consent; shall NOT include roof coverings; and, if the Property is a unit in a condominium or other
     common interest subdivision, the inspection shall include only the separate interest and any exclusive-use areas being transferred, and
     shall NOT include common areas; and shall include a report ("Pest Control Report") showing the findings of the company which shall be
     separated into sections for evident infestation or infections (Section 1) and for conditions likely to lead to infestation or infection (Section
     2); (iii) inspect for lead-based paint and other lead-based paint hazards; (iv) satisfy Buyer as to any matter specified in the attached
     Buyer's Inspection Advisory (C.A.R. Form BIA); (v) review the registered sex offender database; (vi) confirm the insurability of Buyer
     and the Property including the availability and cost of flood and fire insurance; and (vii) review and seek approval of leases that may
     need to be assumed by Buyer. Without Seller's prior written consent, Buyer shall neither make nor cause to be made: invasive or
     destructive Buyer Investigations, except for minimally invasive testing required to prepare a Pest Control Report; or inspections by any
     governmental building or zoning inspector or government employee, unless required by Law.
  B. Seller shall make the Property available for all Buyer Investigations. Buyer shall (i) as specified in paragraph 14B, complete
     Buyer Investigations and either remove the contingency or cancel this Agreement, and (ii) give Seller, at no cost, complete
     Copies of all such Investigation reports obtained by Buyer, which obligation shall survive the termination of this Agreement.
  C. Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession
     is made available to Buyer.
  D. **Buyer indemnity and seller protection for entry upon property:** Buyer shall: (i) keep the Property free and clear of liens; (ii) repair
     all damage arising from Buyer Investigations; and (iii) indemnify and hold Seller harmless from all resulting liability, claims, demands,
     damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers'
     compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring
     during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain
     protections may be afforded Seller by recording a "Notice of Non-Responsibility" (C.A.R. Form NNR) for Buyer Investigations and work
     done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.

**13. TITLE AND VESTING:**
  A. Within the time specified in paragraph 14, Buyer shall be provided a current preliminary title report ("Preliminary Report"). The Preliminary
     Report is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. Buyer's review of
     the Preliminary Report and any other matters which may affect title are a contingency of this Agreement as specified in paragraph 14B. The
     company providing the Preliminary Report shall, prior to issuing a Preliminary Report, conduct a search of the General Index for all Sellers
     except banks or other institutional lenders selling properties they acquired through foreclosure (REOs), corporations, and government
     entities. Seller shall within 7 Days After Acceptance, give Escrow Holder a completed Statement of Information.
  B. Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other
     matters, whether of record or not, as of the date of Acceptance except for: (i) monetary liens of record (which Seller is obligated to pay
     off) unless Buyer is assuming those obligations or taking the Property subject to those obligations; and (ii) those matters which Seller
     has agreed to remove in writing.
  C. Within the time specified in paragraph 14A, Seller has a duty to disclose to Buyer all matters known to Seller affecting title,
     whether of record or not.
  D. At Close Of Escrow, Buyer shall receive a grant deed conveying title (or, for stock cooperative or long-term lease, an assignment
     of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall
     vest as designated in Buyer's supplemental escrow instructions. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT
     LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.

Buyer's Initials ( _H N_ ) ( _____ )                                           Seller's Initials ( _HG_ ) ( _____ )          
**RPA-CA REVISED 12/15 (PAGE 5 OF 10)**
**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 5 OF 10)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com                    1541 E 51ST

DocuSign Envelope ID: 853425D2-B0FE-4128-82F6-6892EB7C32F0

Property Address: **1541 E 51ST ST, LOS ANGELES, CA 90011** _____ Date: **January 29, 2018**

E.  Buyer shall receive a CLTA/ALTA "Homeowner's Policy of Title Insurance", if applicable to the type of property and buyer. If not, Escrow Holder shall notify Buyer. A title company can provide information about the availability, coverage, and cost of other title policies and endorsements. If the Homeowner's Policy is not available, Buyer shall choose another policy, instruct Escrow Holder in writing and shall pay any increase in cost.

**14.  TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS: The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing (C.A.R. Form CR or CC).**

A.  **SELLER HAS: 7 (or _____ ) Days** After Acceptance to Deliver to Buyer all Reports, disclosures and information for which Seller is responsible under paragraphs 5, 6, 7, 8B(5), 10A, B, C, and F, 11A and 13A. If, by the time specified, Seller has not Delivered any such item, Buyer after first Delivering to Seller a Notice to Seller to Perform (C.A.R. Form NSP) may cancel this Agreement.

B.  (1)  **BUYER HAS: 17 (or _____ ) Days** After Acceptance, unless otherwise agreed in writing, to: (i) complete all Buyer Investigations; review all disclosures, reports, lease documents to be assumed by Buyer pursuant to paragraph 8B(5), and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property; and (ii) Deliver to Seller Signed Copies of Statutory and Lead Disclosures and other disclosures Delivered by Seller in accordance with paragraph 10A.

(2)  Within the time specified in paragraph 14B(1), Buyer may request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to (C.A.R. Form RRRR) Buyer's requests.

(3)  By the end of the time specified in paragraph 14B(1) (or as otherwise specified in this Agreement), Buyer shall Deliver to Seller a removal of the applicable contingency or cancellation (C.A.R. Form CR or CC) of this Agreement. However, if any report, disclosure or information for which Seller is responsible is not Delivered within the time specified in paragraph 14A, then Buyer has 5 (or _____ ) **Days** After Delivery of any such items, or the time specified in paragraph 14B(1), whichever is later, to Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement.

(4)  **Continuation of Contingency:** Even after the end of the time specified in paragraph 14B(1) and before Seller cancels, if at all, pursuant to paragraph 14D, Buyer retains the right, in writing, to either (i) remove remaining contingencies, or (ii) cancel this Agreement based on a remaining contingency. Once Buyer's written removal of all contingencies is Delivered to Seller, Seller may not cancel this Agreement pursuant to paragraph 14D(1).

(5)  Access to Property: Buyer shall have access to the Property to conduct inspections and investigations for 17 (or _____ ) Days After Acceptance, whether or not any part of the Buyer's Investigation Contingency has been waived or removed.

C.  ☐ **REMOVAL OF CONTINGENCIES WITH OFFER: Buyer removes the contingencies specified in the attached Contingency Removal form (C.A.R. Form CR). If Buyer removes any contingency without an adequate understanding of the Property's condition or Buyer's ability to purchase, Buyer is acting against the advice of Broker.**

D.  **SELLER RIGHT TO CANCEL:**

(1)  **Seller right to Cancel; Buyer Contingencies:** If, by the time specified in this Agreement, Buyer does not Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement, then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

(2)  **Seller right to Cancel; Buyer Contract Obligations:** Seller, after first delivering to Buyer a NBP, may cancel this Agreement if, by the time specified in this Agreement, Buyer does not take the following action(s): (i) Deposit funds as required by paragraph 3A, or 3B or if the funds deposited pursuant to paragraph 3A or 3B are not good when deposited; (ii) Deliver a notice of FHA or VA costs or terms as required by paragraph 3D(3) (C.A.R. Form FVA); (iii) Deliver a letter as required by paragraph 3J(1); (iv) Deliver verification, or a satisfactory verification if Seller reasonably disapproves of the verification already provided, as required by paragraph 3C or 3H; (v) In writing assume or accept leases or liens specified in 8B5; (vi) Return Statutory and Lead Disclosures as required by paragraph 10A(5); or (vii) Sign or initial a separate liquidated damages form for an increased deposit as required by paragraphs 3B and 21B; or (viii) Provide evidence of authority to sign in a representative capacity as specified in paragraph 19. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

E.  **NOTICE TO BUYER OR SELLER TO PERFORM:** The NBP or NSP shall: (i) be in writing; (ii) be signed by the applicable Buyer or Seller; and (iii) give the other Party at least 2 (or _____ ) **Days** After Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A NBP or NSP may not be Delivered any earlier than **2 Days** Prior to the expiration of the applicable time for the other Party to remove a contingency or cancel this Agreement or meet an obligation specified in paragraph 14.

F.  **EFFECT OF BUYER'S REMOVAL OF CONTINGENCIES:** If Buyer removes, in writing, any contingency or cancellation rights, unless otherwise specified in writing, Buyer shall conclusively be deemed to have: **(i)** completed all Buyer Investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right; **(ii)** elected to proceed with the transaction; and **(iii)** assumed all liability, responsibility and expense for Repairs or corrections pertaining to that contingency or cancellation right, or for the inability to obtain financing.

G.  **CLOSE OF ESCROW:** Before Buyer or Seller may cancel this Agreement for failure of the other Party to close escrow pursuant to this Agreement, Buyer or Seller must first Deliver to the other Party a demand to close escrow (C.A.R. Form DCE). The DCE shall: **(i)** be signed by the applicable Buyer or Seller; and **(ii)** give the other Party at least 3 (or _____ ) **Days** After Delivery to close escrow. A DCE may not be Delivered any earlier than **3 Days** Prior to the scheduled close of escrow.

H.  **EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, the Parties agree to Sign mutual instructions to cancel the sale and escrow and release deposits, if any, to the party entitled to the funds, less fees and costs incurred by that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. Except as specified below, **release of funds will require mutual Signed release instructions from the Parties, judicial decision or arbitration award.** If either Party fails to execute mutual instructions to cancel escrow, one Party may make a written demand to Escrow Holder for the deposit. (C.A.R. Form BDRD or SDRD). Escrow Holder, upon receipt, shall promptly deliver notice of the demand to the other Party. If, within 10 Days After Escrow Holder's notice, the other Party does not object to the demand, Escrow Holder shall disburse the deposit to the Party making the demand. If Escrow Holder complies with the preceding process, each Party shall be deemed to have released Escrow Holder from any and all claims or liability related to the disbursal of the deposit. Escrow Holder, at its discretion, may nonetheless require mutual cancellation instructions. **A Party may be subject to a civil penalty of up to $1,000 for refusal to sign cancellation instructions if no good faith dispute exists as to who is entitled to the deposited funds (Civil Code §1057.3).**

Buyer's Initials ( _HN_ )( _____ )          Seller's Initials ( _HG_ )( _____ )          🏠 EQUAL HOUSING OPPORTUNITY

**RPA-CA REVISED 12/15 (PAGE 6 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 6 OF 10)**

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com          1541 E 51ST

DocuSign Envelope ID: 853425D2-B0FE-4128-82F6-6892EB7C32F0

Property Address: **1541 E 51ST ST, LOS ANGELES, CA  90011**                                        Date: **January 29, 2018**

15. **FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final verification of the Property within 5 (or ☐ ___ ) **Days** Prior to Close Of Escrow, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: **(i)** the Property is maintained pursuant to paragraph 11; **(ii)** Repairs have been completed as agreed; and **(iii)** Seller has complied with Seller's other obligations under this Agreement (C.A.R. Form VP).

16. **REPAIRS:** Repairs shall be completed prior to final verification of condition unless otherwise agreed in writing. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: **(i)** obtain invoices and paid receipts for Repairs performed by others; **(ii)** prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and **(iii)** provide Copies of invoices and paid receipts and statements to Buyer prior to final verification of condition.

17. **PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless otherwise agreed in writing, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, rents, HOA regular, special, and emergency dues and assessments imposed prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special assessments that are now a lien but not yet due. Property will be reassessed upon change of ownership. Any supplemental tax bills shall be paid as follows: **(i)** for periods after Close Of Escrow, by Buyer; and **(ii)** for periods prior to Close Of Escrow, by Seller (see C.A.R. Form SPT or SBSA for further information). TAX BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

18. **BROKERS:**
   **A. COMPENSATION:** Seller or Buyer, or both, as applicable, agree to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer. Compensation is payable upon Close Of Escrow, or if escrow does not close, as otherwise specified in the agreement between Broker and that Seller or Buyer.
   **B. SCOPE OF DUTY:** Buyer and Seller acknowledge and agree that Broker: **(i)** Does not decide what price Buyer should pay or Seller should accept; **(ii)** Does not guarantee the condition of the Property; **(iii)** Does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; **(iv)** Does not have an obligation to conduct an inspection of common areas or areas off the site of the Property; **(v)** Shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Broker; **(vi)** Shall not be responsible for inspecting public records or permits concerning the title or use of Property; **(vii)** Shall not be responsible for identifying the location of boundary lines or other items affecting title; **(viii)** Shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; **(ix)** Shall not be responsible for determining the fair market value of the Property or any personal property included in the sale; **(x)** Shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and **(xi)** Shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

19. **REPRESENTATIVE CAPACITY:** If one or more Parties is signing this Agreement in a representative capacity and not for him/herself as an individual then that Party shall so indicate in paragraph 31 or 32 and attach a Representative Capacity Signature Disclosure (C.A.R. Form RCSD). Wherever the signature or initials of the representative identified in the RCSD appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Party acting in a representative capacity (i) represents that the entity for which that party is acting already exists and (ii) shall Deliver to the other Party and Escrow Holder, within 3 Days After Acceptance, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code §18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

20. **JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**
   **A.** The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder, which Escrow Holder is to use only as any related counter offers and addenda, and any additional mutual instructions to close the escrow: paragraphs 1, 3, 4B, 5A, 6, 7, 10C, 13, 14H, 17, 18A, 19, 20, 26, 29, 30, 31, 32 and paragraph D of the section titled Real Estate Brokers on page 10. If a Copy of the separate compensation agreement(s) provided for in paragraph 18A, or paragraph D of the section titled Real Estate Brokers on page 10 is deposited with Escrow Holder by Broker, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned. Buyer and Seller will receive Escrow Holder's general provisions, if any, directly from Escrow Holder and will execute such provisions within the time specified in paragraph 7C(1)(c). To the extent the general provisions are inconsistent or in conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller will execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow and, as directed by Escrow Holder, within 3 (or ___ ) **Days,** shall pay to Escrow Holder or HOA or HOA management company or others any fee required by paragraphs 7, 10 or elsewhere in this Agreement.
   **B.** A Copy of this Agreement including any counter offer(s) and addenda shall be delivered to Escrow Holder within **3 Days** After Acceptance (or _____ ). Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement. Escrow Holder shall provide Seller's Statement of Information to Title company when received from Seller. If Seller delivers an affidavit to Escrow Holder to satisfy Seller's FIRPTA obligation under paragraph 10C, Escrow Holder shall deliver to Buyer a Qualified Substitute statement that complies with federal Law.

Buyer's Initials **H.N** ( _____ )( _____ )                    Seller's Initials **H.G** ( _____ )( _____ )    

**RPA-CA REVISED 12/15 (PAGE 7 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 7 OF 10)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com                                        1541 E 51ST

DocuSign Envelope ID: 853425D2-B0FE-4128-82F6-6892EB7C32F0

Property Address: **1541 E 51ST ST, LOS ANGELES, CA  90011**                          Date: **January 29, 2018**

C. Brokers are a party to the escrow for the sole purpose of compensation pursuant to paragraph 18A and paragraph D of the section titled Real Estate Brokers on page 10. Buyer and Seller irrevocably assign to Brokers compensation specified in paragraph 18A, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement.

D. Upon receipt, Escrow Holder shall provide Seller and Seller's Broker verification of Buyer's deposit of funds pursuant to paragraph 3A and 3B. Once Escrow Holder becomes aware of any of the following, Escrow Holder shall immediately notify all Brokers: (I) if Buyer's initial or any additional deposit or down payment is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or (II) if Buyer and Seller instruct Escrow Holder to cancel escrow.

E. A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within 3 Days after mutual execution of the amendment.

**21. REMEDIES FOR BUYER'S BREACH OF CONTRACT:**

A. Any clause added by the Parties specifying a remedy (such as release or forfeiture of deposit or making a deposit non-refundable) for failure of Buyer to complete the purchase in violation of this Agreement shall be deemed invalid unless the clause independently satisfies the statutory liquidated damages requirements set forth in the Civil Code.

B. **LIQUIDATED DAMAGES:** If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Except as provided in paragraph 14H, release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award. AT THE TIME OF ANY INCREASED DEPOSIT BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION INCORPORATING THE INCREASED DEPOSIT AS LIQUIDATED DAMAGES (C.A.R. FORM RID).

Buyer's Initials _H/N_ / _____          Seller's Initials _RG_ / _____

**22. DISPUTE RESOLUTION:**

A. **MEDIATION:** The Parties agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action through the C.A.R. Real Estate Mediation Center for Consumers (**www.consumermediation.org**) or through any other mediation provider or service mutually agreed to by the Parties. The Parties also agree to mediate any disputes or claims with Broker(s), who, in writing, agree to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. Mediation fees, if any, shall be divided equally among the Parties involved. If, for any dispute or claim to which this paragraph applies, any Party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that Party shall not be entitled to recover attorney fees, even if they would otherwise be available to that Party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED. **Exclusions from this mediation agreement are specified in paragraph 22C.**

B. **ARBITRATION OF DISPUTES:**
The Parties agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. The Parties also agree to arbitrate any disputes or claims with Broker(s), who, in writing, agree to such arbitration prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the parties mutually agree to a different arbitrator. The Parties shall have the right to discovery in accordance with Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Enforcement of this agreement to arbitrate shall be governed by the Federal Arbitration Act. **Exclusions from this arbitration agreement are specified in paragraph 22C.**

"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."

"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."

Buyer's Initials _H/N_ / _____          Seller's Initials _____ / _____

C. **ADDITIONAL MEDIATION AND ARBITRATION TERMS:**
(1) **EXCLUSIONS:** The following matters are excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; and (iii) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court.

Buyer's Initials ( _H/N_ )( _____ )          Seller's Initials ( _____ )( _____ )

**RPA-CA REVISED 12/15 (PAGE 8 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 8 OF 10)**

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com          1541 E 51ST

DocuSign Envelope ID: 853425D2-B0FE-4128-82F6-6892EB7C32F0

Property Address: **1541 E 51ST ST, LOS ANGELES, CA  90011** _____ Date: **January 29, 2018**

    (2) **PRESERVATION OF ACTIONS:** The following shall not constitute a waiver nor violation of the mediation and arbitration provisions: (i) the filing of a court action to preserve a statute of limitations; (ii) the filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies; or (iii) the filing of a mechanic's lien.

    (3) **BROKERS:** Brokers shall not be obligated nor compelled to mediate or arbitrate unless they agree to do so in writing. Any Broker(s) participating in mediation or arbitration shall not be deemed a party to this Agreement.

23. **SELECTION OF SERVICE PROVIDERS:** Brokers do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred by Broker or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.

24. **MULTIPLE LISTING SERVICE ("MLS"):** Brokers are authorized to report to the MLS a pending sale and, upon Close Of Escrow, the sales price and other terms of this transaction shall be provided to the MLS to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS.

25. **ATTORNEY FEES:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 22A.

26. **ASSIGNMENT:** Buyer shall not assign all or any part of Buyer's interest in this Agreement without first having obtained the separate written consent of Seller to a specified assignee. Such consent shall not be unreasonably withheld. Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement unless otherwise agreed in writing by Seller. (C.A.R. Form AOAA).

27. **EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

28. **TERMS AND CONDITIONS OF OFFER:**
This is an offer to purchase the Property on the above terms and conditions. The liquidated damages paragraph or the arbitration of disputes paragraph is incorporated in this Agreement if initialed by all Parties or if incorporated by mutual agreement in a counter offer or addendum. If at least one but not all Parties initial, a counter offer is required until agreement is reached. Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance. The Parties have read and acknowledge receipt of a Copy of the offer and agree to the confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing.

29. **TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:**   Time is of the essence. All understandings between the Parties are incorporated in this Agreement. Its terms are intended by the Parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Except as otherwise specified, this Agreement shall be interpreted and disputes shall be resolved in accordance with the Laws of the State of California. **Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.**

30. **DEFINITIONS:** As used in this Agreement:

    A. **"Acceptance"** means the time the offer or final counter offer is accepted in writing by a Party and is delivered to and personally received by the other Party or that Party's authorized agent in accordance with the terms of this offer or a final counter offer.

    B. **"Agreement"** means this document and any counter offers and any incorporated addenda, collectively forming the binding agreement between the Parties. Addenda are incorporated only when Signed by all Parties.

    C. **"C.A.R. Form"** means the most current version of the specific form referenced or another comparable form agreed to by the parties.

    D. **"Close Of Escrow"**, including "COE", means the date the grant deed, or other evidence of transfer of title, is recorded.

    E. **"Copy"** means copy by any means including photocopy, NCR, facsimile and electronic.

    F. **"Days"** means calendar days. However, after Acceptance, the last **Day** for performance of any act required by this Agreement (including Close Of Escrow) shall not include any Saturday, Sunday, or legal holiday and shall instead be the next Day.

    G. **"Days After"** means the specified number of calendar days after the occurrence of the event specified, not counting the calendar date on which the specified event occurs, and ending at 11:59 PM on the final day.

    H. **"Days Prior"** means the specified number of calendar days before the occurrence of the event specified, not counting the calendar date on which the specified event is scheduled to occur.

    I. **"Deliver", "Delivered"** or **"Delivery"**, unless otherwise specified in writing, means and shall be effective upon: personal receipt by Buyer or Seller or the individual Real Estate Licensee for that principal as specified in the section titled Real Estate Brokers on page 10, regardless of the method used (i.e., messenger, mail, email, fax, other).

    J. **"Electronic Copy"** or **"Electronic Signature"** means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either Party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other Party.

    K. **"Law"** means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.

    L. **"Repairs"** means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.

    M. **"Signed"** means either a handwritten or electronic signature on an original document, Copy or any counterpart.

31. **EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit, if any, shall be returned to Buyer unless the offer is Signed by Seller and a Copy of the Signed offer is personally received by Buyer, or by _____ **BESTWAY REALTY** ,
who is authorized to receive it, by 5:00 PM on the third Day after this offer is signed by Buyer (or by ☐ _____ ☐AM/☐PM,
on _____ (date)).

☐ One or more Buyers is signing this Agreement in a representative capacity and not for him/herself as an individual.  See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-B) for additional terms.

Date **01/29/2018**   BUYER _(signature)_ _____
(Print name) **HELEN NAM** _____
Date _____   BUYER _____
(Print name) _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA).

Seller's Initials ( **HG** )( _____ )

RPA-CA REVISED 12/15 (PAGE 9 OF 10)

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 9 OF 10)**

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com                    1541 E 51ST

DocuSign Envelope ID: 853425D2-B0FE-4128-82F6-6892EB7C32F0

Property Address: **1541 E 51ST ST, LOS ANGELES, CA 90011**                    Date: **January 29, 2018**

**32. ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property, or has the authority to execute this Agreement. Seller accepts the above offer, and agrees to sell the Property on the above terms and conditions. Seller has read and acknowledges receipt of a Copy of this Agreement, and authorizes Broker to Deliver a Signed Copy to Buyer.

☒ (If checked) SELLER'S ACCEPTANCE IS **SUBJECT TO ATTACHED COUNTER OFFER (C.A.R. Form SCO or SMCO) DATED:** 
2/22/2018

☐ One or more Sellers is signing this Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-S) for additional terms.

Date 2/23/2018    SELLER  *Howard Grobstein*
(Print name)    **Howard Grobstein, Chief Restructuring Officer**

Date _____    SELLER _____
(Print name) _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA).

( _____ / _____ ) **(Do not initial if making a counter offer.) CONFIRMATION OF ACCEPTANCE:** A Copy of Signed Acceptance was
(Initials)    personally received by Buyer or Buyer's authorized agent on (date) _____ at _____
☐ AM/ ☐ PM. **A binding Agreement is created when a Copy of Signed Acceptance is personally received by Buyer or Buyer's authorized agent** whether or not confirmed in this document. Completion of this confirmation **is not legally required** in order to create a binding Agreement; it is solely intended to evidence the date that Confirmation of Acceptance has occurred.

___

**REAL ESTATE BROKERS:**
A. Real Estate Brokers are not parties to the Agreement between Buyer and Seller.
B. Agency relationships are confirmed as stated in paragraph 2.
C. If specified in paragraph 3A(2), Agent who submitted the offer for Buyer acknowledges receipt of deposit.
D. **COOPERATING BROKER COMPENSATION:** Listing Broker agrees to pay Cooperating Broker **(Selling Firm)** and Cooperating Broker agrees to accept, out of Listing Broker's proceeds in escrow, the amount specified in the MLS, provided Cooperating Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS. If Listing Broker and Cooperating Broker are not both Participants of the MLS, or a reciprocal MLS, in which the Property is offered for sale, then compensation must be specified in a separate written agreement (C.A.R. Form CBC). Declaration of License and Tax (C.A.R. Form DLT) may be used to document that tax reporting will be required or that an exemption exists.

Real Estate Broker (Selling Firm) **BESTWAY REALTY**                    CalBRE Lic. # **01412845**
By _____ JAY KANG CalBRE Lic. # **01888004**    Date **01/29/2018**
By _____    CalBRE Lic. # _____    Date _____
Address **6131 ORANGETHORPE AVE # 495**    City **BUENA PARK**    State **CA**    Zip **90620**
Telephone **(714)521-7700**    Fax **(714)509-1257**    E-mail **JAYKANG714@YAHOO.COM**
Real Estate Broker (Listing Firm) **ELITE PROPERTIES REALTY**                    CalBRE Lic. # **00878444**
By *N phil Seymour*    PHILIP SEYMOUR CalBRE Lic. # **00630158**    Date 3-13-18
By _____    CalBRE Lic. # _____    Date _____
Address _____    City _____    State _____ Zip _____
Telephone _____    Fax _____    E-mail _____

___

**ESCROW HOLDER ACKNOWLEDGMENT:**
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, ☐ a deposit in the amount of $ _____ ), counter offer numbers _____ ☐ Seller's Statement of Information and _____, and agrees to act as Escrow Holder subject to paragraph 20 of this Agreement, any supplemental escrow instructions and the terms of Escrow Holder's general provisions.
Escrow Holder is advised that the date of Confirmation of Acceptance of the Agreement as between Buyer and Seller is _____

Escrow Holder _____    Escrow # _____
By _____    Date _____
Address _____
Phone/Fax/E-mail _____
Escrow Holder has the following license number # _____
☐ Department of Business Oversight, ☐ Department of Insurance, ☐ Bureau of Real Estate.

**PRESENTATION OF OFFER:** ( _____ ) Listing Broker presented this offer to Seller on _____ (date).
    Broker or Designee Initials

**REJECTION OF OFFER:** ( _____ )( _____ ) No counter offer is being made. This offer was rejected by Seller on _____ (date).
    Seller's Initials

©1991- 2015, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:    Buyer Acknowledges that page 10 is part of this Agreement ( _____ )( _____ )
REAL ESTATE BUSINESS SERVICES, INC.    Buyer's Initials
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
•525 South Virgil Avenue, Los Angeles, California 90020
**RPA-CA REVISED 12/15 (PAGE 10 OF 10)**    Reviewed by _____
    Broker or Designee

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 10 OF 10)**
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com    1541 E 51ST

DocuSign Envelope ID: 853425D2-B0FE-4128-82F6-6892EB7C32F0



**BUYER'S INSPECTION ADVISORY**
(C.A.R. Form BIA, Revised 11/14)

Property Address: **1541 E 51ST ST, LOS ANGELES, CA 90011** _____ ("Property").

**1. IMPORTANCE OF PROPERTY INVESTIGATION:** The physical condition of the land and improvements being purchased is not guaranteed by either Seller or Brokers. You have an affirmative duty to exercise reasonable care to protect yourself, including discovery of the legal, practical and technical implications of disclosed facts, and the investigation and verification of information and facts that you know or that are within your diligent attention and observation. A general physical inspection typically does not cover all aspects of the Property nor items affecting the Property that are not physically located on the Property. If the professionals recommend further investigations, including a recommendation by a pest control operator to inspect inaccessible areas of the Property, you should contact qualified experts to conduct such additional investigations.

**2. BROKER OBLIGATIONS:** Brokers do not have expertise in all areas and therefore cannot advise you on many items, such as those listed below. If Broker gives you referrals to professionals, Broker does not guarantee their performance.

**3. YOU ARE STRONGLY ADVISED TO INVESTIGATE THE CONDITION AND SUITABILITY OF ALL ASPECTS OF THE PROPERTY, INCLUDING BUT NOT LIMITED TO THE FOLLOWING. IF YOU DO NOT DO SO, YOU ARE ACTING AGAINST THE ADVICE OF BROKERS.**

    **A. GENERAL CONDITION OF THE PROPERTY, ITS SYSTEMS AND COMPONENTS:** Foundation, roof (condition, age, leaks, useful life), plumbing, heating, air conditioning, electrical, mechanical, security, pool/spa (cracks, leaks, operation), other structural and nonstructural systems and components, fixtures, built-in appliances, any personal property included in the sale, and energy efficiency of the Property.

    **B. SQUARE FOOTAGE, AGE, BOUNDARIES:** Square footage, room dimensions, lot size, age of improvements and boundaries. Any numerical statements regarding these items are APPROXIMATIONS ONLY and have not been verified by Seller and cannot be verified by Brokers. Fences, hedges, walls, retaining walls and other barriers or markers do not necessarily identify true Property boundaries.

    **C. WOOD DESTROYING PESTS:** Presence of, or conditions likely to lead to the presence of wood destroying pests and organisms.

    **D. SOIL STABILITY:** Existence of fill or compacted soil, expansive or contracting soil, susceptibility to slippage, settling or movement, and the adequacy of drainage.

    **E. WATER AND UTILITIES; WELL SYSTEMS AND COMPONENTS;WASTE DISPOSAL:** Water and utility availability, use restrictions and costs. Water quality, adequacy, condition, and performance of well systems and components. The type, size, adequacy, capacity and condition of sewer and septic systems and components, connection to sewer, and applicable fees.

    **F. ENVIRONMENTAL HAZARDS:** Potential environmental hazards, including, but not limited to, asbestos, lead-based paint and other lead contamination, radon, methane, other gases, fuel oil or chemical storage tanks, contaminated soil or water, hazardous waste, waste disposal sites, electromagnetic fields, nuclear sources, and other substances, materials, products, or conditions (including mold (airborne, toxic or otherwise), fungus or similar contaminants).

    **G. EARTHQUAKES AND FLOODING:** Susceptibility of the Property to earthquake/seismic hazards and propensity of the Property to flood.

    **H. FIRE, HAZARD AND OTHER INSURANCE:** The availability and cost of necessary or desired insurance may vary. The location of the Property in a seismic, flood or fire hazard zone, and other conditions, such as the age of the Property and the claims history of the Property and Buyer, may affect the availability and need for certain types of insurance. Buyer should explore insurance options early as this information may affect other decisions, including the removal of loan and inspection contingencies.

    **I. BUILDING PERMITS, ZONING AND GOVERNMENTAL REQUIREMENTS:** Permits, inspections, certificates, zoning, other governmental limitations, restrictions, and requirements affecting the current or future use of the Property, its development or size.

    **J. RENTAL PROPERTY RESTRICTIONS:** Some cities and counties impose restrictions that limit the amount of rent that can be charged, the maximum number of occupants, and the right of a landlord to terminate a tenancy. Deadbolt or other locks and security systems for doors and windows, including window bars, may be examined to determine whether they satisfy legal requirements.

    **K. SECURITY AND SAFETY:** State and local Law may require the installation of barriers, access alarms, self-latching mechanisms and/or other measures to decrease the risk to children and other persons of existing swimming pools and hot tubs, as well as various fire safety and other measures concerning other features of the Property.

    **L. NEIGHBORHOOD, AREA, SUBDIVISION CONDITIONS; PERSONAL FACTORS:** Neighborhood or area conditions, including schools, law enforcement, crime statistics, registered felons or offenders, fire protection, other government services, availability, adequacy and cost of internet connections or other technology services and installations, commercial, industrial or agricultural activities, existing and proposed transportation, construction and development that may affect noise, view, or traffic, airport noise, noise or odor from any source, wild and domestic animals, other nuisances, hazards, or circumstances, protected species, wetland properties, botanical diseases, historic or other governmentally protected sites or improvements, cemeteries, facilities and condition of common areas of common interest subdivisions, and possible lack of compliance with any governing documents or Homeowners' Association requirements, conditions and influences of significance to certain cultures and/or religions, and personal needs, requirements and preferences of Buyer.

**By signing below, Buyers acknowledge that they have read, understand, accept and have received a Copy of this Advisory. Buyers are encouraged to read it carefully.**

Buyer _____   Buyer _____
        *HELEN NAM*

© 1991-2004, California Association of REALTORS®, Inc. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
*a subsidiary of the California Association of REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020
**BIA REVISED 11/14 (PAGE 1 OF 1)**

| Reviewed by _____ Date _____ |

**BUYER'S INSPECTION ADVISORY (BIA PAGE 1 OF 1)**

Bestway Realty, 6131 Orangethorpe Ave Buena Park CA 90620      Phone: (213)923-6689      Fax: (213)923-6689      1541 E 51ST
Weon Kang      Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com

DocuSign Envelope ID: 853425D2-B0FE-4128-82F6-6892EB7C32F0



CALIFORNIA
ASSOCIATION
OF REALTORS®

**DISCLOSURE REGARDING**
**REAL ESTATE AGENCY RELATIONSHIP**
(Selling Firm to Buyer)
(As required by the Civil Code)
(C.A.R. Form AD, Revised 12/14)

☐ (If checked) This form is being provided in connection with a transaction for a leasehold Interest exceeding one year as per Civil Code section 2079.13(k) and (m).

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

**SELLER'S AGENT**
A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:
To the Seller: A Fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.
To the Buyer and the Seller:
  (a)Diligent exercise of reasonable skill and care in performance of the agent's duties.
  (b)A duty of honest and fair dealing and good faith.
  (c)A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**BUYER'S AGENT**
A selling agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:
To the Buyer: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Buyer.
To the Buyer and the Seller:
  (a)Diligent exercise of reasonable skill and care in performance of the agent's duties.
  (b)A duty of honest and fair dealing and good faith.
  (c)A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to; or within the diligent attention and observation of, the parties.
An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**AGENT REPRESENTING BOTH SELLER AND BUYER**
A real estate agent, either acting directly or through one or more associate licensees, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.
In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:
  (a)A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.
  (b)Other duties to the Seller and the Buyer as stated above in their respective sections.
In representing both Seller and Buyer, the agent may not, without the express permission of the respective party, disclose to the other party that the Seller will accept a price less than the listing price or that the Buyer will pay a price greater than the price offered.
The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect his or her own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.
Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction. **This disclosure form includes the provisions of Sections 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully. I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE BACK (OR A SEPARATE PAGE).**

☒ Buyer ☐ Seller ☐ Landlord ☐ Tenant _____ Date 01/29/2018
                                         HELEN NAM

☐ Buyer ☐ Seller ☐ Landlord ☐ Tenant _____ Date 01/29/2018

Agent          **BESTWAY REALTY**                          BRE Lic. # 01412845
               Real Estate Broker (Firm)
By _____          BRE Lic. # 01688004        Date 01/29/2018
   (Salesperson or Broker-Associate)   JAY KANG

Agency Disclosure Compliance (Civil Code §2079.14):
• When the listing brokerage company also represents Buyer/Tenant: The Listing Agent shall have one AD form signed by Seller/Landlord and a different AD form signed by Buyer/Tenant.
• When Seller/Landlord and Buyer/Tenant are represented by different brokerage companies: (i) the Listing Agent shall have one AD form signed by Seller/Landlord, and (ii) the Buyer's/Tenant's Agent shall have one AD form signed by Buyer/Tenant and either that same or a different AD form presented to Seller/Landlord for signature prior to presentation of the offer. If the same form is used, Seller may sign here:

Howard Grobstein   2/23/2018
Seller/Landlord                    Date          Seller/Landlord                    Date

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1991-2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

Reviewed by _____ Date _____

AD REVISED 12/14 (PAGE 1 OF 2)
**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 1 OF 2)**

Bestway Realty, 6331 Orangethorpe Ave Buena Park CA 90620          Phone: (213)923-6689    Fax: (213)923-6689      1541 E 51ST
Weon Kang                      Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

DocuSign Envelope ID: 853425D2-B0FE-4128-82F6-6892EB7C32F0

## CIVIL CODE SECTIONS 2079.24 (2079.16 APPEARS ON THE FRONT)

**2079.13** As used in Sections 2079.14 to 2079.24, inclusive, the following terms have the following meanings: (a) "Agent" means a person acting under provisions of Title 9 (commencing with Section 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. (b) "Associate licensee" means a person who is licensed as a real estate broker or salesperson under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code and who is either licensed under a broker or has entered into a written contract with a broker to act as the broker's agent in connection with acts requiring a real estate license and to function under the broker's supervision in the capacity of an associate licensee. The agent in the real property transaction bears responsibility for his or her associate licensees who perform as agents of the agent. When an associate licensee owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the associate licensee functions. (c) "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes vendee or lessee. (d) "Commercial real property" means all real property in the state, except single-family residential real property, dwelling units made subject to Chapter 2 (commencing with Section 1940) of Title 5, mobilehomes, as defined in Section 798.3, or recreational vehicles, as defined in Section 799.29. (e) "Dual agent" means an agent acting, either directly or through an associate licensee, as agent for both the seller and the buyer in a real property transaction. (f) "Listing agreement" means a contract between an owner of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer. (g) "Listing agent" means a person who has obtained a listing of real property to act as an agent for compensation. (h) "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the listing agent. (i) "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property. (j) "Offer to purchase" means a written contract executed by a buyer acting through a selling agent that becomes the contract for the sale of the real property upon acceptance by the seller. (k) "Real property" means any estate specified by subdivision (1) or (2) of Section 761 in property that constitutes or is improved with one to four dwelling units, any commercial real property, any leasehold in these types of property exceeding one year's duration, and mobilehomes, when offered for sale or sold through an agent pursuant to the authority contained in Section 10131.6 of the Business and Professions Code. (l) "Real property transaction" means a transaction for the sale of real property in which an agent is employed by one or more of the principals to act in that transaction, and includes a listing or an offer to purchase. (m) "Sell," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer, and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of Section 2985, and transactions for the creation of a leasehold exceeding one year's duration. (n) "Seller" means the transferor in a real property transaction, and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor. (o) "Selling agent" means a listing agent who acts alone, or an agent who acts in cooperation with a listing agent, and who sells or finds and obtains a buyer for the real property, or an agent who locates property for a buyer or who finds a buyer for a property for which no listing exists and presents an offer to purchase to the seller. (p) "Subagent" means a person to whom an agent delegates agency powers as provided in Article 5 (commencing with Section 2349) of Chapter 1 of Title 9. However, "subagent" does not include an associate licensee who is acting under the supervision of an agent in a real property transaction.

**2079.14** Listing agents and selling agents shall provide the seller and buyer in a real property transaction with a copy of the disclosure form specified in Section 2079.16, and, except as provided in subdivision (c), shall obtain a signed acknowledgement of receipt from that seller or buyer, except as provided in this section or Section 2079.15, as follows: (a) The listing agent, if any, shall provide the disclosure form to the seller prior to entering into the listing agreement. (b) The selling agent shall provide the disclosure form to the seller as soon as practicable prior to presenting the seller with an offer to purchase, unless the selling agent previously provided the seller with a copy of the disclosure form pursuant to subdivision (a). (c) Where the selling agent does not deal on a face-to-face basis with the seller, the disclosure form prepared by the selling agent may be furnished to the seller (and acknowledgement of receipt obtained for the selling agent from the seller) by the listing agent, or the selling agent may deliver the disclosure form by certified mail addressed to the seller at his or her last known address, in which case no signed acknowledgement of receipt is required. (d) The selling agent shall provide the disclosure form to the buyer as soon as practicable prior to execution of the buyer's offer to purchase, except that if the offer to purchase is not prepared by the selling agent, the selling agent shall present the disclosure form to the buyer not later than the next business day after the selling agent receives the offer to purchase from the buyer.

**2079.15** In any circumstance in which the seller or buyer refuses to sign an acknowledgement of receipt pursuant to Section 2079.14, the agent, or an associate licensee acting for an agent, shall set forth, sign, and date a written declaration of the facts of the refusal.

**2079.16** Reproduced on Page 1 of this AD form.

**2079.17** (a) As soon as practicable, the selling agent shall disclose to the buyer and seller whether the selling agent is acting in the real property transaction exclusively as the buyer's agent, exclusively as the seller's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the selling agent prior to or coincident with execution of that contract by the buyer and the seller, respectively. (b) As soon as practicable, the listing agent shall disclose to the seller whether the listing agent is acting in the real property transaction exclusively as the seller's agent, or as a dual agent representing both the buyer and seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the listing agent prior to or coincident with the execution of that contract by the seller.

(c) The confirmation required by subdivisions (a) and (b) shall be in the following form.

    _____(DO NOT COMPLETE. SAMPLE ONLY)_____ is the agent of (check one): ☐ the seller exclusively; or ☐ both the buyer and seller.
(Name of Listing Agent)

    _____(DO NOT COMPLETE. SAMPLE ONLY)_____ is the agent of (check one): ☐ the buyer exclusively; or ☐ the seller exclusively;
(Name of Selling Agent if not the same as the Listing Agent)                                         ☐ both the buyer and seller.

(d) The disclosures and confirmation required by this section shall be in addition to the disclosure required by Section 2079.14.

**2079.18** No selling agent in a real property transaction may act as an agent for the buyer only, when the selling agent is also acting as the listing agent in the transaction.

**2079.19** The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.

**2079.20** Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article if the requirements of Section 2079.14 and Section 2079.17 are complied with.

**2079.21** A dual agent shall not disclose to the buyer that the seller is willing to sell the property at a price less than the listing price, without the express written consent of the seller. A dual agent shall not disclose to the seller that the buyer is willing to pay a price greater than the offering price, without the express written consent of the buyer. This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.

**2079.22** Nothing in this article precludes a listing agent from also being a selling agent, and the combination of these functions in one agent does not, of itself, make that agent a dual agent.

**2079.23** A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship.

**2079.24** Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

| | |
|---|---|
| Reviewed by _____ Date _____ | |



**AD REVISED 12/14 (PAGE 2 OF 2)**

**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 2 OF 2)**

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com                  1541 E 51ST

DocuSign Envelope ID: 853425D2-B0FE-4128-82F6-6892EB7C32F0



**CALIFORNIA ASSOCIATION OF REALTORS®**

## POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER
### OR SELLER - DISCLOSURE AND CONSENT
(C.A.R. Form PRBS, 11/14)

A real estate broker (Broker), whether a corporation, partnership or sole proprietorship, may represent more than one buyer or seller. This multiple representation can occur through an individual licensed as a broker or salesperson or through different individual broker's or salespersons (associate licensees) acting under the Broker's license. The associate licensees may be working out of the same or different office locations.

**Multiple Buyers:** Broker (individually or through its associate licensees) may be working with many prospective buyers at the same time. These prospective buyers may have an interest in, and make offers on, the same properties. Some of these properties may be listed with Broker and some may not. Broker will not limit or restrict any particular buyer from making an offer on any particular property whether or not Broker represents other buyers interested in the same property.

**Multiple Sellers:** Broker (individually or through its associate licensees) may have listings on many properties at the same time. As a result, Broker will attempt to find buyers for each of those listed properties. Some listed properties may appeal to the same prospective buyers. Some properties may attract more prospective buyers than others. Some of these prospective buyers may be represented by Broker and some may not. Broker will market all listed properties to all prospective buyers whether or not Broker has another or other listed properties that may appeal to the same prospective buyers.

**Dual Agency:** If Seller is represented by Broker, Seller acknowledges that broker may represent prospective buyers of Seller's property and consents to Broker acting as a dual agent for both seller and buyer in that transaction. If Buyer is represented by Broker, buyer acknowledges that Broker may represent sellers of property that Buyer is interested in acquiring and consents to Broker acting as a dual agent for both buyer and seller with regard to that property.

In the event of dual agency, seller and buyer agree that: **(a)** Broker, without the prior written consent of the Buyer, will not disclose to seller that the Buyer is willing to pay a price greater than the offered price; **(b)** Broker, without the prior written consent of the seller, will not disclose to the buyer that seller is willing to sell property at a price less than the listing price; and **(c)** other than as set forth in (a) and (b) above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the property to both parties.

**Offers not necessarily confidential:** Buyer is advised that seller or listing agent may disclose the existence, terms, or conditions of buyer's offer unless all parties and their agent have signed a written confidentiality agreement. Whether any such information is actually disclosed depends on many factors, such as current market conditions, the prevailing practice in the real estate community, the listing agent's marketing strategy and the instructions of the seller.

Buyer and seller understand that Broker may represent more than one buyer or more than one seller and even both buyer and seller on the same transaction and consents to such relationships.

**Seller and/or Buyer acknowledges reading and understanding this Possible Representation of More Than One Buyer or Seller - Disclosure and Consent and agrees to the agency possibilities disclosed.**

| | | |
|---|---|---|
| Seller | _Howard Grobstein_ | Date 2/23/2018 |
| Seller | | Date |
| Buyer | _Helen Nam_ | **HELEN NAM** Date 01/29/2018 |
| Buyer | | Date |
| Real Estate Broker (Firm) **ELITE PROPERTIES REALTY** | CalBRE Lic # **00878444** | Date |
| By | CalBRE Lic # **00630158** | Date |
| **PHILIP SEYMOUR** | | |
| Real Estate Broker (Firm) **BESTWAY REALTY** | CalBRE Lic # **01412845** | Date **01/29/2018** |
| By | CalBRE Lic # **01888004** | Date **01/29/2018** |
| **JAY KANG** | | |

© 2014, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
*a subsidiary of the California Association of REALTORS®*
. 525 South Virgil Avenue, Los Angeles, California 90020

| Reviewed by _____ Date _____ |
|---|

**PRBS 11/14 (PAGE 1 OF 1)**



### POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER OR SELLER (PRBS PAGE 1 OF 1)

Bestway Realty, 6131 Orangethrope Ave Buena Park CA 90620                    Phone: (213)923-6689              Fax: (213)923-6689          1541 E 51ST
Weon Kang                    Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com

EXHIBIT "5," PAGE 70

DocuSign Envelope ID: 853425D2-B0FE-4128-82F6-6892EB7C32F0



**WIRE FRAUD AND ELECTRONIC FUNDS
TRANSFER ADVISORY**
(C.A.R. Form WFA, Revised 12/17)

Property Address: *1541 E 51ST ST, LOS ANGELES, CA  90011* _____ ("Property").

**WIRE FRAUD AND ELECTRONIC FUNDS TRANSFERS ADVISORY:**

The ability to communicate and conduct business electronically is a convenience and reality in nearly all parts of our lives. At the same time, it has provided hackers and scammers new opportunities for their criminal activity. Many businesses have been victimized and the real estate business is no exception.

While wiring or electronically transferring funds is a welcome convenience, we all need to exercise extreme caution. Emails attempting to induce fraudulent wire transfers have been received and have appeared to be legitimate. Reports indicate that some hackers have been able to intercept emailed transfer instructions, obtain account information and, by altering some of the data, redirect the funds to a different account. It also appears that some hackers were able to provide false phone numbers for verifying the wiring or funds transfer instructions. In those cases, the victim called the number provided to confirm the instructions, and then unwittingly authorized a transfer to somewhere or someone other than the intended recipient.

**ACCORDINGLY, YOU ARE ADVISED:**

1. **Obtain phone numbers and account numbers only from Escrow Officers, Property Managers, or Landlords at the beginning of the transaction.**
2. **DO NOT EVER WIRE OR ELECTRONICALLY TRANSFER FUNDS PRIOR TO CALLING TO CONFIRM THE TRANSFER INSTRUCTIONS. ONLY USE A PHONE NUMBER YOU WERE PROVIDED PREVIOUSLY. Do not use any different phone number or account number included in any emailed transfer instructions.**
3. **Orally confirm the transfer instruction is legitimate and confirm the bank routing number, account numbers and other codes before taking steps to transfer the funds.**
4. **Avoid sending personal information in emails or texts. Provide such information in person or over the telephone directly to the Escrow Officer, Property Manager, or Landlord.**
5. **Take steps to secure the system you are using with your email account. These steps include creating strong passwords, using secure WiFi, and not using free services.**

If you believe you have received questionable or suspicious wire or funds transfer instructions, immediately notify your bank, and the other party, and the Escrow Office, Landlord, or Property Manager. The sources below, as well as others, can also provide information:

Federal Bureau of Investigation: https://www.fbi.gov/; the FBI's IC3 at www.ic3.gov; or 310-477-6565

National White Collar Crime Center: http://www.nw3c.org/

On Guard Online: https://www.onguardonline.gov/

**NOTE: There are existing alternatives to electronic and wired fund transfers such as cashier's checks. By signing below, the undersigned acknowledge that each has read, understands and has received a copy of this Wire Fraud and Electronic Funds Transfer Advisory.**

Buyer/Tenant _____ *HELEN NAM* Date *01/29/2018*

Buyer/Tenant _____ Date _____

Seller/Landlord _____ *Howard Grobstein* _____ Date *2/23/2018*
                        ⌐DocuSigned by:
                        └19F532EE5C6249B...

Seller/Landlord _____ Date _____

©2016-2017, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
*a subsidiary of the California Association of REALTORS®*
• 525 South Virgil Avenue, Los Angeles, California 90020

**WFA REVISED 12/17 (PAGE 1 OF 1)**

**WIRE FRAUD AND ELECTRONIC FUNDS TRANSFER ADVISORY (WFA PAGE 1 OF 1)**

| Bestway Realty, 6131 Orangethrope Ave Buena Park CA 90620 | Phone: (213)923-6689 | Fax: (213)923-6689 | 1541 E 51ST |
| Weon Kang | Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com | | |

# EXHIBIT "6"

Order No. 150-1916773-07



# Orange Coast Title Company

2411 W. La Palma Ave #300
Anaheim, CA 92801
714-822-3211

## CONFIRMATION OF CONVEYANCE
### (Low or No Consideration Transfer)

I/We _____

Declare as Follows:

1. That I/We am/are the grantor(s) named in a certain grant deed or quit claim deed recorded as Instrument No. _____, in the County of _____, State of California.
2. That I/We did execute said conveyance on or about the date indicated.
3. That said Deed is valid and in full force and effect and that I/We claim no ownership interest in the property described therein.
4. That I/We hereby acknowledge, confirm, and ratify the above described conveyance.
5. That I/We did convey and transfer said property to the grantees and I/We am/are due no other consideration for my/our interest in the transferred property.
6. That I/We am/are making this declaration for the purposes of inducing Orange Coast Title Company to issue certain policies of title insurance, insuring title to said land, and that Orange Coast Title Company is not willing to insure title to said land if my/our interest was not transferred free from any remaining agreements or consideration.

I/We declare under penalty of perjury that the foregoing is true and correct and that this declaration is made this _____Day of _____, _____, at _____, California.

BY: _____      Social Security # _____

BY: _____      Social Security # _____

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy or validity of that document.

---

State of California
County of <u>Los Angeles</u>   } S.S.

On _____, before me, _____,

personally appeared _____

_____
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity (ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed this instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS MY HAND and OFFICIAL SEAL

Signature: _____

(Notary Seal)

**DO NOT USE THE SAME NOTARY AS USED TO EXECUTE THE DEED OR QUITCLAIM**

EXHIBIT "6," PAGE 72

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**3200 Park Center Drive, Suite 250, Costa Mesa, CA 92626**

A true and correct copy of the foregoing document entitled (*specify*): **DEBTOR'S MOTION FOR ORDER:
(1) AUTHORIZING SALE OF REAL PROPERTY LOCATED AT 1541 E. 51ST STREET, LOS ANGELES, CALIFORNIA
PURSUANT TO 11 U.S.C. § 363(b) AND (f); (2) APPROVING OVERBID PROCEDURES; (3) APPROVING BUYER,
SUCCESSFUL BIDDER, AND BACK-UP BIDDER AS GOOD-FAITH PURCHASER PURSUANT TO 11 U.S.C.
§ 363(m); (4) AUTHORIZING PAYMENT OF REAL ESTATE BROKER'S COMMISSION AND ORDINARY COSTS OF
SALE; (5) RELIEVING THE KINGDOM TRUST COMPANY AS THE CUSTODIAN OF THE INTERESTS HELD BY WJA
SECURE REAL ESTATE FUND LLC; AND (6) COMPELLING CUSTODIANS TO EXECUTE SUCH DOCUMENTS AS
MAY BE REASONABLY REQUIRED BY THE TITLE COMPANY; MEMORANDUM OF POINTS AND AUTHORITIES
AND DECLARATIONS OF HOWARD GROBSTEIN, PHILIP SEYMOUR, AND LEI LEI WANG EKVALL** will be served or
was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated
below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**  Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document.  On (*date*)
**May 10, 2018**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the
following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) **May 10, 2018**, I served the following persons and/or entities at the last known addresses in this bankruptcy
case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail,
first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the
judge will be completed no later than 24 hours after the document is filed.

The Hon. Scott C. Clarkson
United States Bankruptcy Court
411 West Fourth Street, Suite 5130
Santa Ana, CA 92701-4593

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served
the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is
filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| May 10, 2018 | Carol Sheets | /s/ *Carol Sheets* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- Kyra E Andrassy    kandrassy@swelawfirm.com,
csheets@swelawfirm.com;gcruz@swelawfirm.com;hdavis@swelawfirm.com
- James C Bastian    jbastian@shbllp.com
- Jess R Bressi    jess.bressi@dentons.com, kimberly.sigismondo@dentons.com
- Richard Bunt    richbunt@gmail.com
- Frank Cadigan    frank.cadigan@usdoj.gov
- John P Dillman    houston_bankruptcy@publicans.com
- Lei Lei Wang Ekvall    lekvall@swelawfirm.com,
csheets@swelawfirm.com;gcruz@swelawfirm.com;hdavis@swelawfirm.com
- Roger F Friedman    rfriedman@rutan.com
- Steven T Gubner    sgubner@bg.law, ecf@bg.law
- Michael J Hauser    michael.hauser@usdoj.gov
- Mark S Horoupian    mhoroupian@sulmeyerlaw.com,
ppenn@sulmeyerlaw.com;mhoroupian@ecf.inforuptcy.com;dperez@sulmeyerlaw.com;ppenn@ecf.inforuptcy.com
- Steven J. Katzman    SKatzman@bmkattorneys.com, admin@bmkattorneys.com;chowland@bmkattorneys.com
- David Brian Lally    davidlallylaw@gmail.com
- Christopher J Langley    chris@langleylegal.com, omar@langleylegal.com;langleycr75251@notify.bestcase.com
- Robert S Marticello    Rmarticello@swelawfirm.com,
csheets@swelawfirm.com;gcruz@swelawfirm.com;hdavis@swelawfirm.com
- Hamid R Rafatjoo    hrafatjoo@raineslaw.com, bclark@raineslaw.com;cwilliams@raineslaw.com
- Lovee D Sarenas    lovee.sarenas@lewisbrisbois.com
- Susan K Seflin    sseflin@brutzkusgubner.com
- Michael Simon    msimon@swelawfirm.com,
csheets@swelawfirm.com;gcruz@swelawfirm.com;hdavis@swelawfirm.com
- Dheeraj K Singhal    dksinghal@dcdmlawgroup.com, dcdm@ecf.courtdrive.com
- John L. Smaha    jsmaha@smaha.com, jteague@smaha.com;gbravo@smaha.com
- Philip E Strok    pstrok@swelawfirm.com, gcruz@swelawfirm.com;csheets@swelawfirm.com;hdavis@swelawfirm.com
- Wayne R Terry    wterry@hemar-rousso.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Jessica Vogel    Jvogel@sulmeyerlaw.com, jvogel@ecf.inforuptcy.com;mviramontes@sulmeyerlaw.com
- Steven Werth    swerth@sulmeyerlaw.com,
asokolowski@sulmeyerlaw.com;kmccamey@sulmeyerlaw.com;asokolowski@ecf.inforuptcy.com;swerth@ecf.inforuptcy.com

**2. SERVED BY UNITED STATES MAIL**:

Jay Kang
Bestway Realty
6131 Orangethorpe Avenue #495
Buena Park, CA 90620

Philip Seymour
Elite Properties Realty
148 S. Beverly Drive
Beverly Hills, CA 90212

Shandra Leary
Senior Assistant General Counsel
Millenium Trust Company, LLC
2001 Spring Road, Suite 700
Oak Brook, IL 60523

William Jordan
30621 Hunt Club Drive
San Juan Capistrano, CA 92675

Los Angeles County Treasurer and
Tax Collector
P.O. Box 54110
Los Angeles, CA 90054-0110

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**